## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE BOARD OF COUNTY COMMISSIONERS )
OF THE COUNTY OF FORD, )
STATE OF KANSAS, )
          ) CASE NO. 6:20-cv-1262
         Plaintiff, )
          )
     v. ) **<u>STATE COURT RECORDS</u>**
          )
ALLERGAN PLC, et al., )
          )
         Defendants. )
          )

Pursuant to Local Rule 81.2, Defendants Johnson & Johnson and Janssen Pharmaceuticals,

Inc. submit herewith a complete copy of all records and proceedings had in the state court.

Respectfully submitted,

<u>/s/ Sandra J. Wunderlich</u>
Sandra J. Wunderlich (#15722)
TUCKER ELLIS LLP
100 South 4th Street, Suite 600
St. Louis, MO 63102
Telephone 314.256.2550
Facsimile: 314.256.2549
E-mail: sandra.wunderlich@tuckerellis.com

***Attorneys for Defendants Janssen
Pharmaceuticals, Inc., Ortho-McNeil Janssen
Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen
Pharmaceutica, Inc. n/k/a Janssen
Pharmaceuticals, Inc., and Johnson &
Johnson***

## PROOF OF SERVICE

I hereby certify that on September 29, 2020, a copy of the foregoing State Court Records was served via electronic mail, and via First Class U.S. Mail, postage prepaid to the following:

Gary D. White, Jr., KS #15103
Dustin L. Van Dyk, KS #23313
PALMER LAW GROUP LLP
2348 SW Topeka Blvd. Suite 100
Topeka, KS  66611
gwhite@jpalmerlaw.com
dvandyk@jpalmerlaw.com
*Counsel for Plaintiff*

Jeff Reeves
Cheryl Priest Ainsworth
Kevin N. Royer
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, CA  92626-7109
jreeves@tocounsel.com
cainsworth@tocounsel.com
kroyer@tocounsel.com
*Counsel for Plaintiff*

Sean D. Walsh, SC No. 25052
HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, KS  67206
swalsh@hinklaw.com
*Counsel for Defendants Walmart Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, LP d/b/a Walmart Supercenter #372*

Jeff P. DeGraffenreid, KS #15694
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS  67206-4466
jdegraffenreid@foulston.com
*Counsel for Defendant Walgreen Co.*

Thomas A. Dower, SC #12897
Torrance R. Parkins, SC #26014
GILLILAND GREEN LLC
1 North Main, Suite 700
PO Box 2977
Hutchinson, KS 67504-2977
tdower@gglawks.com
tparkins@gglawks.com
*Counsel for Defendant Dillon Companies, LLC*

Respectfully submitted,

/s/ Sandra J. Wunderlich
*Attorney for Defendants Janssen Pharmaceuticals, Inc., Ortho-McNeil Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Johnson & Johnson*

2

4859632.1

ELECTRONICALLY FILED
2020 Aug 27 PM 3:15
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

**THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS,**

          Plaintiff,

    vs.

**ALLERGAN PLC**

**ALLERGAN USA, INC.**

**ACTAVIS, INC.**

**WATSON PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.**

**WATSON LABORATORIES, INC.**

**ACTAVIS LLC**

**ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.**

**TEVA PHARMACEUTICAL INDUSTRIES, LTD.**

**TEVA PHARMACEUTICALS USA, INC.**

**CEPHALON, INC.**

**ENDO HEALTH SOLUTIONS INC.**

**ENDO PHARMACEUTICALS, INC.**

**PAR PHARMACEUTICAL COMPANIES, INC.**

**PAR PHARMACEUTICALS, INC.**

**JANSSEN PHARMACEUTICALS, INC.**

**ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.**

**Case No. _____**

1

**JANSSEN PHARMACEUTICA, INC.**
**n/k/a JANSSEN PHARMACEUTICALS,**
**INC.**

**JOHNSON & JOHNSON**

**MALLINCKRODT, PLC.**

**MALLINCKRODT LLC**

**SPECGX LLC**

**MYLAN N.V.**

**MYLAN PHARMACEUTICALS, INC.**

**MYLAN INSTITUTIONAL, INC.**

**HIKMA PHARMACEUTICALS USA**
**INC. f/k/a WEST-WARD**
**PHARMACEUTICALS CORP.**

**JOHN KAPOOR, an individual**

**MICHAEL BABICH, an individual**

**AMERISOURCEBERGEN**
**CORPORATION**

**AMERISOURCEBERGEN DRUG**
**CORPORATION**

**MCKESSON CORPORATION**

**MCQUEARY BROS. DRUG COMPANY,**
**LLC**

**CARDINAL HEALTH, INC.**

**CARDINAL HEALTH 5, LLC**

**CARDINAL HEALTH, 100, INC.**

**CARDINAL HEALTH 110, LLC**

**CARDINAL HEALTH 122, LLC**

**CARDINAL HEALTH 132, LLC**

**CARDINAL HEALTH 200, LLC**

**CARDINAL HEALTH 414, LLC**

**CARDINAL HEALTH PHARMACY SERVICES, LLC**

**NOVARTIS PHARMACEUTICALS CORPORATION f/k/a SANDOZ, INC.**

**WALGREEN CO.**

**WALGREEN CO. dba WALGREENS #7817**

**WALMART INC.**

**WAL-MART STORES EAST, LP**

**WAL-MART STORES EAST, LP dba WALMART SUPERCENTER #372**

**KROGER LIMITED PARTNERSHIP I**

**DILLON COMPANIES, LLC**

**DOES 1 through 1000**,

        Defendants.

---

## PETITION FOR DAMAGES
[Pursuant to Chapter 60 of the Kansas Statutes Annotated]

Plaintiff The Board of County Commissioners of the County of Ford, State of Kansas brings this civil action against Defendants ALLERGAN PLC; ALLERGAN USA, INC.; ACTAVIS PLC; ACTAVIS, INC.; WATSON PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; PAR PHARMACEUTICAL COMPANIES, INC.; PAR PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS,

3

INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JOHNSON & JOHNSON; MALLINKRODT, PLC; MALLINKRODT LLC; SPEC GX LLC; NOVARTIS PHARMACEUTICALS CORPORATION f/k/a SANDOZ, INC.; MYLAN INSTITUTIONAL, INC.; HIKMA PHARMACEUTICALS USA INC. f/k/a WEST-WARD PHARMACEUTICALS CORP.; JOHN KAPOOR; MICHAEL BABICH; AMERISOURCEBERGEN     CORPORATION;     AMERISOURCEBERGEN     DRUG CORPORATION; MCKESSON CORPORATION; MCQUEARY BROTHERS DRUG COMPANY, LLC; CARDINAL HEALTH, INC.; CARDINAL HEALTH 5, LLC; CARDINAL HEALTH, 100, INC.; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 122, LLC; CARDINAL HEALTH 132, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; CARDINAL HEALTH PHARMACY SERVICES, LLC; KROGER LIMITED PARTNERSHIP II; WALGREEN CO.; WALMART INC.; WAL-MART STORES EAST LP; DILLON COMPANIES, LLC;  and DOES 1 through 1000, states and alleges as follows.

## I.     **INTRODUCTION**

1.      Opiates[1] are killing people every day in this country and Kansans have not been spared.  Each of the Defendants in this action engaged in an industry-wide effort to downplay the addictive and deadly potential effects of the misuse of prescription opioids.  The opioid epidemic has hit every community in Kansas hard, including Ford County.  The Board of County Commissioners of the County of Ford, State of Kansas (hereinafter referred to as "Ford County," the "County," or "Plaintiff") brings this Amended Petition for Damages ("Petition") seeking redress for the societal and financial damage it has suffered at the hands of those directly responsible for the crisis—the manufacturers, distributors, prescribers, and dispensers of prescription opioids.

---

[1]  The term "opiate" technically refers only to chemicals that occur naturally in the opium plant, including morphine, codeine, thebaine and papaverine.  "Opioid," by contrast, refers instead to compounds that have the same effect as opiates but do not occur naturally in the opium plant, such as heroin, oxycodone, hydrocodone, hydromorphone and oxymorphone ("semi-synthetic" opioids) as well as methadone, fentanyl, meperidine and tramadol ("synthetic" opioids).

2.      This case is about corporate greed.  Simply stated, each of the Defendants put their desire for profits above the health and well-being of Ford County and its citizens and Plaintiff has incurred substantial, continuous costs as a result.

3.      This case is not about taking away medically necessary opioids from the patients who need them.  Plaintiff does not ask the Court to decide whether opioids are clinically appropriate, nor does Plaintiff seek to blame the well-meaning healthcare providers and suppliers who prescribed opioids to their patients in good faith.  Instead, Plaintiff only asks that this Court hold the Defendants accountable for their persistent, ongoing misconduct and the damage they caused to Ford County, that Defendants were always in the best position to prevent.

**A.      The Manufacturer Defendants' Two-Part Scheme to Increase Opioid Sales**

4.      <u>First</u>, as part of a broader scheme to target  communities in the United States where the elements most conducive to opioid addiction were prevalent, Defendants ALLERGAN PLC; ALLERGAN USA, INC.; ACTAVIS PLC; ACTAVIS, INC.; WATSON PHARMACEUTICALS, INC. n/k/a ACTAVIS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.;  CEPHALON, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; PAR PHARMAECEUTICAL COMPANIES, INC.; PAR PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICALS, INC.;  ORTHO-MCNEIL-JANSSEN  PHARMACEUTICALS,  INC.  n/k/a  JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JOHNSON & JOHNSON; NOVARTIS PHARMACEUTICALS CORPORATION f/k/a SANDOZ, INC.; MYLAN N.V.; MYLAN PHARMACEUTICALS, INC.; MYLAN INSTITUTIONAL, INC.; HIKMA PHARMACEUTICALS USA INC. f/k/a WEST-WARD PHARMACEUTICALS CORP.; MALLINKRODT, PLC; MALLINKRODT LLC; SPEC GX LLC; and  the  individual defendants JOHN KAPOOR; and  MICHAEL BABICH (the

"Manufacturer Defendants"), targeted the State of Kansas, including the citizens of Ford County. The Manufacturer Defendants developed and engaged in a sophisticated, manipulative scheme designed to increase the number of opioid prescriptions written across the state, including in Ford County. Defendants' scheme was particularly well-suited to Ford County, because Ford County is home to many economically and medically vulnerable populations that Defendants knew were uniquely predisposed to opioid addiction, including the elderly.

5.      Second, the Manufacturer Defendants dramatically increased the number of opioid prescriptions in Ford County and across the country by **(i)** concealing the truth about the risk of addiction and death associated with long-term use of their products, and **(ii)** pressuring their respective sales forces to deceive and encourage local prescribers to oversupply Kansas—and Ford County—with powerful prescription opioids. In 2017, for instance, Kansas providers wrote 69.8 opioid prescriptions for every 100 persons compared to the U.S. average rate of 58.7 prescriptions for every 100 persons.[2]

**B.      The Distributor Defendants Turned a Blind Eye to the Manufacturers' Scheme**

6.      Defendants              AMERISOURCEBERGEN                CORPORATION; AMERISOURCEBERGEN    DRUG    CORPORATION;    MCKESSON    CORPORATION; MCQUEARY BROTHERS DRUG COMPANY, LLC; CARDINAL HEALTH, INC.; CARDINAL HEALTH 5, LLC; CARDINAL HEALTH 100, INC.; CARDINAL HEALTH 110, LLC; CARDINAL HEALTH 122, LLC; CARDINAL HEALTH 132, LLC; CARDINAL HEALTH 200, LLC; CARDINAL HEALTH 414, LLC; CARDINAL HEALTH PHARMACY SERVICES, LLC; KROGER LIMITED PHARMACY II; WALGREEN CO.; and WALMART INC. (the "Distributor Defendants") shipped and/or distributed prescription opioids throughout the country, including Kansas and Ford County. Rather than meet their obligations under Kansas law—including to report

---

[2] National Institute of Health ("NIH"), National Institute on Drug Abuse, *Kansas Opioid Summary,* DrugAbuse.gov (Mar. 2019), https://www.drugabuse.gov/opioid-summaries-by-state/kansas-opioid-summary.

suspicious orders of controlled substances—the Distributor  Defendants: **(i)** willfully ignored and failed to act reasonably in response to impossibly large opioids orders being shipped to locations where it was inconceivable that any legitimate medical need could have required the quantities and/or dosages shipped; **(ii)** failed to report these suspicious shipments despite their clear statutory, regulatory and common law obligations to do so, and in contravention of their own internal policies and procedures; **(iii)** distributed opioids pursuant to apparently invalid or otherwise suspicious prescription orders; and/or **(iv)** wrongfully and unreasonably contributed to opioid diversion across the State of Kansas generally and in Ford County specifically, thereby creating, maintaining and/or assisting in the creation or maintenance of an illicit opioid market that continues to damage, inconvenience, annoy, vex, and work harm to the rights, property, and comfort of Plaintiff and its citizens.  The Distributor Defendants' breaches of their respective reporting obligations were willful, motivated by their desire to maximize profits, and were committed without consideration of the cost to Ford County or its citizenry.

### C.     The Pharmacy Defendants Understood but Violated their Duties

7.     Defendants DILLON COMPANIES, LLC; WAL-MART STORES EAST LP dba WALMART  SUPERCENTER  #372; and  WALGREEN CO. dba  WALGREENS  #7817 (collectively, the "Pharmacy Defendants") earned enormous profits by flooding the State of Kansas, including Ford County, with prescription opioids.  Like the Distributor Defendants, the Pharmacy Defendants gained unique knowledge of the oversupply of prescription opioids through the extensive data and information they developed and maintained in connection with dispensing opioids to Ford County patients as both distributors and retail outlets.  Rather than act to stem the flow of opioids into communities like Ford County, they participated in and profited from the oversupply.

### D.     The Devastating Effects of Defendants' Conduct

8.     Each of the Defendants was fully aware of the potential for their opioid products to place patients at an unreasonable risk of opioid-related addiction and/or death.  Despite this

knowledge, the Manufacturer Defendants continue to misrepresent the risks associated with prescription opioids to misleadingly influence physicians and other Kansas prescribers with the goal of increasing sales of prescription opioids to Ford County citizens.  Further, as distributors of opioids, the Distributor Defendants and Pharmacy Defendants continue to breach their opioid-related supply chain duties under Kansas law to monitor, report, and prevent suspicious shipments of prescription opioids, despite knowing that their failure to discharge these duties placed Ford County and its residents at an unreasonably high risk of opioid diversion.

9.      The Defendants' conduct precipitated the opioid crisis that has ravaged Ford County for years, and will continue to do so for many years, even decades, to come.  Defendants' scheme has succeeded—Defendants have made untold billions of dollars from prescription opioids. Meanwhile, the death toll they have caused in Ford County and elsewhere is unconscionable.

10.     Ford County dedicates substantial portions of its tax revenues to provide and pay for a broad array of services for its population, including, but not limited to, health care, law enforcement, emergency medical services, and other public services.   However, as a result of the opioid epidemic, Ford County has been significantly hampered in its ability to continue to provide the requisite level of service in each of these categories for its citizens.  This creates a perverse dichotomy.  The overburdened service areas require a *greater share* of Ford County's scarce tax dollars, while at the same time, the crisis itself *decreases* the tax dollars Ford County can generate.  That is because opioid addiction takes productive members of society out of the economy, usually due to death or the inability to work.  Simply put, most who become addicted to opioids are no longer able to work, and, therefore, are no longer able to care for their families, earn a paycheck, or spend money in the same way they did before they fell victim to addiction.  This downward spiral means Ford County's tax revenues have suffered.  These harms are the direct and proximate result of Defendants' scheme to increase their profits without regard for the end users of Defendants' drugs, or the counties and

municipalities that must bear the brunt of the increased demand for their services brought on by the epidemic.

11.     In addition to its tax-related damages, Ford County has suffered damage to its reputation at the hands of Defendants.  This is due, in large measure, to the opioid epidemic in Ford County that the Defendants caused, exacerbated, and/or failed to abate.  Plaintiff has been able to ameliorate this problem, to a degree, only by dedicating its tax dollars to measures designed to restore its reputation as a desirable community for its citizens.  The financial costs to Ford County that resulted from the Defendants' misdeeds as described in this Petition, are discussed in detail below, in Section IV.P.

12.     Things were not always this way in Ford County.  Though Defendants have been manufacturing, marketing, distributing and/or selling prescription opioids for decades—including brand-name drugs like OxyContin, Percocet, and Duragesic, as well as generic formulations of these drugs such as oxycodone, hydrocodone, and fentanyl—only since the late 1990s have Defendants' powerful narcotic painkillers been used to treat more than just short-term, acute or cancer-related pain.  Indeed, for the vast majority of the twentieth century, Defendants' drugs were considered too addictive and debilitating for patients suffering from long-term (chronic) pain due to non-cancer conditions like arthritis, fibromyalgia and migraines.[3]

13.     In the late 1990s, however, and continuing today, Defendants began a sophisticated marketing and distribution scheme premised on deception to persuade patients that opioids can and should be used to treat chronic pain. Defendants spent, and some continue to spend, millions of dollars on promotional activities and materials that falsely deny or trivialize the risks and overstate the benefits of opioids.  As to the risks, Defendants falsely and misleadingly: (1) downplayed the serious risk of addiction;[4] (2) promoted the concept of "pseudoaddiction," falsely claiming that signs

---

[3]  In this Petition, "chronic pain" refers to non-cancer pain lasting three months or longer.

[4]  Addiction is classified as a spectrum of "substance use disorders" that range from misuse

of addiction should be treated with more opioids; (3) exaggerated the effectiveness of screening tools in preventing addiction; (4) claimed that opioid dependence and withdrawal are easily managed; (5) denied the risks of higher opioid dosages; and (6) exaggerated the effectiveness of abuse-deterrent opioid formulations to prevent abuse by—*inter alia*—falsely claiming these opioids "cannot be crushed."  Defendants also falsely touted the benefits of long-term opioid use, including its supposed ability to improve function and quality of life, even though there was no credible evidence to support those benefits—a fact that Defendants not only knew at all times relevant to this action, but effectively suppressed and concealed.

14.    Indeed, at all times relevant to this action, Defendants knew their longstanding and ongoing misrepresentations of the risks and benefits of opioids were not supported by or were directly contrary to the scientific evidence.  Moreover, regulators and the medical community at large have come to recognize the serious risks posed by opioid pain medications.  Indeed, according to recently established and widely accepted clinical guidelines for opioid therapy, "[t]he science of opioids for chronic pain is clear: for the vast majority of patients, the known, serious, and too-often-fatal risks far outweigh the unproven and transient benefits."

15.    Opioid manufacturers, including Defendant Endo Pharmaceuticals, Inc., have also entered into agreements with public entities that prohibit them from making many of the misrepresentations identified in this Petition in other jurisdictions.  Yet, even now, Defendants continue to misrepresent the risks and benefits of long-term opioid use in Kansas, including in Ford County, and continue to fail to correct their past misrepresentations.

16.    Specifically, Defendants concealed what their own internal documents and

---

and abuse of drugs to addiction.  Patients suffer negative consequences wherever they fall on this spectrum. In this Petition, "addiction" refers to the entire range of substance abuse disorders.  (*See, e.g.*, American Society of Addiction Medicine ("ASAM"), Public Policy Statements, *Terminology Related to the Spectrum of Unhealthy Substance Use*, p. 1-2 (July 2013), https://www.asam.org/docs/default-source/public-policy-statements/1-terminology-spectrum-sud-7-13.pdf?sfvrsn=d93c69c2_2.

communications show they already knew, and had known for decades: not only were Defendants' opioids both medically unnecessary and, in fact, life-threatening for non-cancer patients with chronic pain, but further, none of Defendants' representations about the manageability or prevention of opioid addiction was true.  As set forth in detail below, for decades, the Manufacturer and Distributor Defendants have made and continue to make a series of inaccurate claims about the risks and benefits associated with their opioids, essentially bribing Key Opinion Leader ("KOL") groups and prescribers to substantiate the veracity of Defendants' false statements.  In creating the illusion that prescription opioids were a low risk treatment option for chronic pain compared to non-opioid pharmacologic approaches, Defendants successfully targeted vulnerable patient populations, like the elderly.  Defendants further tainted the sources that many healthcare providers and patients in Ford County relied upon for guidance, including treatment guidelines, continuing medical education programs, medical conferences and seminars, and scientific articles.  As a result, Defendants successfully transformed the way doctors treat chronic pain in Ford County, opening the floodgates of opioid prescribing, misuse, addiction, incapacitation, and death.  This explosion in opioid prescriptions and use has padded Defendants' profit margins at the expense of chronic pain patients and the local governments responsible for protecting their patients and abating the ongoing damage resulting from Defendants persistent misconduct.

17.     The explosion in opioid prescriptions and use caused by Defendants has led to a public health crisis in Kansas and, in particular, Ford County.  Kansas faces skyrocketing opioid addiction and opioid-related overdoses and deaths as well as devastating social and economic consequences.  As described throughout this Petition, this public health crisis is a public nuisance as it resulted from Defendants' intentional misconduct, in which they engaged and continue to engage—even though they knew their misconduct would damage, and in fact has damaged, Ford County and its residents by endangering the public health, safety and welfare of Plaintiff and its citizens.  *See* K.S.A. 21-6204.  Additionally, this public health crisis is a common nuisance as arising

11

from Defendants' unlawful activities in violation of several Kansas controlled substance laws and regulations.  *See* K.S.A. § 22-3901(g).

18.     The effects of Defendants' deceptive marketing scheme are catastrophic and are only getting worse.  These effects are devastating in Kansas.  Since 2012, more than 1,500 Kansans have died from opioid or heroin overdoses and that rate has continued to rise.[5]  Indeed, in February 2016, regulators acknowledged that "[t]hings are getting worse, not better, with the epidemic of opioid misuse, abuse and dependence."

19.     There is little doubt that Defendants' deceptive marketing and distribution scheme has precipitated this public health crisis in Kansas, including in Ford County, by dramatically increasing opioid prescriptions and use.  An oversupply of prescription opioids has provided a source for illicit use or sale of opioids (the supply), while the widespread use of opioids has created a population of patients physically and psychologically dependent on them (the demand).  When those patients can no longer afford or legitimately obtain opioids, they often turn to the street to buy prescription opioids or even heroin.

20.     Defendants' deceptive marketing and distribution scheme have had further foreseeable impacts on Ford County that have likewise impacted other communities across the United States.  For example, afflicted communities across the country must now devote tax dollars and resources to address their  addicted homeless population who commit drug and property crimes to feed their addiction.  These tax dollars are being used  to maintain the public safety of places where the addicted homeless attempt to congregate, including parks, schools and public lands.  Additionally, communities across the country are spending their tax dollars to fight the infectious diseases brought on by the addicted and particularly the addicted homeless.  Hepatitis B and C, HIV, sexually transmitted disease and methicillin-resistant Staphylococcus aureus ("MRSA") have been

---

[5] Kansas Department of Health and Environment, *Governor's Substance Use Disorders Task Force Report (Sep. 2018)*, http://www.kdheks.gov/pdomp/download/GovSUDTaskForceReport_FINAL.pdf.

demonstrated to be spread by opioid abuse.

21.     Defendants' willful and wrongful conduct has further impacted Ford County by creating a public nuisance in the County, which Defendants foresaw yet deliberately ignored. Defendants were aware at all relevant times when they deceptively marketed their products as non-addictive that such addiction would be highly difficult to overcome.

22.     The role of Defendants' deceptive marketing and distribution scheme in causing this public health crisis has become well-recognized in recent years.  In her May 2014 testimony to the Senate Caucus on International Narcotics Control on behalf of regulators, Dr. Nora Volkow explained that "aggressive marketing by pharmaceutical companies" is "likely to have contributed to the severity of the current prescription drug abuse problem."[6]  In the years since her comments were initially published, Dr. Volkow's message has become the  dominant view of the top experts and influencers in the medical community, who are finally realizing just how addictive Defendants' opioids are, and how devastating the economic and social costs of Defendants' intentional deception has been.[7]

23.     Absent the Manufacturer Defendants' deceptive marketing scheme, the Distributor Defendants' improper distribution and/or dispensing practices, and the Prescriber Defendants' prolific overprescribing practices and failure to disclose to his patients and the public the true risks of long-term opioid therapy for chronic pain, the opioid use, misuse, abuse, and addiction in Ford County would not have become so widespread, and the opioid epidemic that now exists would have been averted or much less severe.

24.     By falsely downplaying the risks and grossly exaggerating the benefits of long-term

---

[6] N. Volkow, M.D., *America's Addiction to Opioids: Heroin and Prescription Drug Abuse*, National Institute on Drug Abuse, (May 14, 2014), https://archives.drugabuse.gov/testimonies/2014/americas-addiction-to-opioids-heroin-prescription-drug-abuse.

[7] E. O'Brien, *Here's What it Would Cost to Fix the Opioid Crisis, According to 5 Experts*, Time Money (Nov. 27, 2017), http://time.com/money/5032445/cost-fix-opioid-crisis/.

opioid use through their deceptive marketing claims, despite their knowledge of the falsity of those claims and their incompetent or otherwise unreasonable failure to correct their misrepresentations, and by improperly distributing, dispensing, and/or prescribing prescription opioids as set forth herein, Defendants have not only engaged in false advertising and unfair competition, but they have also created, maintained, and/or assisted in the creation and/or maintenance of a public health crisis in Ford County that constitutes both a public and a common nuisance under Kansas law.

25.     Accordingly, Defendants' conduct, both individually and collectively, has violated and continues to violate Kansas' public nuisance laws.  Ford County does not ask this Court to weigh the risks and benefits of long-term opioid use.  Instead, Ford County seeks an order requiring Defendants to cease their unlawful promotion and distribution of opioids, to correct their misrepresentations, and to abate the public nuisance they have created.  By this action, Ford County further seeks to both recoup the tax dollars it has continuously spent in response to the public health crisis that Defendants' ongoing, persistent misconduct created in the County, as well as abate the opioid nuisance so Ford County will not be required to spend further taxpayer dollars on the epidemic wrought by Defendants.

## II.     PARTIES

### A.     Plaintiff

26.     The Board of County Commissioners of the County of Ford, State of Kansas, by and through its attorneys hereto, brings this action to protect the public from false and misleading advertising, unlawful, unfair, and fraudulent business practices, and a public nuisance.

27.     Ford County is home to approximately 35,000 citizens.   Ford County is approximately 1,099 square miles and comprised of several cities and towns including Bloom, Bucklin, Concord, Enterprise, Fairview, Ford, Grandview, Richland, Royal, Sodville, Spearville, Wheatland, and Wilburn.

28.     Although Ford County's fire protection and emergency services are partly volunteer-

based, the County funds the operation of four fire districts which includes providing and maintaining emergency vehicles and providing adequate training and supplies for its first responders.

29.     The Ford County Sheriff's Office is responsible for providing for the County's law enforcement needs.  The Ford County Sheriff's Office provide the County's citizens and community with law enforcement services such as street patrol, a criminal investigations units, and a 24-hour 911 communications center.   The Ford County Sheriff's Office also provides various law enforcement programming for its citizens which include crime prevention and anti-drug educational programs, drug enforcement, and neighborhood watch programs.

### B.     Manufacturer Defendants

#### 1.     Actavis/Allergan

30.     Defendant Allergan plc is a public limited company incorporated in Ireland with its principal place of business in Dublin, Ireland.  Actavis plc acquired Allergan plc in March 2015, and the combined company changed its name to Allergan plc in June 2015.  Before that, Watson Pharmaceuticals, Inc. acquired Actavis, Inc. in October 2012, and the combined company changed its name to Actavis, Inc. as of January 2013 and then Actavis plc in October 2013.  Defendant Allergan USA, Inc. is a Delaware corporation with its principal place of business in Madison, New Jersey, and is a wholly owned subsidiary of Allergan plc.  Defendant Actavis, LLC is a limited liability company formed in Delaware, headquartered in New Jersey, and, on information and belief, has members who are citizens of New Jersey and Pennsylvania.  Defendant Watson Laboratories, Inc. is a Nevada corporation with its principal place of business in Corona, California, and is a wholly-owned subsidiary of Allergan plc (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.).  Defendant Actavis Pharma, Inc. (f/k/a Actavis, Inc.) is registered to do business in Kansas as a Delaware corporation with its principal place of business in New Jersey, and was formerly known as Watson Pharma, Inc.  Defendant Actavis plc is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey.  Each of these Defendants is owned by

15

Allergan plc, which uses them to market and sell its drugs in the United States, including in Kansas and Ford County specifically.  Upon information and belief, Allergan plc exercises control over these marketing and sales efforts and profits from the sale of Allergan/Actavis products ultimately inure to its benefit. (Allergan plc, Allergan USA, Inc.; Actavis plc; Actavis, Inc.; Actavis LLC; Actavis Pharma, Inc.; Watson Pharmaceuticals, Inc.; Watson Pharma, Inc.; and Watson Laboratories, Inc. are referred to in this Petition as "Actavis.")

31.     Actavis manufactures, promotes, sells, and distributes opioids, including the branded drugs Kadian and Norco, a generic version of Kadian, and generic versions of Duragesic and Opana, in the U.S., Kansas, and Ford County specifically.  Actavis acquired the rights to Kadian from King Pharmaceuticals, Inc., on December 30, 2008 and began marketing Kadian in 2009.

### 2.     Cephalon

32.     Defendant Cephalon, Inc. ("Cephalon") is a Delaware corporation with its principal place of business in Frazer, Pennsylvania.  Defendant Teva Pharmaceutical Industries, Ltd. ("Teva Ltd.") is an Israeli corporation with its principal place of business in Petah Tikva, Israel.  In 2011, Teva Ltd. acquired Cephalon, Inc.  Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation and is a wholly owned subsidiary of Teva Ltd. in Pennsylvania.  It is registered to do business in Kansas.

33.     Cephalon manufactures, promotes, sells, and distributes opioids such as Actiq and Fentora in the United States, including in Kansas.  Both Actiq and Fentora are over 100 times more powerful than morphine.  Thus, Actiq has been approved by regulators only for the "management of breakthrough cancer pain in patients 16 years and older with malignancies who are already receiving and who are tolerant to around-the-clock opioid therapy for the underlying persistent cancer pain."  Similarly, Fentora has been approved only for the "management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and who are tolerant to around-the-clock opioid therapy for their underlying persistent cancer pain."  Neither Actiq nor Fentora are

appropriate treatments for chronic pain.

### 3. Teva

34.     Teva Ltd., Teva USA, and Cephalon work together closely to market and sell Cephalon products in the United States, including in Kansas and Ford County specifically. Teva Ltd. conducts all sales and marketing activities for Cephalon in the United States through Teva USA and has done so since its October 2011 acquisition of Cephalon. Teva Ltd. and Teva USA hold out Actiq and Fentora as Teva products to the public. Teva USA sells all former Cephalon branded products through its "specialty medicines" division. The approved prescribing information and medication guide, which is distributed with Cephalon opioids, discloses that the guide was submitted by Teva USA, and directs physicians to contact Teva USA to report adverse events.

35.     All of Cephalon's promotional websites, including those for Actiq and Fentora, display Teva Ltd.'s logo. Teva Ltd.'s financial reports list Cephalon's and Teva USA's sales as its own, and its year-end report for 2012—the year immediately following the Cephalon acquisition— attributed a 22% increase in its specialty medicine sales to "the inclusion of a full year of Cephalon's specialty sales," including *inter alia* sales of Fentora. Through interrelated operations like these, Teva Ltd. operates in the United States through its subsidiaries Cephalon and Teva USA. The United States is the largest of Teva Ltd.'s global markets, representing 53% of its global revenue in 2015, and, were it not for the existence of Teva USA and Cephalon, Teva Ltd. would conduct those companies' business in the United States itself. Upon information and belief, Teva Ltd. directs the business practices of Cephalon and Teva USA, and their profits inure to the benefit of Teva Ltd. as controlling shareholder, including profits arising from Cephalon and Teva USA's business practices in Kansas and Ford County, specifically.

36.     At all times relevant, Teva manufactured and marketed prescription opioids throughout the United States, including in Kansas and Ford County specifically, and according to government data, Teva is a top manufacturer of opioids to Ford County. Teva has engaged in

consensual commercial dealings with Ford County's residents and has purposefully availed itself of the advantages of conducting business with and within Ford County.

### 4.    Endo

37.    Defendant Endo Health Solutions Inc. is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.  Defendant Endo Pharmaceuticals, Inc. is a wholly owned subsidiary of Endo Health Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. (Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are referred to as "Endo").

38.    Endo develops, markets, and sells prescription drugs, including the opioids Opana/Opana ER, Percodan, Percocet, and Zydone, in the U.S. and Kansas.  Opioids made up roughly $403 million of Endo's overall revenues of $3 billion in 2012.   Opana ER yielded $1.15 billion in revenue from 2010 and 2013, and it accounted for 10% of Endo's total revenue in 2012.  Endo also manufactures and sells generic opioids such as oxycodone, oxymorphone, hydromorphone, and hydrocodone products in the U.S. and Kansas, by itself and through its subsidiary, Qualitest Pharmaceuticals, Inc.

39.    At all times relevant, Endo manufactured and marketed prescription opioids throughout the United States, including in Kansas and Ford County specifically, according to government data, Endo is a top manufacturer of opioids distributed to Ford County and/or dispensed to Ford County patients.  Endo has engaged in consensual commercial dealings with Ford County's residents and has purposefully availed itself of the advantages of conducting business with and within Ford County.

### 5.    Par

40.    Defendants Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. (collectively, "Par") are New York corporations with their principal places of business in New York. Par was acquired by Endo in 2015.  Par is the fifth largest manufacturer of generic pharmaceuticals

in the world, including oxycodone, oxymorphone, and hydrocodone.

41.    At all times relevant, Par manufactured and marketed prescription opioids throughout the United States, including in Kansas and Ford County specifically, and according to government data, Par is a top manufacturer of opioids distributed to Ford County and/or dispensed to Ford County patients.  Par has engaged in consensual commercial dealings with Ford County's residents and has purposefully availed itself of the advantages of conducting business with and within Ford County.

### 6.    Janssen

42.    Defendant    Janssen    Pharmaceuticals,    Inc.    (f/k/a    Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Janssen Pharmaceutica, Inc.) is registered to do business in Kansas as a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of Defendant Johnson & Johnson ("J&J"), a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  These entities, which are collectively referred to herein as "Janssen," acted in concert with one another—as agents and/or principals of one another—in connection with the conduct described herein. J&J is the only company that owns more than 10% of Janssen Pharmaceuticals' stock, and corresponds with regulators regarding Janssen's products.  Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals' drugs and Janssen's profits inure to J&J's benefit.  The Janssen and J&J parties are collectively referred to as "Janssen."

43.    At all times relevant, Janssen manufactured, promoted, sold, and distributed opioids in the U.S. and Kansas and Ford County specifically, including the opioid Duragesic.  Before 2009, Duragesic accounted for at least $1 billion in annual sales.  Until January 2015, Janssen developed, marketed, and sold the opioids Nucynta and Nucynta ER, which also generated substantial sales revenue for the company, accounting for $172 million in sales in 2014 alone.  According to government data, Janssen is a top manufacturer of opioids that were distributed to Ford County.

19

### 7.     Johnson & Johnson

44.     Defendant Johnson & Johnson ("J&J"), a New Jersey corporation with its principal place of business in New Brunswick, New Jersey, imposes a code of conduct on Janssen as a pharmaceutical subsidiary of J&J.  The "Every Day Health Care Compliance Code of Conduct" posted on Janssen's website is a J&J company-wide document that describes Janssen as one of the "pharmaceutical Companies of Johnson and Johnson" and as one of the "Johnson & Johnson Pharmaceutical Affiliates."  It governs how "[a]ll employees of Johnson & Johnson Pharmaceutical Affiliates," including those of Janssen, "market, sell, promote, research, develop, inform and advertise Johnson & Johnson Pharmaceutical Affiliates' products."  All Janssen officers, directors, employees, and sales associates must certify that they have "read, understood and will abide by" the code of conduct.  Thus, the code of conduct governs all forms of marketing at issue in this case.

45.     In addition, J&J made payments to front groups, discussed herein, who perpetuated and disseminated Defendants' misleading marketing messages across the country—including,  on information and belief, in Kansas and Ford County—regarding the risks and benefits of opioids.[8]

### 8.     Mylan

46.     Defendant Mylan Institutional Inc. ("Mylan Institutional") is an Illinois corporation headquartered in Rockford, Illinois.  Mylan Institutional manufactures and markets pharmaceutical products.   Defendant Mylan Pharmaceuticals, Inc. ("Mylan Pharmaceuticals") is based in Morgantown, West Virginia, and is also a major manufacturer and marketer of opioids in Ford County.  Both Mylan Institutional and Mylan Pharmaceuticals are subsidiaries of Defendant Mylan Pharmaceuticals NV ("Mylan NV"), which is the second-largest generic and specialty pharmaceuticals company in the world, registered in the Netherlands with principal executive offices

---

[8] U.S. Senate Homeland Security & Governmental Affairs Committee, Ranking Member's Office, Staff Report, *Fueling an Epidemic, Report Two, Exposing the Financial Ties Between Opioid Manufacturers and Third Party Advocacy Groups*, n. 23 ("Payments from Janssen include payments from Johnson & Johnson Health Care Systems, Inc.").

in Hatfield, Hertfordshire, UK and a global center in Canonsburg, Pennsylvania.  Together, at all times relevant to this action, Mylan Institutional, Mylan Pharmaceuticals, and Mylan NV (collectively, "Mylan") manufactured and marketed prescription opioids throughout the United States, including in Kansas and Ford County specifically.  According to government data, Mylan is a top manufacturer of opioids that were distributed to Ford County, including fentanyl, oxycodone, morphine, and codeine.

47.     Defendant Mylan Institutional Inc. ("Mylan Institutional") is an Illinois corporation headquartered in Rockford, Illinois.  Mylan manufactures and markets pharmaceutical products. Defendant Mylan Pharmaceuticals, Inc. ("Mylan Pharmaceuticals") is based in Morgantown, West Virginia, and is also a major manufacturer and marketer of opioids in Ford County.  Both Mylan Institutional and Mylan Pharmaceuticals are subsidiaries of Defendant Mylan N.V., the second-largest generic and specialty pharmaceuticals company in the world, registered in the Netherlands with principal executive offices in Hatfield, Hertfordshire, UK and a global center in Canonsburg, Pennsylvania.  (Mylan Institutional, Mylan Pharmaceuticals, and Mylan N.V. shall collectively be referred to as "Mylan").  At all times relevant, Mylan manufactured and marketed prescription opioids throughout the United States, including in Kansas and Ford County specifically.  According to government data, Mylan is a top manufacturer of opioids that were distributed to Ford County, including fentanyl, oxycodone, morphine, and codeine.

48.     In 2000, Mylan agreed to pay $100 million to resolve allegations that it conspired to deny its competitors certain necessary ingredients to manufacture several widely-prescribed medications, including treatments for opioid use disorder and opioid addiction.  As alleged in petitions filed by thirty-two State Attorneys General and the District of Columbia, Mylan's conduct caused substantial price increases in, and improperly limited the supply of, these treatments.

    **9.    West-Ward**

49.     Defendant Hikma Pharmaceuticals USA Inc. f/k/a West-Ward Pharmaceuticals Corp.

is headquartered in Eatontown, New Jersey and manufactures, markets and/or distributes opioids such as fentanyl and morphine.  West-Ward Pharmaceuticals Corp. ("West-Ward") is a wholly owned subsidiary of Hikma Pharmaceuticals plc, and represented 51% of Hikma's group sales in 2014.  Since acquiring Baxter Healthcare Corporation's Multi-Source Injectables division in 2011, West-Ward has become the second largest injectable supplier by volume in the country.  At all times relevant, West-Ward manufactured and marketed prescription opioids throughout the United States, including in Kansas and Ford County specifically.

50.    In 2013, West-Ward was forced to pay penalties for shirking the company's legal obligation to make timely payments to drug discount programs that provide vulnerable patient population with affordable access to pharmaceuticals, and also agreed to pay $10,000,000 to resolve allegations that West-Ward had also been inflating prescription drug prices since 1995, effectively overcharging some of its most vulnerable patient populations.

### 10.    Mallinckrodt/SpecGX

51.    Defendant Mallinckrodt plc is an Irish public limited company headquartered in Staines-upon-Thames, United Kingdom, with its U.S. headquarters in St. Louis, Missouri. Mallinckrodt plc was incorporated in January 2013 for the purpose of holding the pharmaceuticals business of Covidien plc, which was fully transferred to Mallinckrodt in June of that year. Mallinckrodt began as a U.S.-based company, with the founding of Mallinckrodt & Co. in 1867, Tyco International Ltd. acquired the company in 2000.  In 2008, Tyco Healthcare Group separated from Tyco International Ltd. and renamed itself Covidien.

52.    Defendant Mallinckrodt LLC is a limited liability company formed in Delaware and headquartered with its principal place of business in St. Louis, Missouri.  Mallinckrodt LLC is a wholly owned subsidiary of Mallinckrodt, plc.

53.    Defendant SpecGX LLC ("SpecGX") is a limited liability company  formed in Delaware and headquartered with its principal place of business in St. Louis, Missouri.  SpecGX is a

wholly owned subsidiary of Mallinckrodt plc.

54.     Together, Mallinckrodt plc, Mallinckrodt LLC, and SpecGX LLC (collectively, "Mallinckrodt") manufacture, market, and sell drugs in the United States, including in Kansas and Ford County and its neighboring counties.  As of 2012, it was the largest U.S. supplier of opioid pain medications.  In particular, it is one of the largest manufacturers of oxycodone in the U.S.

55.     Mallinckrodt currently manufactures and markets two branded opioids: Exalgo, which is extended-release hydromorphone, sold in 8, 12, 16, and 32 mg dosage strengths, and Roxicodone, which is oxycodone, sold in 15 and 30 mg dosage strengths.  In addition, Mallinckrodt previously developed, promoted, and sold the following branded opioid products: Magnacet, TussiCaps, and Xartemis XR.

56.     While it has sought to develop its branded opioid products, Mallinckrodt has long been a leading manufacturer of generic opioids.  Mallinckrodt estimated that, in 2015, it received approximately 25% of one regulator's entire annual quota for controlled substances that it manufactures.  Mallinckrodt also estimated, based on health data for the same period, that its generics claimed an approximately 23% market share of opioid and oral solid dose medications.

57.     Mallinckrodt operates a vertically integrated business in the United States: (1) importing raw opioid materials, (2) manufacturing generic opioid products, primarily at its facility in Hobart, New York, and (3) marketing and selling its products to drug distributors, specialty pharmaceutical distributors, retail pharmacy chains, pharmaceutical benefit managers that have mail-order pharmacies, and hospital buying groups throughout the United States, including in Kansas and Ford County and its neighboring counties specifically.

11.     **The Insys Individual Defendants: John Kapoor and Michael Babich**

58.     Insys Therapeutics, Inc. ("Insys") is a Delaware corporation with its principal place of business in Chandler, Arizona and is registered to do business in Kansas.  Insys manufactures, markets, sells and distributes nationwide several types of opioids, including Subsys—a fentanyl

23

sublingual spray and semi-synthetic opioid antagonist—as well as Syndros, a cannabinoid medicine used in adults to treat common side-effects of opioid use, particularly for patients whose nausea and vomiting have not improved with usual anti-nausea and vomiting medicines.  Subsys and Syndros were approved for widespread use in 2012 and 2016, respectively.

59.    Subsys is indicated "for the management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and are tolerant to opioid therapy for their underlying persistent cancer pain."[9]  The indication also specifies that "Subsys is intended to be used only in the care of cancer patients and only by oncologists and pain specialists who are knowledgeable of and skilled in the use of Schedule II opioids to treat cancer pain."  In addition, the indication provides that "[p]atients must remain on around-the-clock opioids when taking SUBSYS."  Subsys is contraindicated for, among other ailments, the "[m]anagement of acute or postoperative pain including headache/migraine and dental pain." It is available in 100 mcg, 200 mcg, 400 mcg, 600 mcg and 800 mcg dosage strengths.

60.    Insys' revenue is derived almost entirely from Subsys.  According to its Form 10-K for 2015, Insys reported revenues of $331 million.  Of that total, $329.5 million was derived from sales of Subsys.  The majority of Insys' sales of Subsys are through wholesalers, including Defendants AmerisourceBergen and Cardinal Health.  In 2015, those wholesalers respectively comprised 20% and 14% of Insys' total gross sales of Subsys.

61.    On June 7, 2019, the pharmaceutical arm of Insys formally pleaded guilty charges connected to allegations that the company bribed healthcare providers to prescribe a powerful opioid to patients who did not need it, as part of Insys' $225 million dollar settlement to resolve these allegations in Massachusetts.

---

[9]  The indication provides that "[p]atients considered opioid tolerant are those who are taking around-the-clock medicine consisting of at least 60 mg of oral morphine daily, at least 25 mcg of transdermal fentanyl/hour, at least 30 mg of oral oxycodone daily, at least 8 mg of oral hydromorphone daily or an equianalgesic dose of another opioid daily for a week or longer."

62.     Defendant John Kapoor is the founder and majority owner of Insys.  In October of 2017, Kapoor was arrested and charged with various violations of fraud and abuse laws as well as conspiracy, for his alleged participation in a nationwide scheme to bribe healthcare providers in various states, including Kansas, to prescribe Subsys.  On May 2, 2019, he was found guilty of these charges in connection with running a nation-wide bribery scheme.[10]  He is a citizen of Phoenix, Arizona, and a current member of the Board of Directors of Insys.

63.     Defendant Michael Babich is the former CEO and President of Insys.  In 2017, he was also arrested and charged with various violations of fraud and abuse laws as well as conspiracy, in connection with running a nationwide scheme intended to bribe or deceive healthcare providers in various states, including Arizona, to prescribe Subsys.  In January of 2019, Defendant Babich pleaded guilty to these charges.  He is a citizen of Scottsdale, Arizona.

C.     **Distributor Defendants**

1.     **AmerisourceBergen**

64.     Defendant AmerisourceBergen Drug Corporation is a publicly traded company headquartered in Pennsylvania, incorporated under the laws of Delaware, and is registered to do business in Kansas.  Defendant AmerisourceBergen Corporation is the parent company of AmerisourceBergen Drug Corporation.  (AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation shall collectively be referred to as "AmerisourceBergen").  AmerisourceBergen is in the chain of distribution of prescription opioids.  At all relevant times, AmerisourceBergen was in the business of distributing substantial amounts of prescription opioids to providers and retailers.  AmerisourceBergen has engaged in consensual commercial dealings in Ford County, and has purposefully availed itself of the advantages of conducting business with and within Ford County.

_____

[10]  Gabrielle Emanuel, *Opioid Executive John Kapoor Found Guilty in Landmark Bribery Case*, NPR (May 2, 2019) https://www.npr.org/2019/05/02/711346081/opioid-executive-john-kapoor-found-guilty-in-landmark-bribery-case

### 2.    McKesson/McQueary

65.    Defendant McKesson Corporation ("McKesson") is a publicly-traded company headquartered in California, with its principal place of business located at One Post Street, San Francisco, California 94104 and incorporated under the laws of Delaware.  McKesson is in the chain of distribution of prescription opioids.  At all relevant times, McKesson was in the business of distributing substantial amounts of prescription opioids to providers and retailers.  McKesson has engaged in consensual commercial dealings in Ford County and has purposefully availed itself of the advantages of conducting business with and within Ford County.

66.    At all times relevant, McKesson distributed prescription opioids throughout the United States, including in Kansas and Ford County specifically.  On information and belief, McKesson's share of the opioid market in Ford County is substantial, both in terms of the number of opioid pills distributed by McKesson as well as McKesson's proportional share of the overall MME market in Ford County.  On information and belief, McKesson is a top distributor of buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, methadone, morphine, oxycodone, oxymorphone, and tapentadol in Ford County.

67.    Defendant McQueary Bros. Drug Company, LLC ("McQueary") is a limited liability company formed in Delaware and headquartered with its principal place of business in Springfield, Missouri.  McQueary is in the chain of distribution of prescription opioids. At all relevant times, McQueary was a Midwestern regional distributor of pharmaceutical products to more than 400 independent pharmacies across Missouri, Arkansas, Illinois, Kansas, Oklahoma, Nebraska, and Iowa.  McQueary has engaged in consensual commercial dealings in Ford County, and has purposefully availed itself of the advantages of conducting business within Ford County.  In 2008, McQueary was acquired by McKesson in an effort to expand Mckesson's regional footprint in the Midwestern United States.  Upon information

26

and belief, McQueary's operations have been integrated into McKesson's U.S. Pharmaceutical business.

68.     At all times relevant, McQueary distributed prescription opioids throughout the United States, including in Kansas and Ford County specifically.  On information and belief, McQueary's share of the opioid market in Ford County is substantial, both in terms of the number of opioid pills distributed by McQueary as well as McQueary's proportional share of the overall MME market in Ford County.  On information and belief, McQueary is a top distributor of codeine, fentanyl, hydrocodone, hydromorphone, methadone, morphine, and oxycodone in Ford County.

### 3.     Cardinal Health

69.     Defendant Cardinal Health, Inc. is an Ohio pharmacy wholesaler and drug distribution corporation with its headquarters located in Dublin, Ohio.  Defendant Cardinal Health 100, Inc. is an Indiana corporation with its principal place of business located in Dublin, Ohio. Defendants Cardinal Health 5, LLC; Cardinal Health 110, LLC; Cardinal Health 200, LLC; and Cardinal Health 414, LLC are limited liability companies formed in Delaware with their principal place of business in Dublin, Ohio.  On information and belief, at least one of Cardinal Health 5, LLC's; Cardinal Health 110, LLC's; Cardinal Health 200, LLC's; and Cardinal Health 414, LLC's members is a citizen of Ohio.  Defendant Cardinal Health 122, LLC is a limited liability company formed in Delaware with its principal place of business in Ellicott City, Maryland.  On information and belief, at least one of Cardinal Health 122, LLC's members is a citizen of Ohio.  Defendants Cardinal Health 132, LLC and Cardinal Health Pharmacy Services, LLC are limited liability companies formed in Delaware with their principal place of business in Houston, Texas.  On information and belief, at least one of Cardinal Health 132, LLC's and Cardinal Health Pharmacy Services, LLC's members is a citizen of Ohio.  (Cardinal Health, Inc.; Cardinal Health 100, Inc.; Cardinal Health 5, LLC; Cardinal Health 110, LLC; Cardinal Health 122, LLC; Cardinal Health 132,

LLC; Cardinal Health 200, LLC; Cardinal Health 414, LLC; and Cardinal Health Pharmacy Services, LLC are all registered to do business in Kansas and shall collectively be referred to as "Cardinal Health.")  At all relevant times, Cardinal Health was in the business of distributing substantial amounts of prescription opioids to providers and retailers.  Cardinal Health has engaged in consensual commercial dealings in Ford County, and has purposefully availed itself of the advantages of conducting business with and within Ford County.  Cardinal Health is in the chain of distribution of prescription opioids.

### 4.  Walmart Inc.

70.  Defendant Distributor Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart") is a Delaware corporation with its principal place of business in Arkansas.

71.  At all times relevant, Walmart distributed prescription opioids throughout the United States, including in Kansas and Ford County and its neighboring counties specifically.  On information and belief, these opioids were distributed to Ford County and its neighboring counties by at least one Walmart entity, Wal-Mart Pharm.  On information and belief, Walmart is a top distributor of fentanyl, oxycodone, oxymorphone, hydrocodone, hydromorphone, morphine, methadone and buprenorphine in and around Ford County and its neighboring counties.  Walmart has engaged in consensual commercial dealings in and around Ford County and its neighboring counties, and has purposefully availed itself of the advantages of conducting business with, within, and around Ford County and its neighboring counties.  Walmart is in the chain of distribution of prescription opioids.  As reported by the Washington Post, there were 100,000 prescription opioid deaths between 2006 and 2012, during which time two-thirds of the 76 billion opioid pain pills to flood the market were distributed by Walmart and just a handful of other companies.[11]  In 2016,

---

[11]  Scott Higham, *76 billion opioid pills: Newly released data unmasks the epidemic*, The Washington Post (July 16, 2019), https://www.washingtonpost.com/investigations/76-billion-opioid-pills-newly-released-federal-data-unmasks-the-epidemic/2019/07/16/5f29fd62-a73e-11e9-86dd-d7f0e60391e9_story.html; *see also Walmart, CVS, Walgreens Opioid Crisis Lawsuit*, VOX (July 23, 2019), https://www.vox.com/the-goods/2019/7/23/20707179/walmart-cvs-

Walmart expanded its long-term prescription drug distribution agreement.[12]  Walmart's total revenue exceeded $500 billion in 2018.

72.     In 2017, Walmart acknowledged the need for "a solution to the [opioid] epidemic" and noted the epidemic has "devastated so many families and communities across America."[13]  However, on information and belief, Walmart has also paid settlements to resolve allegations of recordkeeping violations at pharmacies in various states and has committed and continues to commit serious and flagrant violations regarding—*inter alia*—its recordkeeping and other obligations under Kansas law in connection with its distribution of opioids to Ford County and its neighboring counties.

### 5.     Walgreen Co.

73.     Defendant Distributor Walgreen Co. ("Walgreens") is an Illinois corporation with its principle place of business in Illinois.

74.     At all times relevant, Walgreens distributed prescription opioids throughout the United States, including in Kansas and Ford County and its neighboring counties specifically.  On information and belief, these opioids were distributed to Ford County and its neighboring counties by at least two Walgreens entities—Walgreen Co. d/b/a Walgreens (located at 5100 Lake Terrace NE, Mount Vernon, IL 62864) and Walgreen Co. d/b/a Walgreens (located at 6464 Blanchars Crossing, Windsor, WI 53598)—to at least one buyer which is located in Ford County, Walgreens #7817 located at 1801 N. 14th Avenue, Dodge City, Kansas.  On information and belief, Walgreens is a top distributor of fentanyl, oxycodone, hydrocodone, hydromorphone, codeine, morphine,

---

walgreens-opioid-crisis-lawsuit-trial.

[12]  See Chain Drug Review, *Extended Agreement Adds Sourcing of Generic Drugs* (May 16, 2016), https://corporate.walmart.com/newsroom/2016/05/16/mckesson-and-walmart-announce-sourcing-agreement-for-generic-pharmaceuticals.

[13]  Press Release, *Walmart, Walmart Supports the State of Emergency Declaration on Opioids* (Oct. 26, 2017), https://news.walmart.com/2017/10/26/walmart-supports-state-of-emergency-declaration-on-opioids.

methadone and buprenorphine in Ford County and its neighboring counties. Walgreens has engaged in consensual commercial dealings in and around Ford County and its neighboring counties and has purposefully availed itself of the advantages of conducting business with, within, and around Ford County and its neighboring counties.  Walgreens is in the chain of distribution of prescription opioids.

75.    In 2016, Walgreens issued a press release captioned "Walgreens Leads Fight Against Prescription Drug Abuse with New Programs to Help Curb Misuse of Medications and the Rise in Overdose Deaths."[14]  However, on information and belief, Walgreens, the second-largest pharmacy store chain in the United States, has committed, continues to commit, and has been penalized for serious and flagrant violations regarding its recordkeeping and other obligations under Kansas law in connection with its distribution of opioids to Ford County and its neighboring counties

**6.    Kroger Limited Partnership II**

76.    Defendant Kroger Limited Partnership II ("Kroger") is also an Ohio corporation with its principal place of business located in Cincinnati, Ohio. Kroger operates a chain of multi-department and grocery stores which includes pharmacy departments.  At all relevant times, Kroger was in the business of distributing substantial amounts of prescription opioids to providers and retailers.  Kroger has engaged in consensual commercial dealings in Ford County, and has purposefully availed itself of the advantages of conducting business with and within Ford County. Kroger is in the chain of distribution of prescription opioids.

77.    Defendants AmerisourceBergen, McKesson, McQueary, Cardinal Health, Walmart, Walgreens, and Kroger Limited Partnership II are collectively referred to as the "Distributor Defendants."  Manufacturers of opioids have transferred prescription opioids to the Distributor

---

[14]  Press Release, Walgreens, *Walgreens Leads Fight Against Prescription Drug Abuse with New Programs to Help Curb Misuse of Medications and the Rise in Overdose Deaths* (Feb. 9, 2016), https://news.walgreens.com/press-releases/general-news/walgreens-leads-fight-against-prescription-drug-abuse-with-new-programs-to-help-curb-misuse-of-medications-and-the-rise-in-overdose-deaths.htm

Defendants for years.  The Distributor Defendants dominate 85 to 90 percent of all revenues from drug distribution in the United States, estimated to be at $378.4 billion in 2015.  The Distributor Defendants supplied opioids to hospitals, pharmacies (including their own retail stores), doctors and other healthcare providers, which then dispensed the drugs to patients in Kansas, including in Ford County.  The Distributor Defendants have had substantial contacts and business relationships with the citizens of Ford County.  The Distributor Defendants have purposefully availed themselves of business opportunities within Ford County.

**D.      Pharmacy Defendants**

**1.      Dillon Companies, LLC**

78.      Defendant Dillon Companies, LLC f/k/a Dillon Companies, Inc., dba Dillon Pharmacy ("Dillon Pharmacy") provides pharmaceutical services through its grocery retail location. Dillon Pharmacy  is a local pharmacy located at 1700 N. 14th Avenue, Dodge City, KS 67801.  On information and belief, Defendant Dillon Pharmacy is a top dispenser of opioids in Ford County and has committed and continues to commit serious and flagrant violations of Kansas laws regarding the dispensing of opioids, including—*inter alia*—violations of the Kansas Uniform Controlled Substances Act and the Kansas Pharmacy Act.

**2.      Walmart Pharmacy**

79.      Defendant Wal-Mart Stores East, LP d/b/a Walmart #372 ("Walmart Pharmacy") is a Delaware limited partnership with its principal place of business in Arkansas.  On information and belief, at least one of Walmart Pharmacy's members is a citizen of Bentonville, Arkansas and, therefore, Walmart Pharmacy is a citizen of Arkansas.  At all times relevant, Walmart Pharmacy distributed prescription opioids throughout the United States, including in Kansas and Ford County and its neighboring counties specifically.  On information and belief, Walmart Pharmacy is a top dispenser of opioids in and around Ford County that has committed and continues to commit serious and flagrant violations regarding—*inter alia*—its recordkeeping and other obligations under Kansas

31

law in connection with dispensing opioids to Ford County patients.  Walmart Pharmacy has engaged in consensual commercial dealings in and around Ford County and its neighboring counties and has purposefully availed itself of the advantages of conducting business with, within, and around Ford County and its neighboring counties.  (Walmart Inc. f/k/a Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP d/b/a Walmart #372 shall collectively be referred to as "Walmart.")

### 3.    Walgreens Pharmacy

80.    Defendant Walgreen Co. d/b/a Walgreens #7817 ("Walgreens Pharmacy") is an Illinois corporation with its principal place of business in Illinois.  Walgreens operates a chain pharmacy in Ford County.  On information and belief, Walgreens Pharmacy is a top dispenser of opioids in or around Ford County and its neighboring counties that has committed and continues to commit serious and flagrant violations regarding—*inter alia*—its recordkeeping and other obligations under Kansas law in connection with dispensing opioids to Ford County patients.  Walgreens Pharmacy has engaged in consensual commercial dealings in or around Ford County and its neighboring counties, and has purposefully availed itself of the advantages of conducting business with, within, and around Ford County and its neighboring counties.  (Walgreen Co. and Walgreen Co. d/b/a Walgreens #7817 shall collectively be referred to as "Walgreens.")

81.    The Defendants Dillon Pharmacy, Walmart Pharmacy, and Walgreens Pharmacy are collectively referred to as the "Pharmacy Defendants."

### E.    DOE Defendants

82.    Ford County is ignorant of the true names or capacities, whether individual, plural, corporate, partnership, associate, or otherwise of DOES 1 through 1000, inclusive, is unknown to Plaintiff who therefore sues said Defendants by such fictitious names.  The full extent of the facts linking such fictitiously sued Defendants is unknown to Plaintiff.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE was, and is, negligently, recklessly, and/or intentionally responsible for the events and happenings hereinafter referred to, and

thereby negligently, recklessly, and/or intentionally legally and proximately caused the hereinafter described injuries and damages to Ford County. Plaintiff will hereafter seek leave of the Court to amend this Petition to show the fictitiously sued Defendants' true names and capacities, after the same have been ascertained.

## III.    **JURISDICTION AND VENUE**

83.    The District Court of Ford County, Kansas has general original jurisdiction over this civil action pursuant to the provisions of K.S.A. 20-301.

84.    Venue is proper in Ford County, Kansas pursuant to the applicable provisions of Chapter 60, Article 6 of the Kansas Statutes Annotated because, *inter alia*, Plaintiff's causes of action arose in Ford County, Kansas and many of the corporate defendants named in this Petition are Kansas corporations, have principal places of business located in Ford County, Kansas, and/or have registered offices located in Ford County, Kansas.  Further, venue in Ford County is proper pursuant to K.S.A. 50-638(b), 60-603(1), (3), 60-604(2), (3), 60-605(1), (3), (4), because:

   **a.**    Plaintiff resides in this county;

   **b.**    Actions and injuries giving rise to the cause of action occurred in this county;

   **c.**    The Manufacturer Defendants promoted their opioids through "treating" physicians, whom the Manufacturer Defendants rewarded for excessively prescribing opioids, the misuse of which both occurred in, and resulted in financial damages to, Ford County;

   **d.**    The subject prescriptions for the Manufacturer Defendants opioids were filled in pharmacies in Kansas and in this county from shipments by the Distributor Defendants; and

   **e.**    Defendants engaged in acts and practices in violation of K.S.A. 50-623, *et seq.*  in this county.

85.    Pursuant to K.S.A. 60-308 and 50-638(a), personal jurisdiction over the non-resident

33

defendants in proper in Kansas because:

    **a.**    The Manufacturer Defendants, either individually or through their agents or instrumentalities: (1) transacted business, including consumer transactions, within Kansas; (2) committed tortious acts within Kansas; (3) caused injuries to persons in Kansas arising out of acts or omissions outside of Kansas while engaging in solicitation activities in Kansas, and opioids manufactured by the Manufacturer Defendants were used and consumed in Kansas in the ordinary course of trade or use.

    **b.**    The Distributor Defendants, through their agents and instrumentalities: (1) transacted business, including consumer transactions, within Kansas; (2) committed tortious acts within Kansas; (3) caused injuries to persons in Kansas arising out of acts or omissions outside of Kansas while engaging in solicitation activities in Kansas, and distributed opioids used and consumed in Kansas in the ordinary course of trade or use.

## IV.    FACTUAL ALLEGATIONS

### A.    The Manufacturer Defendants' Impact on the Perception and Prescribing of Opioids

86.    Before the Manufacturer Defendants began the marketing campaign complained of herein, the generally accepted standards of medical practice dictated that opioids should only be used short-term, for acute pain, or for patients nearing the end of life. The Manufacturer Defendants changed this perception and took advantage of addiction to make money. The Manufacturer Defendants' marketing campaign resulted in skyrocketing opioid prescriptions. The shocking increase in prescriptions has been a financial boon for the Manufacturer Defendants. It has been a tragedy for patients and citizens of Ford County. Ford County has lost citizens young and old to the opioid epidemic—too many children in Ford County have lost their parents and too many parents have buried their children. Too many grandparents are raising their grandchildren.

87.     Patients who survive addiction need lengthy, difficult, and expensive treatment. People who are addicted to opioids are often unable to work.  The addiction of parents can force their children into foster care.  Babies are born addicted to opioids, a condition known as Neonatal Abstinence Syndrome ("NAS"), because they are exposed to the drugs in the womb.  Indeed, The Manufacturer Defendants' misconduct has imposed heavy costs on the citizens of Ford County.

**B.    The Manufacturer Defendants Engaged in a Deceptive Marketing Scheme to Increase Profits**

88.     To profit from their highly addictive drugs, the Manufacturer Defendants engaged in deadly and illegal practices to deceive doctors and patients.  <u>First</u>, the Manufacturer Defendants deceived Ford County doctors and patients to get more people on their highly addictive drugs. <u>Second</u>, the Manufacturer Defendants misled them to take higher doses and/or quantities.  <u>Third</u>, the Manufacturer Defendants deceived them to stay on their drugs for longer and more harmful periods of time.

89.     The Manufacturer Defendants targeted vulnerable people who could be introduced to opioids, including elderly patients and people who had never taken opioids before.   The Manufacturer Defendants targeted these vulnerable patients even though the risks of long-term opioid use significantly outweighed any marginal benefits, particularly for elderly and other at-risk patients, for whom such opioid use carried substantially higher risks.  Existing evidence shows that elderly patients taking opioids suffer from elevated fall and fracture risks, greater risk of hospitalization, and increased vulnerability to adverse drug effects and interactions.  Clinical guidelines for opioid therapy, therefore, conclude that there are "special risks of long-term opioid use for elderly patients" and recommend that prescribers use "additional caution and increased monitoring" to minimize the risks of opioid use in elderly patients.

90.     All the while, the Manufacturer Defendants peddled falsehoods to keep patients away from safer alternatives.  Even when the Manufacturer Defendants knew people in Ford County were

addicted and dying, the Manufacturer Defendants treated doctors and patients as "targets" to sell more drugs.

91.     Each part of the scheme earned the Manufacturer Defendants more money from opioid sales and caused more addiction and death in Ford County.  And each Manufacturer Defendant participated in and profited from the scheme in Ford County, as set forth below.

C.     **The Manufacturer Defendants Funneled Misrepresentations Through Sales Representatives, Advertisements, and Third Parties**

92.     Ford County patients continue to visit emergency rooms and/or die after taking the Manufacturer Defendants' drugs because Ford County was subject to the Manufacturer Defendants' massive deceptive sales campaign.  The Manufacturer Defendants deceptively marketed their opioids directly to healthcare providers and patients in Ford County.  The Manufacturer Defendants also deployed sales representatives to spread their false and misleading statements about the risks and benefits of opioids for the treatment of long-term chronic pain throughout Kansas and, specifically, in Ford County.

93.     These representatives were the Manufacturer Defendants' most powerful tools of deception by using them to conduct face to face meetings with Ford County healthcare providers and pharmacists in an effort to promote opioids.  During these sales visits, the Manufacturer Defendants' representatives made false and misleading claims directly to the professionals who care for Ford County patients.  The Manufacturer Defendants assigned representatives to Ford County and gave them lists of Ford County doctors to visit.  The 'scripts' used by these representatives were approved and closely monitored by Manufacturer Defendants.

94.     Each of these visits cost the Manufacturer Defendants money.  But the Manufacturer Defendants made this money back many times over, because they convinced doctors to prescribe their addictive drugs.  The Manufacturer Defendants rewarded high prescribing doctors with meals, money, and gifts.  The Manufacturer Defendants' sales representatives who generated the most

36

prescriptions won bonuses and prizes.  These representatives have spread and continue to spread misinformation regarding the risks and benefits of opioids to hundreds of thousands of doctors, and other healthcare providers, including those in Ford County.

95.     The Manufacturer Defendants' representatives have been reprimanded for their deceptive promotions.  A July 2010 "Dear Doctor" letter mandated by regulators required Actavis to acknowledge to the doctors to whom it marketed its drugs that "[b]etween June 2009 and February 2010, Actavis sales representatives distributed…promotional materials that…omitted and minimized serious risks associated with [Kadian]," including the risk of "[m]isuse, [a]buse, and [d]iversion of [o]pioids" and, specifically, the risk that "[o]pioid[s] have the potential for being abused and are sought by drug abusers and people with addiction disorders and are subject to criminal diversion."

96.     The Manufacturer Defendants also conducted and continue to conduct advertising campaigns touting the purported benefits of their branded drugs.  For example, the Manufacturer Defendants spent more than $14 million on medical journal advertising of opioids in 2011, nearly triple what they spent in 2001.  This amount included $4.9 million by Janssen, $1.1 million by Endo, and $8.3 million by Purdue (which is owned and controlled by the Sacklers, neither of which is a party to this action).

97.     A number of the Manufacturer Defendants' branded ads deceptively portrayed the benefits of opioids for chronic pain.  For example, since at least May 21, 2011, Endo has distributed and made available on its website opana.com a pamphlet promoting Opana ER with photographs depicting patients with physically demanding jobs like construction workers and chefs, misleadingly implying that the drug would provide long-term pain-relief and functional improvement.  Purdue— which is owned and controlled by the Sacklers, neither of which is a party to this action—also ran a series of ads, called "Pain vignettes," for OxyContin in 2012 in medical journals.  These ads featured chronic pain patients and recommended OxyContin for each.  One ad described a "54-year old writer with osteoarthritis of the hands" and implied that OxyContin would help the writer work more

effectively.  Endo and Purdue agreed in late 2015 and 2016 to halt these misleading representations in New York, but they continue to disseminate them in Kansas.

98.     Similarly, despite Subsys' limited indication and the potent danger associated with fentanyl, Insys falsely and misleadingly marketed Subsys to doctors as an effective treatment for back pain, neck pain and other off-label breakthrough pain conditions.  As of June 2012, Insys defined "breakthrough pain" in cancer patients to include mild pain: a "flare of mild-to-severe pain in patients with otherwise stable persistent pain," based on a misleading citation to a paper written by Dr. Russell Portenoy.[15]  Insys trained and instructed its sales representatives to use the false definition of breakthrough pain and specifically to use a core visual aid, including the improper definition, whenever they detailed Subsys to a healthcare provider or provider's office.  Indeed, as described herein in Sections II.E. and IV.O., the Prescriber Defendant Dr. Simon was complicit in this scheme.

99.     According to a 2014 article in *The New York Times*, only 1% of prescriptions for Subsys were written by oncologists.  Approximately half the prescriptions were written by pain specialists—like the Prescriber Defendant—with others, including dentists and podiatrists, writing prescriptions as well.[16]

100.     On September 6, 2017, Senator Claire McCaskill's report, "Fueling an Epidemic: Insys Therapeutics and the System Manipulation of Prior Authorization" was published.  The report found that Insys manipulated the prior authorization process [17] by misleading pharmacy benefit

---

[15]     Portenoy's paper, which was featured in the 1990 issue of Pain, actually defined breakthrough pain as "a transitory increase in pain to greater than moderate intensity—i.e., to an intensity of 'severe' or 'excruciating') . . . on a baseline pain of moderate intensity or less." Russell K. Portenoy & Neil A. Hagen, *Breakthrough pain: Definition, prevalence and characteristics*, 41(3) Pain 273-81 (July 1990).

[16]     Katie Thomas, *Doubts Raised About Off-Label Use of Subsys, a Strong Painkiller*, N.Y. TIMES (May 13, 2014), https://www.nytimes.com/2014/05/14/business/doubts-raised-about-off-label-use-of-subsys-a-strong-painkiller.html.

[17]     Prior authorization ("PA") is any process by which physicians and other health care

managers about the role of Insys in the prior authorization process and the presence of breakthrough cancer pain in potential Subsys patients.[18]

101. On September 12, 2017, Senator McCaskill convened a Roundtable Discussion on Opioid Marketing. During the hearing, Senator McCaskill stated:

> "The opioid epidemic is the direct result of a calculated marketing and sales strategy developed in the 90's which delivered three simple messages to physicians. First, that chronic pain was severely undertreated in the United States. Second, that opioids were the best tool to address that pain. And third, that opioids could treat pain without risk of serious addiction. As it turns out these messages were exaggerations at best and outright lies at worst."
>
> <div align="center">*     *     *</div>
>
> "Our national opioid epidemic is complex, but one explanation for this crisis is simple, pure greed." [19]

102. Less than two years later, Insys' former chief executive officer pleaded guilty to participating in a nationwide scheme to bribe doctors in exchange for prescribing Subsys.[20]

103. The Manufacturer Defendants[21] also identified doctors to serve, for payment, on their speakers' bureaus and to attend programs with speakers and meals paid for by the Manufacturer Defendants. These speaker programs provided: (1) an incentive for doctors to prescribe a particular

---

providers must obtain advance approval from a health plan before a specific procedure, service, device, supply or medication is delivered to the patient to qualify for payment coverage. (American Medical Association, *Prior authorization: The current landscape*, p. 1 (2015), https://www.ama-assn.org/sites/ama-assn.org/files/corp/media-browser/premium/psa/prior-authorization-toolkit_0.pdf.

[18] HSGAC Minority Staff Report, Insys Therapeutics and the Systemic Manipulation of Prior Authorization (2017).

[19] *See*, *LIVESTREAM: Insys Opioid Sales and Marketing Practices Roundtable*, September 12, 2017, at 31:03-31:37, https://www.youtube.com/watch?v=k9mrQa8_vAo (last accessed Mar. 17, 2019).

[20] Nate Raymon, Former Insys CEO pleads guilty to opioid kickback scheme, REUTERS (Jan. 9, 2019), https://www.reuters.com/article/us-insys-opioids/former-insys-ceo-pleads-guilty-to-opioid-kickback-scheme-idUSKCN1P312L.

[21] Upon information and belief, Actavis continued to carry out speaker programs after it acquired Kadian.

opioid (so they might be selected to promote the drug); (2) recognition and compensation for the doctors selected as speakers; and (3) an opportunity to promote the drug through the speaker to his or her peers.  These speakers give the false impression that they are providing unbiased and medically accurate presentations when they are, in fact, presenting a script prepared by the Manufacturer Defendants.  On information and belief, these presentations conveyed misleading information, omitted material information, and failed to correct the Manufacturer Defendants' prior misrepresentations about the risks and benefits of opioids, resultantly deceiving Ford County patients and well-meaning healthcare providers who reasonably relied on these misrepresentations in inappropriately prescribing opioids to their patients.

104.    Each Manufacturer Defendant devoted and continues to devote massive resources to direct sales contacts ("detailing") with doctors.  In 2014 alone, the Manufacturer Defendants spent $168 million on detailing branded opioids to doctors.  This amount is twice as much as the Manufacturer Defendants spent on detailing in 2000.  The amount includes $108 million spent by Purdue, $34 million by Janssen, $10 million by Endo, and $2 million by Actavis.

105.    The Manufacturer Defendants also deceptively marketed opioids in Kansas through unbranded advertising—*i.e.*, advertising that promotes opioid use generally but does not name a specific opioid.  This advertising was ostensibly created and disseminated by independent third parties.  But by funding, directing, reviewing, editing, and distributing this unbranded advertising, the Manufacturer Defendants controlled the deceptive messages disseminated by these third parties and acted in concert with them to falsely and misleadingly promote opioids for the treatment of chronic pain.[22]

106.    The Manufacturer Defendants marketed through third-party, unbranded advertising to avoid regulatory scrutiny because that advertising is not submitted to and typically is not reviewed

---

[22]    The phrase "acted in concert" includes conspiring to achieve some end and aiding and abetting in the commission of acts necessary to achieve some end.

by regulators.  The Manufacturer Defendants also used third-party, unbranded advertising to give the false appearance that the deceptive messages came from an independent and objective source.  Like tobacco companies, the Manufacturer Defendants used third parties—like the Prescriber Defendant—whom the Manufacturer Defendants funded, directed, and/or controlled to carry out and conceal their scheme to deceive doctors and patients in the County about the risks and benefits of long-term opioid use for chronic pain.

107.    The Manufacturer Defendants' deceptive unbranded marketing often contradicted what they said in their branded materials reviewed by regulators.  For example, Endo's unbranded advertising contradicted its concurrent, branded advertising for Opana ER.

108.    The Manufacturer Defendants also spoke through a small circle of doctors who, upon information and belief, were selected, funded, and elevated by the Manufacturer Defendants because their public positions supported the use of opioids to treat chronic pain. These doctors became known as "key opinion leaders" or "KOLs."  The Manufacturer Defendants paid these KOLs to serve as consultants or on their advisory boards and to give talks or present continuing medical education programs ("CMEs"), and their support helped these KOLs become respected industry experts.  As they rose to prominence, these KOLs touted the benefits of opioids to treat chronic pain, repaying the Manufacturer Defendants by advancing their marketing goals.  KOLs' professional reputations became dependent on continuing to promote a pro-opioid message, even in activities that were not directly funded by the Manufacturer Defendants.

109.    Pro-opioid doctors—such as the Prescriber Defendant—are one of the most important avenues that the Manufacturer Defendants use to spread their false and misleading statements about the risks and benefits of long-term opioid use for chronic pain.  The Manufacturer Defendants know that doctors rely heavily and more uncritically on their peers for guidance, and KOLs provide the false appearance of unbiased and reliable support for chronic opioid therapy.  For example, the New York Attorney General ("NY AG") found in its settlement with Purdue that through March 2015, the

41

Purdue website, "In the Face of Pain," failed to disclose that doctors who provided testimonials on the site were paid by Purdue and concluded that Purdue's failure to disclose these financial connections potentially misled consumers regarding the objectivity of the testimonials. KOLs have written, consulted on, edited, and lent their names to books and articles, and have given speeches and CMEs supportive of chronic opioid therapy. The Manufacturer Defendants created opportunities for KOLs to participate in research studies Defendants suggested or chose and then cited and promoted favorable studies or articles by their KOLs. By contrast, the Manufacturer Defendants did not support, acknowledge, or disseminate publications of doctors unsupportive or critical of chronic opioid therapy.

110.    The Manufacturer Defendants' KOLs also served on committees that developed treatment guidelines that strongly encourage the use of opioids to treat chronic pain and on the boards of pro-opioid advocacy groups and professional societies that develop, select, and present CMEs. These guidelines and CMEs were not supported by the scientific evidence at the time they were created, and they are not supported by the scientific evidence today. The Manufacturer Defendants were able to direct and exert control over each of these activities through their KOLs. Indeed, regulators now recognize that treatment guidelines can "change prescribing practices."

111.    The Manufacturer Defendants also entered into arrangements with seemingly unbiased and independent patient and professional organizations to promote opioids for the treatment of chronic pain. Under the direction and control of Defendants, these "Front Groups"— which include, but are not limited to, the American Pain Foundation ("APF") and the American Academy of Pain Medicine—generated treatment guidelines, unbranded materials, and programs that favored chronic opioid therapy. These guidelines, materials, and programs were not supported by the evidence at the time they were created, and they are not supported by the scientific evidence today. These Front Groups also assisted the Manufacturer Defendants by responding to negative articles, by advocating against regulatory changes that would limit opioid prescribing in accordance

with the scientific evidence, and by conducting outreach to vulnerable patient populations targeted by the Manufacturer Defendants.

112.    These Front Groups depended on the Manufacturer Defendants for funding and, in some cases, for survival.  Defendants also exercised control over programs and materials created by these groups by collaborating on, editing, and approving their content, and by funding their dissemination.  For example, Purdue's consulting agreement with APF gave it direct, contractual control over APF's work.  In doing so, the Manufacturer Defendants ensured the Front Groups would generate only the messages the Manufacturer Defendants wanted to distribute.  Despite this, the Front Groups misleadingly held themselves out as independent and serving the needs of their members—whether patients were suffering from pain or doctors were treating those patients.

113.    The Manufacturer Defendants worked together, through Front Groups, to spread their deceptive messages about the risks and benefits of long-term opioid therapy.  For example, the Manufacturer Defendants combined their efforts through the Pain Care Forum ("PCF"), which began in 2004 as an APF project.  PCF is comprised of representatives from opioid manufacturers (including Endo, Janssen/J&J, and Purdue) and various Front Groups, almost all of which received substantial funding from the Manufacturer Defendants.  Among other projects, PCF worked to ensure that legally mandated educational projects on opioids were not unacceptably negative and did not require mandatory participation by prescribers, which the Manufacturer Defendants determined would reduce prescribing.  PCF also worked to address a perceived "lack of coordination" among its members and developed "key" messages that were disseminated in programs and industry-run websites.

114.    These misrepresentations were made without reasonable care, despite the Manufacturer Defendants' knowledge of, and indifference to, the fact that opioids would pose a high degree of risk of harm to Ford County's residents as a result of such misrepresentations.

D.    **The Manufacturer Defendants Deceived Healthcare Providers and Patients to**

43

**Get More People on Highly Addictive Drugs, at Higher Doses, for Longer Periods**

115.    To convince prescribers and patients around the country, including in Kansas, that opioids can and should be used to treat chronic pain, the Manufacturer Defendants had to convince them that long-term opioid use is both safe and beneficial.  The Manufacturer Defendants deceived those doctors and patients about the risks and benefits of long-term opioid use.  The Manufacturer Defendants, through Front Groups, KOLs, and advertisements, made claims that they knew or reasonably should have known were not supported by or were contrary to the scientific evidence— most frequently, these claims downplayed the risks of addiction in order to convince patients and doctors alike that prescription opioids should be used more regularly.  Even though pronouncements by and guidance from regulators based on that evidence confirm that their claims were false and misleading, Ford County is informed and believes that the Manufacturer Defendants have not corrected them and continue to spread them today, including as set forth specifically below.

**1.    Deception About Addiction**

116.    The Manufacturer Defendants always knew that their opioids carry grave risks of addiction and death.  Instead of being honest about these risks, the Manufacturer Defendants obscured them, including by falsely stating and implying that "appropriate patients" would not get addicted.  To convince doctors and patients that opioids are safe, the Manufacturer Defendants deceptively trivialized and failed to disclose the risks of long-term opioid use, particularly the risk of addiction, through a series of misrepresentations that have been conclusively debunked by regulators and the medical community at large.

117.    First, the Manufacturer Defendants falsely claimed that the risk of addiction is low and that addiction is unlikely to develop when opioids are prescribed, as opposed to obtained illicitly, and failed to disclose the greater risk of addiction with prolonged use of opioids.  Some illustrative examples of these false and misleading claims that were made by, are continuing to be

44

made by, and/or have not been corrected by the Manufacturer Defendants after May 21, 2011, are described below:

    a.   Actavis's predecessor caused a patient education brochure to be distributed in 2007 that claimed opioid addiction is possible, but "less likely if you have never had an addiction problem."  Upon information and belief, based on Actavis's acquisition of its predecessor's marketing materials along with the rights to Kadian, Actavis continued to use this brochure in 2009 and beyond.

    b.   Purdue, which is owned and controlled by the Sacklers (neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants), and Cephalon sponsored APF's *Treatment Options: A Guide for People Living with Pain* (2007), which instructed that addiction is rare and limited to extreme cases of unauthorized dose escalations, obtaining duplicative opioid prescriptions from multiple sources, or theft.

    c.   Endo sponsored a website, Painknowledge.com, which claimed in 2009 that "[p]eople who take opioids as prescribed usually do not become addicted." Another Endo website, PainAction.com, stated "Did you know? Most chronic pain patients do not become addicted to the opioid medications that are prescribed for them."

    d.   Endo and Cephalon distributed a pamphlet with the Endo logo entitled *Living with Someone with Chronic Pain*, which stated that: "Most health care providers who treat people with pain agree that most people do not develop an addiction problem."  A similar statement appeared on the Endo website www.opana.com.

    e.   Janssen/J&J reviewed, edited, approved, and distributed a patient education guide entitled *Finding Relief: Pain Management for Older Adults* (2009), which described as "myth" the claim that opioids are addictive, and asserted as fact that "[m]any studies show that opioids are rarely addictive when used properly for the management of chronic pain."

    f.   Janssen ran a website, Prescriberesponsibly.com (last updated July 2, 2015), which claims that concerns about opioid addiction are "overestimated."

    g.   Purdue, which is owned and controlled by the Sacklers (neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants), sponsored APF's *A Policymaker's Guide to Understanding Pain & Its Management*—which claims that less than 1% of children prescribed opioids will become addicted and that pain is undertreated due to "misconceptions about opioid addiction[]."

45

h. Detailers for Purdue, Endo, Teva and Janssen in Kansas have minimized or omitted and continue to minimize or omit any discussion with doctors or their medical staff in Kansas, including Ford County, about the risk of addiction; falsely claiming that abuse-deterrent formulations "cannot be crushed," downplaying the potential that these opioids could be abused; and routinely did not correct the misrepresentations noted above.

118. Moreover, Purdue, in a pamphlet for doctors, *Providing Relief, Preventing Abuse: A Reference Guide to Controlled Substance Prescribing Practices*, wrote that addiction "is not caused by drugs." Instead, Purdue—which is owned and controlled by the Sacklers (neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants)—assured doctors that addiction happens when the wrong patients get drugs and abuse them: "it is triggered in a susceptible individual by exposure to drugs, most commonly through abuse."[23]

119. Purdue, which is owned and controlled by the Sacklers (neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants), also promoted its opioids to Ford County patients with marketing that was designed to obscure the risk of addiction and even the fact that Purdue was behind the campaign. Purdue created a website, *In the Face of Pain*, that promoted pain treatment by urging patients to "overcome" their "concerns about addiction." Testimonials on the website that were presented as personal stories were in fact by Purdue consultants, whom Purdue had paid tens of thousands of dollars to promote its drugs.[24]

120. Another publication from Purdue—which is owned and controlled by the Sacklers— was the *Resource Guide for People with Pain*, which falsely assured patients and doctors that opioid

---

[23] Purdue Pharma LP, *Providing Relief, Preventing Abuse* (2008), pg. 12; *see also* K. Nelson, *Purdue Pharma lawsuit: Terms you need to know to understand OxyContin blitz*, Knox News (July 13, 2018), https://www.knoxnews.com/story/news/health/2018/07/13/purdue-pharma-lawsuit-terms-know-understand-oxycontin-blitz/779173002/.

[24] Purdue Pharma LP, *In the Face of Pain* (Oct. 24, 2011).

medications are not addictive:

> *Many people living with pain and even some healthcare providers believe that opioid medications are addictive.  The truth is that when properly prescribed by a healthcare professional and taken as directed, these medications give relief–not a 'high'.''*[25]

121.    Purdue, which is owned and controlled by the Sacklers, falsely denied the risk of addiction, falsely implied that addiction requires patients to get "high," and falsely promised that patients would not get addicted if they took opioids as prescribed.

122.    Purdue (which is not a defendant in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants) funded and distributed many more publications that were similarly misleading.  *Exit Wounds* misleadingly claimed: "Long experience with opioids shows that people who are not predisposed to addiction are unlikely to become addicted to opioid pain medications."[26]

123.    Similarly, while Janssen/J&J repeatedly disclaimed responsibility for its part in causing the opioid crisis, insisting that "[e]verything that we have done with our products when we've promoted opioid products . . . was appropriate and responsible," internal memoranda and communications between high-level executives at Janssen show the company funded and pushed bogus research to lend false credibility to a series of dangerous fictions, claiming that  "[m]any studies show that opioids are rarely addictive when used properly for the management of chronic pain," and enabling "Janssen's representatives [to] promote[] Nucynta and Nucynta ER as safer, milder, and less addictive than competitor opioids like OxyContin."[27]

124.    Similarly, in 2008, Cephalon pleaded guilty to a criminal violation for its misleading

---

[25]  Purdue Pharma LP, *Resource Guide for People with Pain*, p. 8 (2009).

[26]  Purdue Pharma LP, *Exit Wounds*, p. 107 (2009).

[27]    M. Aron, *Deceptively marketing opioids*, NJTV News (Nov. 13, 2018), https://www.njtvonline.org/news/video/state-sues-johnson-johnson-subsidiary-for-deceptively-marketing-opioids/.

promotion of Actiq and two other drugs and agreed to pay $425 million.

125.    In August 2019, Johnson & Johnson was found liable of: (a) having engaged in false and misleading marketing of both their drugs and opioids more generally; and (b) creating, contributing to, and perpetuating a public nuisance under Oklahoma law.  This determination resulted in a $572 million verdict that represents just one year of abatement expenses in one state.

126.    Over and over, Defendants said opioids could be given to "trusted" patients without risk of addiction.  To promote their drugs, the Manufacturer Defendants pushed the myth that addiction is a character flaw, and "trustworthy" people do not get addicted to drugs.  While Manufacturer Defendants might not have specifically intended to injure Ford County or its residents, the Manufacturer Defendants were well aware of the consequential dangers to life and safety arising from their misconduct, in which they continue to engage despite such awareness.

127.    These claims are contrary to longstanding scientific evidence and recently established clinical guidelines for opioid therapy.  These guidelines describe the "extensive evidence" of the "possible harms of opioids (including opioid use disorder [an alternative term for opioid addiction])." The guidelines indicate "[o]pioid pain medication use presents serious risks, including . . . opioid use disorder" and that "continuing opioid therapy for 3 months substantially increases risk for opioid use disorder."

128.    The falsity of the Manufacturer Defendants' claims about the low risk of addiction was further exposed when regulators announced changes to the labels for ER/LA opioids in 2013 and for IR opioids in 2016.  These announcements emphasize that "most opioid drugs have 'high potential for abuse' " and that opioids "are associated with a substantial risk of misuse, abuse, NOWS [neonatal opioid withdrawal syndrome], addiction, overdose, and death."  Further, these announcements clarify the risk of death is not limited to patients who seek drugs illicitly, as addiction "can occur in patients appropriately prescribed [opioids]."  Thus, because of the "known serious risks" associated with long-term opioid use, including "risks of addiction, abuse, and misuse,

even at recommended doses, and because of the greater risks of overdose and death," opioids should be used only "in patients for whom alternative treatment options" like non-opioid drugs have failed.

129.    The New York Attorney General, in a 2016 settlement agreement with Endo, found that opioid "use disorders appear to be highly prevalent in chronic pain patients treated with opioids, with up to 40% of chronic pain patients treated in specialty and primary care outpatient centers meeting the clinical criteria for an opioid use disorder."  Endo had claimed until at least April 2012 on its www.opana.com website that "[m]ost healthcare providers who treat patients with pain agree that patients treated with prolonged opioid medicines usually do not become addicted," but the NY AG found that Endo had no evidence for that statement.  Consistent with this, Endo agreed not to "make statements that . . . opioids generally are non-addictive" or "that most patients who take opioids do not become addicted" in New York.  On information and belief, Endo made similar misrepresentations to healthcare providers and patients in and around Ford County, Kansas. However, Endo has not been restricted from making these statements in Kansas.

### 2.    Deception to Get Vulnerable Patients on Opioids

130.    To expand the market for opioids, the Manufacturer Defendants also trained their representatives to target vulnerable populations and encourage doctors to put them on opioids, without disclosing the risks.  The Manufacturer Defendants deceptively promoted opioids for elderly patients, patients who had never taken opioids, and patients with osteoarthritis—putting thousands of more patients at risk.

### **Elderly Patients**

131.    The Manufacturer Defendants knew that prescribing opioids to elderly patients increase their risk of death.  Elderly patients are at a greater risk of dangerous interactions between drugs.  They are also at a greater risk of respiratory depression—in which patients suffocate and die. But the Manufacturer Defendants, seeing the opportunity to earn millions of dollars by getting elderly patients on opioids because the public would pay through Medicare, indifferently disregarded

these risks and nevertheless continue to engage in the misconduct described throughout this Petition. For instance, Purdue's (not a defendant herein) internal documents show it targeted "Patients over the age of 65 as more . . . coverage is achieved."[28]

### Opioid-Naïve Patients

132.    The Manufacturer Defendants also targeted patients who were not already taking opioids, described in the field as "opioid-naïve."  The Manufacturer Defendants unfairly and deceptively marketed their drugs as appropriate treatments for opioid-naïve patients, without disclosing that they face even higher risks of overdose and death.

133.    For instance, Purdue trained its sales reps to promote their drugs specifically for opioid-naïve patients.  In training calls, Purdue managers instructed:

- *"Your opportunity here is with the naïve community, let's use the naïve trial to make the case."*

- *"You created an epiphany with the doctor today (potentially) by reviewing the opiate naïve patient profile.  What made him more apt to write this for his patient, being an amiable doctor, is the fact that he would not have to talk patients out of their short-acting [opioids]."*

- *"This was an example of what a good call looks like . . . [Dr.] was particularly interested in the RM case study of Marjorie, which generated a robust discussion of opioid naïve patients…"*

134.    Purdue (not a defendant herein, but which engaged in the kind of conduct that inspired and informed the conduct of named manufacturer defendants) promoted its drugs for opioid-naïve patients using the deceptive term "first line opioid."  "First line" is a medical term for the preferred first step in treating a patient.  Opioids are not an appropriate first line therapy.

135.    The Manufacturer Defendants also found vulnerable opioid-naïve patients by targeting prescribers with the least training in the risks of opioids.  The Manufacturer Defendants determined that nurse practitioners, physician assistants, and primary care doctors were especially

---

[28]  Purdue Pharma LP, *Pain Products Presentation*, p. 12 (Jan. 28, 2015).

responsive to sales reps, so the Manufacturer Defendants targeted them to sell more drugs.

**Osteoarthritis Patients**

136.    The Manufacturer Defendants knew that opioids were not appropriate to appropriate to treat nonmalignant pain in non-cancer patients, including patients suffering from osteoarthritis. Opioids are not approved to treat osteoarthritis.  For instance, Purdue conducted a single study on osteoarthritis for Butrans, and it failed.  Purdue admitted in internal documents that its opioids "are not indicated for a specific disease" and "it is very important that you never suggest to your HCP [health care professional] that OxyContin is indicated for the treatment of a specific disease state such as Rheumatoid Arthritis or Osteoarthritis."

137.    Nevertheless, to meet their business goals, the Manufacturer Defendants trained their sales representatives to mislead doctors by promoting opioids for osteoarthritis.

138.    The Manufacturer Defendants also directed their sales reps to use marketing materials that highlight patients with osteoarthritis, even though their drugs were never indicated for that disease.

3.    **The Manufacturer Defendants Deceived Doctors and Patients to Use Higher and Higher Doses**

139.    The Manufacturer Defendants deceived prescribing medical practitioners and patients across the nation—and in Ford County—about the risks and benefits of opioids for the long-term treatment of chronic pain.  The Manufacturer Defendants dishonestly encouraged these prescribers to provide long-term opioid therapy to patients for whom such treatment was inappropriate, such as patients suffering from long-term chronic pain due to osteoarthritis.  As set forth below, the Manufacturer Defendants' deceptive scheme succeeded in increasing the supply of highly addictive prescription opioids, both in the State of Kansas generally and in Ford County, specifically.

140.    The Manufacturer Defendants—including, but not limited to, Defendant Endo—also falsely instructed doctors and patients in Kansas communities, including Ford County, that the signs of addiction are actually signs of undertreated pain which should be treated by prescribing more

51

opioids.  Defendants called this phenomenon "pseudoaddiction"—a made-up, misleading and scientifically unsubstantiated term coined by Dr. David Haddox, who went to work for Purdue, and popularized by Dr. Russell Portenoy, a KOL for Endo, Janssen, Teva, and Purdue.  Through aggressive marketing campaigns directed at prescribers and patients throughout the county, including Ford County, the Manufacturer Defendants used the concept of "pseudoaddiction" as a lever to mislead prescribers and their patients into believing that certain warning signs of opioid addiction [29] were neither indicative of "true" addiction nor cause for alarm.  To the contrary, the Manufacturer Defendants repeatedly claimed these warning signs were manifestations of undertreated pain, which should be addressed by prescribing more opioids.  Importantly, at all times relevant to this action, the Manufacturer Defendants both knew the concept of "pseudoaddiction" was false and yet actively sought to conceal the truth from Ford County's physicians and patients, sabotaging these prescribers' ability to protect their patients from opioid addiction and concomitant injuries and make informed decisions about whether or not opioids were appropriate for their patients.  Some illustrative examples of these deceptive claims that were made by, are continuing to be made by, and/or have not been corrected by the Manufacturer Defendants are described below:

   a. Cephalon, Endo, and Purdue—owned and controlled by the Sacklers—sponsored *Responsible Opioid Prescribing* (2007), which taught that behaviors such as "requesting drugs by name", "demanding or manipulative behavior," seeing more than one doctor to obtain opioids, and hoarding, are all signs of pseudoaddiction, rather than true addiction.  *Responsible Opioid Prescribing* remains for sale online.

   b. Janssen sponsored, funded, and edited the *Let's Talk Pain* website, which in 2009 stated: "pseudoaddiction . . . refers to patient behaviors that may occur when pain is under-treated . . . . Pseudoaddiction is different from true addiction because such behaviors can be resolved with effective pain management."

   c. Endo sponsored a National Initiative on Pain Control (NIPC) CME program in 2009 titled *Chronic Opioid Therapy: Understanding Risk While Maximizing*

---

[29] *E.g.*, demanding more opioids, engaging in manipulative behavior to obtain drugs, requesting specific drugs, hoarding drugs during periods of reduced symptoms, using drugs to treat another symptom, etc.

*Analgesia*, which promoted pseudoaddiction by teaching that a patient's aberrant behavior was the result of untreated pain.  Endo substantially controlled NIPC by funding NIPC projects; developing, specifying, and reviewing content; and distributing NIPC materials.

d.  Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, published a pamphlet in 2011 entitled *Providing Relief, Preventing Abuse*, which described pseudoaddiction as a concept that "emerged in the literature" to describe the inaccurate interpretation of [drug-seeking behaviors] in patients who have pain that has not been effectively treated."

e.  Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, sponsored a CME program entitled "Path of the Patient, Managing Chronic Pain in Younger Adults at Risk for Abuse" in 2011.  In a role play exercise, a chronic pain patient with a history of drug abuse tells his doctor that he is taking twice as many hydrocodone pills as directed.   The narrator notes that because of pseudoaddiction, the doctor should not assume the patient is addicted even if he persistently asks for a specific drug, seems desperate, hoards medicine, or "overindulges in unapproved escalating doses."  The doctor treats this patient by prescribing a high-dose, long-acting opioid.

f.  Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, and Cephalon sponsored APF's *Treatment Options: A Guide for People Living with Pain* (2007), which states: "Pseudo-addiction describes patient behaviors that may occur when pain is undertreated . . . Pseudo-addiction can be distinguished from true addiction in that this behavior ceases when pain is effectively treated."

141.    The medical community now rejects the concept of pseudoaddiction and does not recommend that opioid dosages be increased if a patient is not experiencing pain relief.  To the contrary, widely accepted opioid treatment guidelines now provide that "[p]atients who do not experience clinically meaningful pain relief early in treatment . . . are unlikely to experience pain relief with longer-term use," and that physicians should "reassess[] pain and function within 1 month" in order to decide whether to "minimize risks of long-term opioid use by discontinuing opioids" because the patient is "not receiving a clear benefit."

142.    Even one of the Manufacturer Defendants has effectively repudiated the concept of pseudoaddiction.  In finding that "[t]he pseudoaddiction concept has never been empirically validated and in fact has been abandoned by some of its proponents," the NY AG, in its 2016 settlement with Endo, reported that "Endo's Vice President for Pharmacovigilance and Risk Management testified to [the NY AG] that he was not aware of any research validating the 'pseudoaddiction' concept" and acknowledged the difficulty in distinguishing "between addiction and 'pseudoaddiction.'"[30]   Consistent with this testimony, Endo agreed not to "use the term 'pseudoaddiction' in any training or marketing" in New York.[31]

143.    The Manufacturer Defendants also falsely promised prescribers and their patients that addiction risk screening tools, patient contracts, urine drug screens, and similar strategies would both allow these prescribers to reliably identify and safely prescribe opioids to patients who are predisposed to addiction and be efficacious enough to essentially rule out the risk of opioid addiction (even in the context of long-term opioid therapy).  These misrepresentations were especially insidious because the Manufacturer Defendants aimed them at general practitioners and family doctors who lack the time and expertise to closely manage higher-risk patients on opioids.  The Manufacturer Defendants' misrepresentations made these doctors feel more comfortable prescribing opioids to their patients, and patients more comfortable starting on opioid therapy for chronic pain.  Some illustrative examples of these deceptive claims that were made by, are continuing to be made by, and/or have not been corrected by the Manufacturer Defendants after March 21, 2011, are described below:

> a.    Endo paid for a 2007 supplement in the Journal of Family Practice written by a doctor who became a member of Endo's speakers bureau in 2010.  The supplement, entitled *Pain Management Dilemmas in Primary Care: Use of Opioids*, emphasized the effectiveness of screening tools, claiming that patients

---

[30]  In the Matter of Endo Health Solutions Inc., *et al*., Assurance No. 15-228, p. 7, ¶ 23 (NY AG, Mar. 1, 2016), https://www.ag.ny.gov/pdfs/ENDO_AOD_030116-Fully _ Executed.pdf.

[31]  *Id.*, p. 15, ¶ 41.e.

at high risk of addiction could safely receive chronic opioid therapy using a "maximally structured approach" involving toxicology screens and pill counts.

b.  Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, sponsored a November 2011 webinar, *Managing Patient's Opioid Use: Balancing the Need and Risk*, which claimed that screening tools, urine tests, and patient agreements prevent "overuse of prescriptions" and "overdose deaths."

c.  As recently as 2015, Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, has represented in scientific conferences that "bad apple" patients—and not opioids—are the source of the addiction crisis and that once those "bad apples" are identified, doctors can safely prescribe opioids without causing addiction.

144.  Consistent with what the Manufacturer Defendants already knew—but intentionally and/or unreasonably failed to disclose—at all times relevant to this action, opioid treatment guidelines now confirm that the Manufacturer Defendants' statements were false, misleading, and clearly unsupported at the time they were made by the Manufacturer Defendants.  These guidelines note that there are no studies assessing the effectiveness of risk mitigation strategies—such as screening tools, patient contracts, urine drug testing, or pill counts widely believed by doctors to detect and deter abuse—"for improving outcomes related to overdose, addiction, abuse, or misuse." As a result, opioid treatment guidelines now emphasize that available risk screening tools "show insufficient accuracy for classification of patients as at low or high risk for [opioid] abuse or misuse" and counsels that prescribers "*should not overestimate* the ability of these tools to rule out risks from long-term opioid therapy."

### 4.  The Manufacturer Defendants Peddled Falsehoods to Keep Patients Away from Safer Alternatives to Opioid Therapy

#### (a)  Deception about Quality of Life

145.  The Manufacturer Defendants steered patients away from safer alternatives with the

false claim that its opioids improve patients' "quality of life," though the Manufacturer Defendants had no reasonable basis to support this claim.

### (b)    Deception about Risk of Abuse

146.    In addition to visiting prescribers and pharmacists hundreds of thousands of times, the Manufacturer Defendants distributed thousands of copies of their deceptive publications, including *Providing Relief, Preventing Abuse*; *Resource Guide for People with Pain*; *Exit Wounds*; *Opioid Prescribing: Clinical Tools and Risk Management Strategies*; *Responsible Opioid Prescribing*; *Clinical Issues in Opioid Prescribing;* and *In The Face of Pain*.

### 5.    The Manufacturer Defendants Downplayed Opioid Withdrawal

147.    To downplay the risk and impact of addiction and make doctors feel more comfortable starting patients on opioids, the Manufacturer Defendants falsely claimed that opioid dependence can easily be addressed by tapering and that opioid withdrawal is not a problem and failed to disclose the increased difficulty of stopping opioids after long-term use.  For example, a 2011 non-credit educational program sponsored by Endo, entitled "Persistent Pain in the Older Adult," claimed that withdrawal symptoms can be avoided by tapering a patient's opioid dose by 10%-20% for 10 days.   Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, sponsored APF's *A Policymaker's Guide to Understanding Pain & Its Management*, which claimed that "[s]ymptoms of physical dependence can often be ameliorated by gradually decreasing the dose of medication during discontinuation" without mentioning any hardships that might occur.  This publication was available on APF's website until the organization dissolved in May 2012.  Detailers for Janssen have told and continue to tell doctors in Kansas, including Ford County, that their patients would not experience withdrawal if they stopped using opioids.

148.    The Manufacturer Defendants deceptively minimized the significant symptoms of

opioid withdrawal that, per widely accepted opioid treatment guidelines include drug craving, anxiety, insomnia, abdominal pain, vomiting, diarrhea, sweating, tremor, rapid heartbeat, spontaneous abortion and premature labor in pregnant women, and the unmasking or exacerbating of anxiety, depression, and addiction.

149.    The Manufacturer Defendants also grossly understated the difficulty of tapering, particularly after long-term opioid use.  Widely accepted opioid treatment guidelines now emphasize that the duration of opioid use and the dosage of opioids prescribed should be "limit[ed]" to "minimize the need to taper opioids to prevent distressing or unpleasant withdrawal symptoms," because "physical dependence on opioids is an expected physiologic response in patients exposed to opioids for more than a few days."  These guidelines further state that "tapering opioids can be especially challenging after years on high dosages because of physical and psychological dependence" and highlights the difficulties, including the need to carefully identify "a taper slow enough to minimize symptoms and signs of opioid withdrawal" and to "pause[] and restart[]" tapers depending on the patient's response.  Likewise, regulators have acknowledged the lack of any "high-quality studies comparing the effectiveness of different tapering protocols for use when opioid dosage is reduced or opioids are discontinued."

150.    Some prescribers and many patients across the country and in Kansas communities— including Ford County—relied on the truth of the Manufacturers Defendants' representations about both the benefits of opioid analgesics and the risks of opioid addiction.  Because each of the Manufacturer Defendants willfully or recklessly concealed the truth about their products and knew or should have known their representations were false at the time they were made, Ford County and its citizens are forced to pay the price for Defendants' misconduct.

> **6.     The Manufacturer Defendants Hid the Greater Risks to Patients at Higher Dosages of Opioids**

151.    The Manufacturer Defendants were in the best position to know, and in fact did

know, that—relative to the general population—the risk of opioid-related death increases exponentially after a patient takes opioids for several consecutive months.

152.    Specifically, the Manufacturer Defendants falsely claimed that doctors and patients could increase opioid dosages *indefinitely* without added risk and failed to disclose the greater risks to patients at higher dosages.  The ability to escalate dosages was critical to the Manufacturer Defendants' efforts to market opioids for long-term use to treat chronic pain because, absent this misrepresentation, doctors would have abandoned treatment when patients built up tolerance and lower dosages did not provide pain relief.  Some illustrative examples of these deceptive claims that were made by, are continuing to be made by, and/or have not been corrected by the Manufacturer Defendants after May 21, 2011, are described below:

>  a.  Actavis' predecessor created a patient brochure for Kadian in 2007 that stated, "Over time, your body may become tolerant of your current dose. You may require a dose adjustment to get the right amount of pain relief. This is not addiction."  Upon information and belief, based on Actavis' acquisition of its predecessor's marketing materials along with the rights to Kadian, Actavis continued to use these materials in 2009 and beyond.
>
>  b.  Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, and Cephalon sponsored APF's *Treatment Options: A Guide for People Living with Pain* (2007), which claims that some patients "need" a larger dose of an opioid, regardless of the dose currently prescribed.  The guide stated that opioids have "no ceiling dose" and are therefore the most appropriate treatment for severe pain.[32]
>
>  c.  Endo sponsored a website, painknowledge.com, which claimed in 2009 that

---

[32]  The Manufacturer Defendants frequently contrasted the lack of a ceiling dosage for opioids with the risks of a competing class of analgesics: over-the-counter nonsteroidal anti-inflammatories (or NSAIDs).  The Manufacturer Defendants deceptively describe the risks from NSAIDs while failing to disclose the risks from opioids.  (*See, e.g.*, *Case Challenges in Pain Management: Opioid Therapy for Chronic Pain* (Endo) (describing massive gastrointestinal bleeds from long-term use of NSAIDs and recommending opioids); *Finding Relief: Pain Management for Older Adults* (Janssen) (NSAIDs caused kidney or liver damage and increased risk of heart attack and stroke, versus opioids, which cause temporary "upset stomach or sleepiness" and constipation).)

opioid dosages may be increased until "you are on the right dose of medication for your pain."  The website was still accessible online after May 21, 2011.

d.  Endo distributed a pamphlet edited by a KOL entitled *Understanding Your Pain: Taking Oral Opioid Analgesics*, which was still available after May 21, 2011 on Endo's website.  In Q&A format, it asked "If I take the opioid now, will it work later when I really need it?"  The response is, "The dose can be increased. . . . You won't 'run out' of pain relief."

e.  Janssen sponsored a patient education guide entitled *Finding Relief: Pain Management for Older Adults* (2009), which was distributed by its sales force.  This guide listed dosage limitations as "disadvantages" of other pain medicines but omitted any discussion of risks of increased opioid dosages.

f.  Through March 2015, another publication from Purdue—which is owned and controlled by the Sacklers—called *In the Face of Pain*, promoted the notion that if a patient's doctor does not prescribe what, in the patient's view, is a sufficient dosage of opioids, he or she should find another doctor who will.

g.  Purdue sponsored APF's *A Policymaker's Guide to Understanding Pain & Its Management*, which taught that dosage escalations are "sometimes necessary," even unlimited ones, but did not disclose the risks from high opioid dosages.  This publication is still available online.

h.  Purdue, which is owned and controlled by the Sacklers, sponsored a CME entitled *Overview of Management Options* that is still available for CME credit.  The CME was edited by a KOL and taught that NSAIDs and other drugs, but not opioids, are unsafe at high dosages.

153.    Through a series of internal strategy presentations and other communications with its sales force and prescriber-accomplices, Manufacturer Defendants aimed to "drive" patients toward higher doses of opioids for longer periods by dramatically increasing the supply.  They also sought to increase consumer demand for opioids, namely by offering discounts to patients on their first prescriptions.  These discounts proved to be one of the most powerful tactics to keep patients on opioids longer.

154.    These claims conflict with the scientific evidence, as confirmed by widely accepted opioid treatment guidelines.  These guidelines admonish practitioners and other industry stakeholders that while the "[b]enefits of high-dose opioids for chronic pain are not established,"

there are clear "risks for serious harms related to opioid therapy increase at higher opioid dosage."

155.    More specifically, these guidelines explain that "there is now an established body of scientific evidence showing that overdose risk is increased at higher opioid dosages."  Opioid treatment guidelines also provide that "there is an increased risk for opioid use disorder, respiratory depression, and death at higher dosages."

156.    Because "the available data do suggest a relationship between increasing opioid dose and risk of certain adverse events."  Specifically, the clinical research "appear[s] to credibly suggest a positive association between high-dose opioid use and the risk of overdose and/or overdose mortality."  In fact, a recent study found that 92% of persons who died from an opioid-related overdose were initially prescribed opioids for chronic pain.  In light of this evidence, prescribing clinicians are now advised to "avoid increasing dosages" above 90 morphine milligram equivalents ("MMEs") each day.

157.    Finally, the Manufacturer Defendants' materially overstated the so-called abuse-deterrent properties of some of their opioids, falsely claiming regulators found abuse-deterrent opioids ("AD opioids") would  "prevent tampering," result in a drug that "cannot be crushed or snorted," and in practice will "prevent or reduce opioid abuse."  These statements are false, however, as the Manufacturer Defendants knew at the time these statements were made that AD opioids do not prevent tampering and can (and often are) crushed or snorted by those determined to do so. Moreover,  contrary to the Manufacturer Defendants' claims, regulators have never claimed that AD opioids "will prevent or reduce opioid abuse."  Thus, by materially mischaracterizing regulatory findings and scientific evidence about AD opioids to exaggerate the abuse-deterrent properties of these drugs, the Manufacturer Defendants—despite knowing the high degree of risk that these mischaracterizations would create—proceeded to mislead the prescribing clinicians and patients who reasonably relied on Defendants' misstatements to their detriment.  Indeed,  a 2014 survey of 1,000 primary care physicians found nearly half of these physicians falsely believed AD opioids are

inherently less addictive, despite widely accepted clinical evidence that AD opioids do not reduce the rate of misuse and abuse by patients who either become addicted after using opioids long-term as prescribed, or escalate their use by taking more pills or higher doses.

158.    Due to the significant limitations of AD opioids, as well as the heightened risk that prescribers and patients will rely on the Manufacturer Defendants' misconceptions about these drugs, regulators have admonished the Manufacturer Defendants that any communications from the sponsor companies regarding AD properties must be truthful and not misleading (based on a product's labeling), and supported by sound science taking into consideration the totality of the data for the particular drug.  Claims for AD opioid products that are false, misleading, and/or insufficiently proven do not serve the public health.

159.    Despite this admonition, the Manufacturer Defendants have made and continue to make misleading claims about the extent to which their AD opioids can prevent or reduce abuse and addiction.

160.    For example, Endo has marketed Opana ER as tamper- or crush-resistant and less prone to misuse and abuse since at least May 21, 2011 even though: (1) Endo's petition to approve Opana ER as abuse-deterrent was rejected in 2012; (2) regulators found in 2013 that there was no evidence that Opana ER "would provide a reduction in oral, intranasal or intravenous abuse"; and (3) Endo's own studies, which it failed to disclose, showed that Opana ER could still be ground and chewed.  Endo's advertisements for the 2012 reformulation of Opana ER falsely claimed that Opana ER could not be crushed, creating the impression that the drug was more difficult to abuse.  On information and belief, detailers for Endo continue to reiterate these false statements to prescribers and patients across the country and in Kansas communities, including Ford County.

161.    In the 2016 settlement with the NY AG, Endo agreed not to make statements in New York that Opana ER was "designed to be, or is crush resistant."  The NY AG found those statements false and misleading because there was no difference in the ability to extract the narcotic from

Opana ER.  The NY AG also found that Endo failed to disclose its own knowledge of the crushability of redesigned Opana ER in its marketing to formulary committees and pharmacy benefit managers.

162.    Because Opana ER could be "readily prepared for injection" and was linked to outbreaks of HIV and a serious blood disease, in 2017, regulators requested that Endo withdraw Opana ER from the market.

163.    Likewise, Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, has engaged and continues to engage in deceptive marketing of its AD opioids—*i.e.*, reformulated OxyContin and Hysingla—since at least May 21, 2011.  Before April 2013, Purdue did not market its opioids based on their abuse deterrent properties.  On information and belief, however, Kansas prescribers report that detailers from Purdue have regularly used the so-called abuse deterrent properties of Purdue's opioid products as a primary selling point to differentiate those products from their competitors.  Specifically, these detailers: (1) claim that Purdue's AD opioids prevent tampering and cannot be crushed or snorted; (2) claim that Purdue's AD opioids prevent or reduce opioid misuse, abuse, and diversion, are less likely to yield a euphoric high, and are disfavored by opioid abusers; (3) Purdue's AD opioids are "safer" than other opioids; and (4) fail to disclose that Purdue's AD opioids do not impact oral abuse or misuse and that its abuse deterrent properties can be defeated.

164.    These statements and omissions by Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, are false and misleading and conflict with or are inconsistent with the approved label for Purdue's AD opioids—which indicates that abusers do seek them because of their high likability when snorted, that their abuse deterrent properties can be defeated, and that they can be abused orally

notwithstanding their abuse deterrent properties and which does not indicate that AD opioids prevent or reduce abuse, misuse, or diversion.

165.    A 2015 study also shows that many opioid addicts are abusing AD opioids through oral intake or by defeating the abuse deterrent mechanism.  Indeed, one-third of the patients in the study defeated the abuse deterrent mechanism and were able to continue inhaling or injecting the drug.  And to the extent that the abuse of AD opioids was reduced, those addicts simply shifted to other drugs such as heroin.[33]  Despite this, J. David Haddox, the Vice President of Health Policy for Purdue, falsely claimed in 2016 that the evidence does not show that Purdue's AD opioids are being abused in large numbers.

166.    Similarly, widely accepted clinical guidelines for opioid therapy expressly state that "[n]o studies" support the notion that "abuse-deterrent technologies [are] a risk mitigation strategy for deterring or preventing abuse," noting that the technologies "do not prevent opioid abuse through oral intake, the most common route of opioid abuse, and can still be abused by nonoral routes." Regulatory agencies have further reported that their staff could not find "any evidence showing the updated opioids [ADFs] actually reduce rates of addiction, overdoses, or death."[34]

167.    These false and misleading claims about the abuse deterrent properties of their opioids are especially troubling.  First, the Manufacturer Defendants are using these claims in a spurious attempt to rehabilitate their image as responsible opioid manufacturers.  Second, these claims are falsely targeting doctors' concerns about the toll caused by the explosion in opioid prescriptions and use and encouraging doctors to prescribe AD opioids under the mistaken belief that these opioids are safer, even though they are not.  Finally, these claims are causing doctors to

---

[33]    Cicero, Theodore J., and Matthew S. Ellis, *Abuse-deterrent formulations and the prescription opioid abuse epidemic in the United States: lessons learned from OxyContin*, 72.5 JAMA Psychiatry, 424-30 (2015).

[34]    Perrone, *Drugmakers push profitable, but unproven, opioid solution* (Dec. 15, 2016), https://publicintegrity.org/state-politics/drugmakers-push-profitable-but-unproven-opioid-solution/.

prescribe more AD opioids—which are far more expensive than other opioid products even though they provide little or no additional benefit.

168.     These numerous, longstanding misrepresentations of the risks of long-term opioid use spread by the Manufacturer Defendants successfully convinced healthcare providers and patients to discount those risks, including doctors and patients in Kansas and Ford County.

169.     These numerous, longstanding misrepresentations of the risks of long-term opioid use spread by the Manufacturer Defendants successfully convinced healthcare providers and patients to discount those risks.

### 7.     The Manufacturer Defendants Grossly Overstated the Benefits of Chronic Opioid Therapy

170.     To convince doctors and patients that opioids should be used to treat chronic pain, the Manufacturer Defendants also had to persuade them that there was a significant upside to long-term opioid use.  However, as the widely accepted clinical guidelines for opioid therapy now make clear that there is "*insufficient evidence* to determine the long-term benefits of opioid therapy for chronic pain."  In fact, these guidelines found that "[n]o evidence shows a long-term benefit of opioids in pain and function versus no opioids for chronic pain with outcomes examined at least 1 year later (with most placebo-controlled randomized trials ≤ 6 weeks in duration)" and that other treatments were more or equally beneficial and less harmful than long-term opioid use.

171.     Likewise, regulators recognize the lack of evidence to support long-term opioid use. In 2013, for instance, one regulator stated it was "not aware of adequate and well-controlled studies of opioids use longer than 12 weeks."  Despite this, the Manufacturer Defendants falsely and misleadingly touted the benefits of long-term opioid use and falsely and misleadingly suggested that these benefits were supported by scientific evidence.  On information and belief, not only have the Manufacturer Defendants failed to correct these false and misleading claims, they continue to make them today in Kansas and in Ford County.

172.     For example, the Manufacturer Defendants falsely claimed that long-term opioid use improved patients' function and quality of life.  Some illustrative examples of these deceptive claims that were made by, are continuing to be made by, and/or have not been corrected by the Manufacturer Defendants after May 21, 2011 are described below:

a.   Actavis distributed an advertisement that claimed that the use of Kadian to treat chronic pain would allow patients to return to work, relieve "stress on your body and your mental health," and help patients enjoy their lives.

b.   Endo distributed advertisements that claimed that the use of Opana ER for chronic pain would allow patients to perform demanding tasks like construction work or work as a chef and portrayed seemingly healthy, unimpaired subjects.

c.   Janssen sponsored and edited a patient education guide entitled *Finding Relief: Pain Management for Older Adults* (2009) which states as "a fact" that "opioids may make it easier for people to live normally."  The guide lists expected functional improvements from opioid use, including sleeping through the night, returning to work, recreation, sex, walking, and climbing stairs and states that "[u]sed properly, opioid medications can make it possible for people with chronic pain to 'return to normal.'"

d.   Purdue, which is owned and controlled by the Sacklers, neither of which/whom are defendants in this case, but which engaged in the kind of conduct that inspired and informed the conduct of other named manufacturer defendants, ran a series of advertisements for OxyContin in 2012 in medical journals entitled "Pain vignettes," which were case studies featuring patients with pain conditions persisting over several months and recommending OxyContin for them.  The ads implied that OxyContin improves patients' function.

e.   *Responsible Opioid Prescribing* (2007), sponsored and distributed by Endo, Cephalon and Purdue—owned and controlled by the Sacklers— taught that relief of pain by opioids, by itself, improved patients' function.

f.   Purdue, which is owned and controlled by the Sacklers, and Cephalon sponsored APF's *Treatment Options: A Guide for People Living with Pain* (2007), which counseled patients that opioids "give [pain patients] a quality of life we deserve."

g.   Endo's NIPC website painknowledge.com claimed in 2009 that with opioids, "your level of function should improve; you may find you are now able to participate in activities of daily living, such as work and hobbies, that you were not able to enjoy when your pain was worse."  Elsewhere, the website touted improved quality of life (as well as "improved function") as benefits of opioid therapy.  The grant request that Endo approved for this project specifically

65

indicated NIPC's intent to make misleading claims about function, and Endo closely tracked visits to the site.

h. Endo was the sole sponsor, through NIPC, of a series of non-credit educational programs titled *Persistent Pain in the Older Patient*, which claimed that chronic opioid therapy has been "shown to reduce pain and improve depressive symptoms and cognitive functioning." The CME was disseminated via webcast.

i. Janssen sponsored, funded, and edited a website, *Let's Talk Pain*, in 2009, which featured an interview edited by Janssen claiming that opioids allowed a patient to "continue to function."

j. In a 2015 video on Forbes.com discussing the introduction of Hysingla ER, Purdue's Vice President of Health Policy, J. David Haddox, talked about the importance of opioids, including Purdue's opioids, to chronic pain patients' "quality of life," and complained that government statistics do not take into account that patients could be driven to suicide without pain relief.

k. Since at least May 21, 2011, sales representatives for Endo, Teva and Janssen's sales representatives have conveyed and continue to convey to prescribers in Kansas, including in Ford County, the message that opioids will improve patient function.

173. These claims find no support in the scientific literature. Regulators as well as industry stakeholders have made this clear for years. Most recently, widely accepted clinical guidelines for opioid therapy concluded that "there is no good evidence that opioids improve pain or function with long-term use, and . . . complete relief of pain is unlikely." As illustrated below, this conclusion is reinforced throughout these guidelines:

- *"No evidence shows a long-term benefit of opioids in pain and function versus no opioids for chronic pain with outcomes examined at least 1 year later. . . ."*

- *"Although opioids can reduce pain during short-term use, the clinical evidence review found insufficient evidence to determine whether pain relief is sustained and whether function or quality of life improves with long-term opioid therapy."*

- *"[E]vidence is limited or insufficient for improved pain or function with long-term use of opioids for several chronic pain conditions for which opioids are commonly prescribed, such as low back pain, headache, and fibromyalgia."*

174. Industry guidelines for opioid therapy also note that the risks of addiction and death

66

"can cause distress and inability to fulfill major role obligations."  As a matter of common sense (and medical evidence), drugs that can kill patients or commit them to a life of addiction or recovery do not improve their function and quality of life.

175.    Consistent with these guidelines, regulators have also repudiated Defendants' claim that opioids improved function and quality of life.  In 2010, for instance, regulators expressly warned Actavis, in response to its advertising described above, that "[w]e are not aware of substantial evidence or substantial clinical experience demonstrating that the magnitude of the effect of the drug [Kadian] has in alleviating pain, taken together with any drug-related side effects patients may experience … results in any overall positive impact on a patient's work, physical and mental functioning, daily activities, or enjoyment of life."  And in 2008, regulators sent a warning letter to an opioid manufacturer, making it clear "that [the claim that] patients who are treated with the drug experience an improvement in their overall function, social function, and ability to perform daily activities . . . has not been demonstrated by substantial evidence or substantial clinical experience."

176.    The Manufacturer Defendants also falsely and misleadingly emphasized or exaggerated the risks of competing products like NSAIDs, so that doctors and patients would look to opioids first for the long-term treatment of chronic pain.  For example, the Manufacturer Defendants, before and after May 21, 2011, have overstated the number of deaths from NSAIDS and have prominently featured the risks of NSAIDS, while minimizing or failing to mention the serious risks of opioids.  Once again, these misrepresentations by the Manufacturer Defendants contravene widely accepted clinical guidelines for opioid therapy as well as pronouncements by and guidance from regulators based on the scientific evidence.  Indeed, in 2013, the labels for ER/LA opioids and IR opioids were changed to state that opioids should only be used as a last resort "in patients for which alternative treatment options" like non-opioid drugs "are inadequate."  An identical change was made to the labels of IR opioids in 2016.  And widely accepted clinical guidelines regarding opioid therapy expressly state that NSAIDs—not opioids—should be the first-line treatment for chronic

67

pain, particularly arthritis and lower back pain.

> **8.      The Manufacturer Defendants Engaged in Other Unlawful and Unfair Misconduct**

177.    In stark contrast to repeated admonitions from regulators regarding the Manufacturer Defendants' "obligation to design and operate a system to disclose . . . suspicious orders of controlled substances" and to inform regulators "of suspicious orders when discovered," the Manufacturer Defendants have improperly leveraged their respective sales networks and prescribing databases to identify and improperly increase marketing efforts to prescribers who have inappropriately prescribed the Manufacturer Defendants' opioids, without reporting these prescribers to the appropriate authorities

178.    As Dr. Mitchell Katz, director of the Los Angeles County Department of Health Services, said in a Los Angeles Times article, "[a]ny drug company that has information about physicians potentially engaged in illegal prescribing or prescribing that is endangering people's lives has a responsibility to report it."

179.    For instance, Defendant Endo has been cited for its failure to set up an effective system for identifying and reporting suspicious prescribing.  In its settlement agreement with Endo, the NY AG found that Endo failed to require sales representatives to report signs of abuse, diversion, and inappropriate prescribing; paid bonuses to sales representatives for detailing prescribers who were subsequently arrested or convicted for illegal prescribing; and failed to prevent sales representatives from visiting prescribers whose suspicious conduct had caused them to be placed on a no-call list.  The NY AG also found that, in certain cases where Endo's sales representatives detailed prescribers who were convicted of illegal prescribing of opioids after May 21, 2011, those representatives could have recognized potential signs of diversion and reported those prescribers, but failed to do so.

180.    Similarly, Mylan agreed to pay $100 million to resolve allegations that it conspired to

deny its competitors certain necessary ingredients to manufacture several widely-prescribed medications, including treatments for opioid use disorder and opioid addiction.  As alleged in petitions filed by thirty-two State Attorneys General and the District of Columbia, Mylan's conduct caused substantial price increases in, and improperly limited the supply of, these treatments.

181.    In 2013, West-Ward was forced to pay penalties for shirking the company's legal obligation to make timely payments to drug discount programs that provide vulnerable patient population with affordable access to pharmaceuticals, and also agreed to pay $10,000,000 to resolve allegations that West-Ward had also been inflating prescription drug prices since 1995, effectively overcharging some of its most vulnerable patient populations.

182.    On information and belief, Par pleaded guilty to misbranding its drugs in 2013.

183.    In May 2019, Cephalon Pharmaceuticals agreed to settle its lawsuit brought by the Oklahoma Attorney General on behalf of the State of Oklahoma for $85 million dollars which accuses Cephalon (and other manufacturers) of creating a public nuisance through its production and marketing of prescription opioids.[35]  Ford County alleges similar claims against Cephalon and its affiliates in this Petition.

184.    Further, on October 19, 2019, Teva USA agreed to pay $50 million to resolve allegations by two Ohio counties that Teva created a public nuisance and violated other laws in connection with its production and marketing of prescription opioids in these counties.  Plaintiff alleges similar claims against Defendants in this Petition.

185.    Despite the clear consequences for their misconduct, for years the Manufacturer Defendants' sales representatives have pressed prescribing clinicians to prescribe their opioids, offering various gifts, rewards and/or other financial incentives to prescribers, to persuade these clinicians to help the Manufacturer Defendants facilitate their widespread deception about the risks

---

[35]    Oklahoma Attorney General, Press Release—*Attorney General Hunter Announces Settlement with Teva Pharmaceuticals,* (May 26, 2019), http://www.oag.ok.gov/attorney-general-hunter-announces-settlement-with-teva-pharmaceuticals.

and benefits of opioids for the long-term treatment of chronic pain.  Indeed, on information and belief, the Manufacturer Defendants' misconduct is ongoing as they continue to profit from the prescriptions of such prolific prescribers in Kansas, including in Ford County.

**F.     Although the Manufacturer Defendants Knew That Their Marketing of Opioids Was False and Misleading, They Fraudulently Concealed Their Misconduct**

186.     The Manufacturer Defendants, both individually and collectively, made, promoted, and profited from their misrepresentations about the risks and benefits of opioids for chronic pain even though they knew that their misrepresentations were false and misleading.  The history of opioids, as well as research and clinical experience over the last 20 years, established that opioids were highly addictive and responsible for a long list of very serious adverse outcomes.  Regulators expressly warned the Manufacturer Defendants of this.  The Manufacturer Defendants had access to scientific studies, detailed prescription data, and reports of adverse events, including reports of addiction, hospitalization, and deaths—all of which made clear the harms from long-term opioid use and that patients are suffering from addiction, overdoses, and death in alarming numbers.  More recently, regulators have issued pronouncements based on the medical evidence that conclusively expose the known falsity of the Manufacturer Defendants' misrepresentations, and several Manufacturer Defendants have recently entered agreements prohibiting them from making some of the same misrepresentations described in this Petition in New York.

187.     Moreover, at all times relevant to this Petition, the Manufacturer Defendants fraudulently concealed their deceptive marketing and unlawful, unfair, and fraudulent conduct.  For example, the Manufacturer Defendants concealed or intentionally failed to disclose that information disseminated to the public or medical professionals through third parties such as Front Groups and KOLs were, in fact, prepared and funded by the Manufacturer Defendants.  The Manufacturer Defendants intentionally misled the public to believe that the Front Groups and KOLs were neutral third parties promoting the safety of opioids when they were actually the Manufacturer Defendants'

paid surrogates feeding lies to the public.  The Manufacturer Defendants purposefully hid behind the assumed credibility of these individuals and organizations and relied on them to vouch for the accuracy and integrity of the Manufacturer Defendants' false and misleading statements about the risks and benefits of long-term opioid use for chronic pain.

188.    The Manufacturer Defendants also concealed or intentionally failed to disclose their role in controlling the content and messaging of information and materials regarding the purported safety and non-addictive nature of opioids disseminated by these third parties.  In truth, however, the Manufacturer Defendants used the Front Groups and KOLs as their paid puppets to promote misinformation and pass it off as "educational" materials in emails, correspondence, and meetings, among others, public relations companies that were not, and have not yet become, public.  For example, painknowledge.org, which is run by the NIPC, did not disclose Endo's involvement.  Other Manufacturer Defendants, such as Janssen, ran similar websites that masked their own direct role.

189.    Finally, the Manufacturer Defendants manipulated their promotional materials and the scientific literature to make it appear that these items were accurate, truthful, and supported by objective evidence when they were not. As alleged in greater detail, *supra*, the Manufacturer Defendants represented as "facts" misstatements, half-truths, and outright lies about the purported benefits and safety of opioids, including representing that opioids could be used indefinitely without increased health or addiction risks or that opioids could improve the quality of patients' lives when, in fact, the Manufacturer Defendants knew that opioids were highly addictive and appropriate for short term use.  The Manufacturer Defendants distorted the meaning or import of studies they cited and offered them as evidence for propositions the studies did not support.  The lack of support for the Manufacturer Defendants' deceptive messages was not apparent to medical professionals who relied upon them in making treatment decisions, nor could it have been detected by Plaintiff.

190.    Thus, the Manufacturer Defendants successfully concealed from the medical community, patients, and health care payors facts sufficient to arouse suspicion of the claims that

Plaintiff now asserts.  Plaintiff did not know of the existence or scope of the Manufacturer Defendants' industry-wide fraud and could not have acquired such knowledge earlier through the exercise of reasonable diligence.

G.     **By Knowingly Causing an Explosion in Opioid Prescribing, Use, Misuse, Abuse, and Addiction Through Their Deceptive Marketing Schemes and Unlawful and Unfair Business Practices, Each Manufacturer Defendant Has Created or Assisted in the Creation of a Public Nuisance in Ford County**

1.     **The Manufacturer Defendants' Deceptive Marketing Scheme Has Caused and Continues to Cause a Substantial Increase in Opioid Prescriptions and Use in Ford County**

191.    The Manufacturer Defendants' misrepresentations deceived and continue to deceive doctors and patients in Ford County about the risks and benefits of long-term opioid use.  Studies also reveal that some doctors and many patients are not aware of or do not understand these risks and benefits.  Indeed, patients often report that they were not warned they might become addicted to opioids prescribed to them.  As reported in January 2016, a 2015 survey of more than 1,000 opioid patients found that 4 out of 10 were not told opioids were potentially addictive.  On information and belief, Kansas residents in treatment for opioid addiction, including citizens of Ford County, were never told that they might become addicted to opioids when they started taking them, were told that they could easily stop using opioids, or were told that the opioids they were prescribed were less addictive than other opioids.

192.    The Manufacturer Defendants knew and should have known that their misrepresentations about the risks and benefits of long-term opioid use were false and misleading when they made them.

193.    The Manufacturer Defendants' deceptive marketing scheme and their unlawful and unfair business practices caused and continue to cause doctors and other clinicians in Ford County to

prescribe opioids for the long-term treatment of chronic pain conditions such as back pain, headaches, arthritis, and fibromyalgia.  Absent the Manufacturer Defendants' deceptive marketing scheme and their unlawful and unfair business practices, these doctors would not have prescribed as many opioids to as many patients, and there would not have been as many opioids available for misuse and abuse or as much demand for those opioids.

194.    The Manufacturer Defendants' deceptive marketing scheme and their unlawful and unfair business practices also caused and continue to cause patients in Kansas, including patients in Ford County, to purchase and use opioids for their chronic pain believing they are safe and effective. Absent Defendants' deceptive marketing scheme, fewer patients would be using opioids long-term to treat chronic pain, and those patients using opioids would be using less of them.  The Manufacturer Defendants' deceptive marketing and their unlawful and unfair business practices have caused and continue to cause the excessive prescribing and use of opioids to explode in Ford County.

195.    The Manufacturer Defendants' deceptive marketing of the abuse-deterrent properties of their opioids during the past few years has been particularly effective, including in Ford County. Such deceptive marketing has created the false impression among pain specialists and other prescribers that Defendants' AD opioids are appropriate for the long-term treatment of chronic pain, which in turn has increased the number of prescriptions for these Defendants' AD opioids.  Although sales of AD opioids still represent only a small fraction of opioids sold (less than 5% of all opioids sold in 2015), they represent a disproportionate share of opioid sales revenue ($2.4 billion or approximately 25% of opioid sales revenue in 2015).

196.    The dramatic increase in opioid prescriptions and use corresponds with the dramatic increase in the Manufacturer Defendants' spending on their deceptive marketing scheme.  The Manufacturer Defendants' spending on opioid marketing totaled approximately $91 million in 2000. By 2011, that spending had tripled to $288 million.

73

2.      **By Causing a Significant Increase in Opioid Prescriptions and Use, the Manufacturer Defendants Have Created or Assisted in the Creation of a Public Nuisance in Ford County**

197.     The escalating number of opioid prescriptions written by healthcare providers who reasonably relied on the Manufacturer Defendants' deceptive marketing scheme is the cause of a correspondingly dramatic increase in opioid addiction, overdose, and death throughout the United States and Kansas communities, including in Ford County.

198.     Representing regulators, Dr. Nora Volkow explained that "aggressive marketing by pharmaceutical companies" is "likely to have contributed to the severity of the current prescription drug abuse problem."

199.     In August 2016, the Surgeon General published an open letter to be sent to physicians nationwide, enlisting their help in combating this "urgent health crisis" and linking that crisis to deceptive marketing.  He wrote that the push to aggressively treat pain, and the "devastating" results that followed, had "coincided with heavy marketing to doctors . . . [m]any of [whom] were even taught–incorrectly–that opioids are not addictive when prescribed for legitimate pain."

200.     Scientific evidence demonstrates a strong correlation between opioid prescriptions and opioid abuse.  A 2016 report explained that "[o]pioid pain reliever prescribing has quadrupled since 1999 and has increased in parallel with [opioid] overdoses."  Patients receiving prescription opioids for chronic pain account for the majority of overdoses.  For these reasons, the report concluded that efforts to rein in the prescribing of opioids for chronic pain are critical "to reverse the epidemic of opioid drug overdose deaths and prevent opioid-related morbidity."

201.     Contrary to the Manufacturer Defendants' misrepresentations, most opioid addiction begins with legitimately prescribed opioids.  In 2011, 71% of people who abused prescription opioids got them through friends or relatives, not from pill mills, drug dealers or the internet. Numerous doctors and substance abuse counselors note that many of their patients who misuse or

abuse opioids started with legitimate prescriptions, confirming the important role that doctors' prescribing habits have played in the opioid epidemic.

202.    As regulators observed in 2016, the opioid epidemic is getting worse, not better.  The overprescribing of opioids for chronic pain caused by the Manufacturer Defendants' deceptive marketing scheme has also resulted in a dramatic rise in the number of infants in Kansas who are born addicted to opioids due to prenatal exposure and suffer from neonatal abstinence syndrome. From 2006 to 2016, there was a 538% increase in reported cases of NAS in Kansas alone.  These infants face painful withdrawal and may suffer long-term neurologic and cognitive impacts.

203.    The Manufacturer Defendants false and misleading advertising and other unlawful and unfair conduct has greatly expanded the opioid market and significantly harmed communities across the nation, including Ford County and its citizens.  The Manufacturer Defendants' success in extending the market for opioids to new patients and chronic pain conditions has created an abundance of drugs available for non-medical and criminal use and fueled a new wave of addiction and injury.  It has been estimated that 60% of the opioids that are abused come, directly or indirectly, through doctors' prescriptions.

204.    The rise in opioid addiction caused by the Manufacturer Defendants' deceptive marketing scheme has also increased heroin use.  Almost 80% of those who used heroin in the past year previously abused prescription opioids.

205.    Many patients who become addicted to opioids will lose their jobs.  Some will lose their homes and their families.  Some will get treatment and fewer will successfully complete it; many of those patients will relapse, returning to opioids or some other drug.  Of those who continue to take opioids, some will overdose—some fatally, some not.  Others will die prematurely from related causes—falling or getting into traffic accidents due to opioid-induced somnolence; dying in their sleep from opioid-induced respiratory depression; suffering assaults while engaging in illicit drug transactions; or dying from opioid-induced heart or neurological disease.

206.    Absent each Manufacturer Defendants' deceptive marketing scheme and their unlawful and unfair business practices, the public health crisis caused by opioid misuse, abuse, and addiction in Ford County, would have been averted or much less severe.

207.    These harms in Ford County, caused by the Manufacturer Defendants' deceptive marketing schemes and unlawful and unfair business practices are a public or common nuisance because they significantly damage the public health, safety, peace, comfort, and convenience; have caused and continue to cause significant harm to the community; and arise from Defendants' various violations of Kansas controlled substances laws and regulations.  Alternatively, the Manufacturer Defendants' misconduct qualifies as a private nuisance as applied to Ford County, because the nature of Plaintiff's damages pleaded herein are unique from the general type of harm the Manufacturer Defendants caused to the public at large.

> **3.**    **The Manufacturer Defendants Knew and Should Have Known That Their Deceptive Marketing Schemes Would Create or Assist in the Creation of This Public Nuisance in Ford County**

208.    The Manufacturer Defendants knew and should have known about these harms that their deceptive marketing and unlawful and unfair business practices have caused and continue to cause in Ford County.  The Manufacturer Defendants closely monitored their sales and the habits of prescribing doctors.  Their sales representatives, who visited doctors and attended CMEs, knew which doctors were receiving their messages and how they were responding.  The Manufacturer Defendants also had access to and watched carefully government and other data that tracked the substantial rise in opioid use, addiction, injury, and death.  They knew—and, indeed, intended—that their misrepresentations would persuade healthcare providers in Ford County to prescribe, and patients in Ford County to use, their opioids for the long-term treatment of chronic pain.

4. **The Manufacturer Defendants' Conduct and Role in Creating or Assisting in the Creation of the Public Nuisance Is Not Excused by the Actions of any Third Parties**

209. The Manufacturer Defendants' actions are neither permitted nor excused by the fact that their drug labels may have allowed or did not exclude the use of opioids for chronic pain. Government approval of opioids for certain uses did not give the Manufacturer Defendants license to misrepresent the risks and benefits of opioids. Indeed, the Manufacturer Defendants' misrepresentations were directly contrary to pronouncements by and guidance from regulators based on the medical evidence and their own labels.

210. Likewise, the Manufacturer Defendants' causal role was not broken by the involvement of healthcare providers. Defendants' marketing efforts were ubiquitous and highly persuasive. Their deceptive messages tainted virtually every source doctors and other prescribing clinicians could rely on for information and prevented them from making informed treatment decisions. The Manufacturer Defendants were also able to harness and hijack what doctors wanted to believe—namely, that opioids represented a means of relieving their patients' suffering and of practicing medicine more compassionately.

H. **The Manufacturer Defendants' Fraudulent Marketing Has Led To Record Profits**

211. While the use of opioids has taken an enormous toll both on communities across the nation and on Ford County and its citizens, the Manufacturer Defendants have realized blockbuster profits. In 2014 alone, opioids generated $11 billion in revenue for drug companies like the Manufacturer Defendants. Indeed, financial information indicates that each Manufacturer Defendant experienced a material increase in sales, revenue, and profits from the false and misleading advertising and other unlawful and unfair conduct described above.

### I.    John Kapoor and Michael Babich Led Insys' Misconduct

212.    Kansas laws against both the creation of a public nuisance as well as unfair and deceptive conduct in commerce applies to individuals regardless of whether they are officers, directors, or employees.  Holding individuals personally liable for their misconduct does not require piercing a corporate veil.  Individuals are personally liable if: (a) they participated in the misconduct; or (b) they knew about the misconduct and failed to stop it; or (c) they should have known about the misconduct and they failed to stop it.[36]  In this case, the Individual Defendants John Kapoor and Michael Babich made the decisions to break Kansas law; they controlled the unfair and deceptive conduct; and they personally collected many millions of dollars from the deception, going as far as installing one of their own business liaisons in the Prescriber Defendants practice, to facilitate opioid diversion and carryout Defendants' scheme.

213.    John Kapoor ("Kapoor"), the founder and majority owner of Insys, and Michael Babich ("Babich"), the former CEO and President of Insys, led a nationwide conspiracy to profit using bribes and fraud to cause the illegal distribution of Subsys.

214.    On information and belief, Kapoor and Babich conspired to bribe practitioners in various states, including in Kansas, many of whom operated pain clinics, in order to get them to prescribe Subsys.  In exchange for bribes and kickbacks, the practitioners wrote large numbers of prescriptions for patients, many of whom were not diagnosed with cancer, and therefore did not need Subsys.

215.    Kapoor and Babich also conspired to mislead and defraud health insurance providers who were reluctant to approve payment for the drug when it was prescribed for non-cancer patients.  They achieved this goal by setting up a "reimbursement unit," which was dedicated to increasing Subsys sales by—*inter alia*—increasing the number of prior authorizations for Subsys by providing

---

[36] *See Lentz Plumbing Co. v. Fee.,* 235 Kan. 266, 270 (Kan. 1984); *State v. Commemorative Serv Corp.*, 832 P.2d 831, 840 (Kan. Ct. App. 1991).

insurance companies and pharmacy benefit managers ("PBMs") with materially false and fraudulent pretenses, representations, and promises about their insured's employment, medical diagnoses, and tried and failed medications, creating the false impression that Subsys was medically appropriate and covered by the insured's health plan.  As a result,  the number of prior authorizations for Subsys increased from 30% of all Subsys prescriptions in 2012, to 85% of all Subsys prescriptions in 2013.

216.    Kapoor and Babich fueled the opioid epidemic by paying doctors to needlessly prescribe Subsys for patients who did not need it, and without complying with Kansas law, thus putting patients at risk and contributing to the current opioid crisis.  Kapoor and Babich committed fraud, placing profit before patient safety, to sell a highly potent and addictive opioid.

217.    Indeed, the illicit fentanyl market that Defendants' Kapoor and Babich created, maintained, and/or assisted in creating and/or maintaining in Kansas has exploded, spreading across Interstate 70 from Overland Park in Johnson County to the Manhattan area of Riley County and subsuming Kansas communities in between, including the City of Topeka, Plaintiff's county seat.

**J.    Distributor Defendants' Violation of Duty**

218.    Distributor Defendants have a duty to exercise reasonable care under the circumstances.  This involves a duty not to create a foreseeable risk of harm to others.  Additionally, one who engages in affirmative conduct and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another is under a duty to exercise reasonable care to prevent the threatened harm.

219.    Under Kan. Admin. Regs. 68-14-7,  all "registrant[s] shall meet the…minimum requirements for the storage and handling of prescription-only drugs, and for the establishment and maintenance of prescription-only drug distribution records by wholesale distributors and their officers, agents, representatives, and employees.  "Wholesale distributor" means any person, partnership, corporation, or business firm licensed or registered in this state and engaging in the wholesale distribution of prescription-only drugs.  Kan. Admin. Regs. 68-14-1.  Specifically,

registrants are required to maintain effective controls against diversion and design and operate a system to disclose suspicious orders of controlled substances, especially opioids.  Each of the Distributor Defendants is a registrant for purposes of this section and, therefore, must satisfy certain reporting requirements of any and all "suspicious orders."  (*E.g.*, K.A.R. 68-20-15a(c)(2) ("Each registrant shall design an operative system to disclose to the registrant any suspicious orders of controlled substances. Each registrant shall inform the board of suspicious orders when discovered. Suspicious orders shall include orders of unusual size, orders deviating from a normal pattern, and orders of unusual frequency.")

## K.  Distributor Defendants Knew or Should Have Known They Were Facilitating Widespread Opioid Diversion

220.  Opioid diversion in the supply chain has always been a widespread problem and has been highly publicized.  Numerous publications from regulators and professional associations have highlighted the epidemic rate of opioid abuse and overdose rates throughout the United States.  Ford County and neighboring communities have not been spared from this deleterious trend.

221.  Prescription drug abuse is one of the fastest-growing drug problems in the United States, including in Kansas.

222.  To combat the problem of opioid diversion, regulators have provided guidance to distributors on the requirements of suspicious order reporting in numerous venues, publications, documents, and final agency actions.

223.  Since 2006, regulators have conducted one-on-one briefings with distributors regarding downstream customer sales, their due diligence responsibilities, and their legal and regulatory responsibilities (including the responsibility to know their customers and report suspicious orders).  The distributors were provided with data on controlled substance distribution patterns and trends, including data on the volume of orders, frequency of orders, and percentage of controlled vs. non-controlled purchases.  The distributors were also given case studies, legal findings

against other registrants, and profiles of their customers whose previous purchases may have reflected suspicious ordering patterns.  These materials pointed out "red flags" distributors should look for in order to identify potential diversion.  This initiative was created to help distributors understand their duties with respect to diversion control.

224.    For years, regulators have hosted conferences to provide distributors with updated information about diversion trends and regulatory changes that affect the drug supply chain, the distributor initiative, and suspicious order reporting.  All of the major distributors—including AmerisourceBergen and Cardinal Health—attended at least one of these conferences.  The conferences allowed distributors to ask questions and raise concerns and request clarification on policies and procedures intended to prevent opioid diversion.

225.    Likewise, regulators have participated in numerous meetings and events with the legacy Healthcare Distribution Management Association ("HDMA"), now known as the Healthcare Distribution Alliance ("HDA"), an industry trade association for wholesalers and distributors.  Regulators have provided guidance to the association concerning suspicious order monitoring, and the association has published guidance documents for its members on suspicious order monitoring, reporting requirements, and the diversion of controlled substances.[37] (HDMA, "Industry Compliance Guidelines: Reporting Suspicious Orders and Preventing Diversion of Controlled Substances," (2008).

226.    On September 27, 2006 and again on December 27, 2007, regulators sent letters to all relevant opioid distributors providing guidance on suspicious order monitoring of controlled substances and the responsibilities and obligations of the registrant to conduct due diligence on controlled substance customers as part of a program to maintain effective controls against diversion.

---

[37] *See, e.g.*, HDA.org, Issues in Distribution, *Prescription Drug Abuse and Diversion* (2018) (describing various resources "address[ing] the industry's approach to countering diversion and ensuring the safe supply of medicines to licensed entities across the supply chain"), https://www.hda.org/issues/prescription-drug-abuse-and-diversion.

These letters reminded these distributors that they were required by law to exercise due diligence to avoid filling orders that may be diverted into the illicit market.  These letters explained that as part of the legal obligation to maintain effective controls against diversion, the distributor is required to exercise due care in confirming the legitimacy of all orders prior to filling.

227.    Again, in 2007 regulators sent a follow-up letter to all relevant opioid distributors, providing guidance and reinforcing the legal requirements outlined in prior correspondence.  The letter reminded distributors that suspicious orders must be reported when discovered and monthly transaction reports of excessive purchases did not meet the regulatory criteria for suspicious order reporting.  The letter also advised distributors that they must perform an independent analysis of a suspicious order prior to the sale to determine if controlled substances would likely be diverted, and that filing a suspicious order and then completing the sale does not absolve the distributors from legal responsibility.

228.    The Distributor Defendants were also on notice that their own industry group, the Healthcare Distribution Management Association, published Industry Compliance Guidelines titled "Reporting Suspicious Orders and Preventing Diversion of Controlled Substances" that stressed the critical role of each member of the supply chain in distributing controlled substances.

229.    Opioid distributors themselves recognized the magnitude of the problem and, at least rhetorically, their legal responsibilities to prevent diversion.  They have made statements assuring the public they are supposedly undertaking actions to curb the opioid epidemic.

230.    For example, a Cardinal executive recently claimed that it uses "advanced analytics" to monitor its supply chain; Cardinal assured the public it was being "as effective and efficient as possible in constantly monitoring, identifying, and eliminating any outside criminal activity."

231.    McKesson has publicly stated that it has a "best-in-class controlled substance monitoring program to help identify suspicious orders" and claimed it is "deeply passionate about curbing the opioid epidemic in our country."

82

232.    These assurances, in addition to obligations imposed by law, show that Distributor Defendants understand and have undertaken a duty to protect the public against diversion from their supply chains, and to curb the opioid epidemic.

233.    However, despite these statements and duties, Distributor Defendants have knowingly or negligently allowed diversion.  Their misconduct has resulted in numerous civil fines and other penalties recovered by government agencies, including actions by regulators.

234.    In 2008, Cardinal Health paid a $34 million penalty to settle allegations about opioid diversion taking place at seven warehouses around the United States.  Again in 2012, Cardinal Health reached an administrative settlement to resolve allegations of opioid diversion between 2009 and 2012 in multiple states.  Even more recently, in December 2016, Cardinal Health settled similar allegations of opioid diversion, misuse, abuse, overdose and death.  During the investigation of Cardinal Health, evidence was discovered that Cardinal Health's own investigator warned the company against selling opioids to a particular pharmacy in Florida that was suspected of opioid diversion.  Instead of heeding the investigator's warning, Cardinal Health increased its opioid shipments to this pharmacy by almost 2 million doses of oxycodone in just one year, while other comparable pharmacies were receiving approximately 69,000 doses/year.

235.    In 2007, AmerisourceBergen lost its license to send controlled substances from a distribution center amid allegations that it was not controlling shipments of prescription opioids to Internet pharmacies.  Again in 2012, AmerisourceBergen was implicated for failing to protect against the diversion of particular controlled substances into non-medically necessary channels.  It has been reported that AmerisourceBergen has been subpoenaed for documents in connection with a grand jury proceeding seeking information on the company's "program for controlling and monitoring diversion of controlled substances into channels other than for legitimate medical, scientific and industrial purposes."

236.    A recently uncovered 2011 internal email chain between high-ranking

AmerisourceBergen officials illustrates that AmerisourceBergen was aware of the opioid addiction crisis it had a hand in creating and also reflects their culture of callous indifference to the crisis.  In the email titled, "Saw This And Had To Share It …" an AmerisourceBergen officials shared lyrics set to the tune of the theme song from "The Beverly Hillbillies" television show but changed to the words to, "Come and listen to a story about a man named Jed[;] A poor mountaineer, barely kept his habit fed."  The lyrics refer to "Hillbilly Heroin," a term for the potent opioid oxycodone.  The lyrics ostensibly mock the "bevy of pillbillies," described as people traveling to Florida to purchase opioid painkillers unlawfully.  Julie Eddy, director of state government affairs at AmerisourceBergen, commented, "I sent this to you a month or so ago - nice to see it recirculated."  Eddy added a smiling emoji at the end of her email.  By 2011, AmerisourceBergen's senior management of regulatory compliance possessed actual knowledge of interstate diversion of prescription opioids into the illicit market.  The 2011 email chain appears to be a tacit admission of the "pill migration" theory, which AmerisourceBergen has opposed on both factual and legal grounds.[38]

237.    In May 2008, McKesson entered into a settlement agreement with the federal government to settle claims that McKesson failed to maintain effective controls against diversion of controlled substances.  McKesson allegedly failed to report suspicious orders from rogue internet pharmacies around the country, resulting in millions of doses of controlled substances being diverted.  McKesson agreed to pay a $13.25 million civil fine.  After 2008, McKesson still failed to adhere to its duties and it was discovered that in Colorado, from 2008 to 2013, it filled more than 1.6 million orders, for tens of millions of controlled substances, but it reported just 16 orders as suspicious, and all were from a single consumer.  In early 2017, it was reported that McKesson agreed to pay $150 million to the government in order to settle certain opioid diversion claims alleging that McKesson allowed drug diversion at 12 distribution centers in 11 states.

[38] https://www.law360.com/health/articles/1276258/amerisource-hid-pillbillies-email-in-opioid-

84

238.     Although these Distributor Defendants have been penalized by law enforcement authorities, these penalties have not changed their conduct.  They pay fines as a cost of doing business in an industry which generates billions of dollars in revenue.

239.     Plaintiff does not bring causes of action based on violations of federal statutes and regulations.  However, the existence of these complicated regulatory schemes shows Defendants' intimate knowledge of the dangers of diversion of prescription opioids and the existence of a thriving illicit market for these drugs.  The Defendants breached their duties to Plaintiff despite this knowledge and longstanding regulatory guidance of how to deter and prevent diversion of prescription opioids.

### L.     The Pharmacy Defendants Understood But Violated Their Duties

240.     Pharmacy Defendants Dillon Pharmacy, Walmart Pharmacy, and Walgreens Pharmacy earned enormous profits by flooding Ford County with prescription opioids.  Like the Distributor Defendants, the Pharmacy Defendants are participants in the opioid supply chain and wholesale drug distributors under Kansas law.  The Pharmacy Defendants operate as licensed wholesale distributors, distributing opioids and other pharmaceuticals to their own retail pharmacy outlets..  As wholesale drug distributors, the Pharmacy Defendants, like the Distributor Defendants, are obligated to prevent diversion of prescription opioids into illegal markets by, among other duties, monitoring and reporting suspicious orders.

241.     Because the Pharmacy Defendants have retail outlets that interface with the public, however, they differ in significant ways from the Distributor Defendants.  For example, the Pharmacy Defendants are in a position to collect data and examine orders based on the patterns they observe within the communities where they are located.  They are also in a position to observe certain "red flags" including: (1) prescriptions written by doctors who write significantly more prescriptions (or prescriptions for higher doses or durations) for controlled substances compared to

---

mdl-attys-say.

85

other practitioners in the area; (2) prescriptions which should last for certain periods in legitimate use, but are being refilled at shorter intervals; (3) prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time; (4) prescriptions that "look too good" or upon which the prescriber's handwriting is too legible; (5) prescriptions with quantities or dosages that differ from typical medical usage; (6) prescriptions that use notations not complying with standard abbreviations and/or contain no abbreviations; (7) photocopied prescriptions; or (8) prescriptions containing variant handwriting.  According to industry standards, if a pharmacy finds evidence of prescription diversion, it must report these findings to the local Board of Pharmacy.  The Pharmacy Defendants had such evidence but failed to live up to their reporting obligations, which in turn allowed opioid diversion to occur in Ford County.

242.    The Pharmacy Defendants' failure to prevent diversion was also due to their own internal policies.  Such policies included performance metrics and prescription quotas that directed pharmacists to meet high goals and, thus, made it difficult, if not impossible, for them to apply with applicable laws and regulations.  These policies remained in place even as the Pharmacy Defendants were aware that an opioid epidemic was unfolding.

243.    The Pharmacy Defendants also failed to train their pharmacists and pharmacy technicians adequately in handling opioid prescriptions.  In particular, these employees did not receive specific training both in identifying which prescriptions were suspicious and possibly phony, and then in deciding what steps to take if the prescriptions were indeed illegal.  The Pharmacy Defendants did not respond appropriately when their employees raised concerns.  Additionally, the Pharmacy Defendants did not use the data available to them which, if used effectively, could have prevented diversion.  In particular, the Pharmacy Defendants could have analyzed this information to determine: (a) the number of opioid prescriptions filled by individual pharmacies relative to the population of the pharmacy's community; (b) the increase in opioid sales relative to past years; (c) the number of opioid prescriptions filled relative to other drugs; and (d) the increase in annual opioid

sales relative to the increase in annual sales of other drugs.  The data also could have been used to identify doctors who were writing suspicious numbers of prescriptions and/or prescriptions in suspicious amounts.  If the Pharmacy Defendants did conduct any audits relative to opioid sales, then they failed to take meaningful action.

244.    As previously described in this Petition, the Pharmacy Defendants' multiple failures to prevent diversion have already resulted in government investigations and other enforcement efforts.  Notwithstanding these enforcement actions, the Pharmacy Defendants did not change their practices.  Rather, they sought to safeguard the opioid market, acting in concert with the Distributor Defendants and Manufacturer Defendants.   On information and belief, each of the Pharmacy Defendants committed and continues to commit serious and flagrant violations of their duties under Kansas law regarding—*inter alia*—recordkeeping and dispensing opioids to Ford County patients.

## M.    Each of the Defendant's Misconduct Has Injured and Continues to Injure Ford County and Its Citizens

245.    In addition to the significant social costs associated with illicit drug use, Defendants' predatory and willful misrepresentations in manufacturing, marketing and/or distributing opioids have imposed significant tax-based economic damages on Ford County, including tax revenue expended incident to providing various public services that Ford County is required to provide to its citizens under Kansas law, including healthcare- and crime-related costs.  These revenues would not have been expended but for the opioid crisis that Defendants willfully and foreseeably caused in Kansas generally and Ford County specifically.

246.    As Defendants' opioids continue to wreak havoc on communities across the country and in Kansas, including Ford County, citizens are becoming incapacitated by and/or dying from opioids. Plaintiff has also been deprived of the benefits these citizens would have conferred to their community but for Defendants' wrongful conduct.  Ford County has lost both the productivity of its citizens who have been hospitalized, incarcerated, killed, incapacitated or otherwise impaired by

opioids as a result of Defendants' deception described in this Petition, including the collection of property and/or sales taxes these citizens would have paid had Defendants simply told the truth about the risks and benefits of opioids for the long-term treatment of chronic pain.

### 1.    Tax Revenue Expended—Healthcare-Related Costs

247.    Today, prescription opioids are a leading cause of drug poisoning deaths in Kansas. The Kansas Department of Health and Environment reports that between 2005 and 2016, between 70 and 120 deaths from prescription opioid poisoning occurred in Kansas each year.[39]

248.    While Defendants reaped billions of dollars in profits from their deceptive conduct, Ford County suffered—and continues to suffer—irreparable damage in the form of increased healthcare-related costs, which Kansas law requires that Ford County pay to protect the health and safety of its citizens.  Ford County would not have incurred these costs had Defendants not concealed the true dangers (and misrepresented the true benefits) of the relevant opioids.

249.    In particular, each of the Defendants has directly and proximately caused Ford County to divert precious tax dollars and local resources from its general and special revenue funds, in order to address its citizens' ever-increasing need for government-funded, opioid-related health services, including: (a) hospital, clinic and emergency medical services; and (b) public health services—*e.g.*, environmental health,  immunizations, Women, Infant, and Children (WIC), etc. These services are provided and arranged by the Ford County Health Department (the "Health Department"), which depends on the general and special revenues of Ford County in order to meet the needs of the County's citizens.  Moreover, as a direct and proximate result of the Defendants' misdeeds as described in this Petition, Ford County has been forced to make increasingly large expenditures  related to public health including funding the Ford County Health Department, health clinics, mental health clinics, and other social service grants.

---

[39] Kansas Department of Health and Environment, *The Opioid Crisis – National and State Perspectives*,
http://www.kstrauma.org/presentations/Trauma_Presentation_Lakin_10.10.18_Updated_III.pdf.

(a)     **Emergency Medical Treatment—Opioid-Related Emergencies**

250.     In 2014, the opioid-related inpatient stay rate in the State of Kansas was 104.3 per 100,000 population.[40] Between 2009 to 2014, Kansas saw a 11.4% increase in opioid-related-emergency department visits resulting in a rate of 81.8 per 100,000 population.[41] Opioids have a significant impact upon Kansas's medical care system due to the volume of encounters involving opioids, and the costs of these encounters. While the full economic burden of opioids upon the healthcare system is difficult to precisely calculate, a reasonable measure may be derived using hospital reported charges adjusted using national cost to charges ratios provided by the Hospital Industry Data Institute. Using this approach, in 2017 the costs of opioid-related spending, be it opioid use disorder or overdose death, was 1.4% of Kansas' GDP or approximately $2.2 billion.[42] From 2005 to 2016, over 90 deaths were recorded due to opioid overdoses.[43] This constitutes 42% of all drug overdose deaths in Ford County during that period of time.

251.     The 10-Year Annual Average Age Adjusted Mortality Rate per 100,00 Population for Ford County from 2009-2018 was 4.8 per 100,000 citizens.[44] The actual rate is likely much higher in that many drug poisoning death certificates in Ford County do not specify the drug involved. As

---

[40] Agency for Healthcare Research and Quality, *Opioid-Related Inpatient Stays and Emergency Departments Visits by State, 2009-2014*, fig. 2 (2017), https://www.hcup-us.ahrq.gov/reports/statbriefs/sb219-Opioid-Hospital-Stays-ED-Visits-by-State.jsp.

[41] *Id.*, fig. 4 & 5.

[42] Lily Lieberman, *Missouri's costs from opioid crisis exceed $14B*, Kansas City Business Journal (Mar. 28, 2019), https://www.bizjournals.com/kansascity/news/2019/03/28/missouri-s-costs-from-opioid-crisis-exceed-14b.html.

[43] Kansas Department of Health and Environment, *5-year Cumulative Count of Drug Poisoning Deaths for Selected Drugs Among Poisoning Deaths by County, 2005-2009 & 2012-2016* (2017), http://www.preventoverdoseks.org/download/County_Level_Drug_Overdose_Deaths_2005-2009.pdf.

[44] Data reported to the Kansas Office of Vital Statistics: https://public.tableau.com/profile/prevent.overdose.kansas#!/vizhome/MortalityDashboardV5_6/MortalityStory.

utilization of government-funded, opioid-related emergency medical services ("EMS") has increased in Ford County, Plaintiff has made—and continues to make—enormous contributions to provide its citizens with these services.

252.    On information and belief, the incidence of opioid-related hospitalizations in Ford County—which can be tracked by various medical billing and documentation codes, such as the Healthcare Common Procedure Coding System ("HCPCS") and the American Medical Association's Current Procedural Terminology (CPT), including National Drug Codes (NDCs) and International Classification of Diseases ("ICD") codes—similarly increased during the relevant period.

253.    As the number of opioid-related hospital encounters in Ford County has ballooned, the costs of treatment and supplies have also increased.  This increase has strained—and continues to strain—Plaintiff's coffers, which provide the financial resources needed to respond appropriately to an increasingly large demand for opioid-related emergency medical services in Ford County including costs for furnishing necessary supplies such as providing Narcan and Naloxone, specialized training, and an increase in the number of public safety staff such as law enforcement officers, firefighters, emergency medical technicians, 911 dispatchers, jailers, and emergency management.

254.    At the same time, the costs of providing emergency medical services in opioid emergencies have likewise increased.

(b)    **County Tax Expenditures For Public Health Department Services**

255.    As a direct, proximate result of the Defendants' misdeeds as described in this Petition, the County's allocations to the Health Department —which, *inter alia*, protects the health and safety of the citizens of Ford County by providing and arranging for health and social services—have increased significantly over the arc of the opioid epidemic in Ford County.

### 2.      Tax Revenue Expended—Crime-Related Costs

256.    In addition to imposing on Plaintiff significantly higher healthcare-related costs, Defendants' scheme has also damaged Plaintiff in the form of increased criminal justice costs, including those associated with opioid-related arrests, investigations and other local services provided by the sheriff's office.  Funds necessary to maintain the day-to-day operating expenses and equipment for these programs come from Plaintiff's general fund.  Plaintiff's opioid-related tax expenditures in the criminal justice context are substantial.

257.    Ford County has made increasingly large allocations to the following law enforcement efforts, most of which were spent in direct response to the damage that the Defendants caused and continue to cause in Ford County, including to: (a) the sheriff; (b) drug investigations and diversion; (c) intensive supervision and probation; (d) correction services; and (e) court costs.

#### (a)      Ford County Sheriff's Office

258.    While the County has expended significant funds to abate the opioid epidemic through increased investment in Ford County Sheriff's Office, the epidemic—ignited and continually fueled by Defendants' ongoing misconduct—remains a constant threat to the health and safety of Ford County's citizens.

#### (b)      Opioid-Related Investigations—Narcotics and Special Investigations Unit

259.    The Ford County Sheriff's Office, through its Narcotics and Special Investigations Unit , investigates felony and misdemeanor crimes occurring in Ford County.  Deputies assigned to the Narcotics Unit work closely with other area law enforcement agencies to identify, investigate, arrest, and prosecute illegal drug users, dealers, and traffickers in Ford County.  Ford County has suffered and continues to suffer sizeable expenditures to finance drug diversion and investigations.

#### (c)      Supervision and Probation

260.    The County expends substantial funds to finance supervision and probation for adults

and juveniles including through its Sante Fe Community Corrections program that provides an Adult Intensive Supervision Program and Juvenile Services, that includes a Juvenile Services Reporting center that provides intensive supervision for juvenile offenders to shore up supervision that Court Services cannot provide.  In conjunction with their case management and probation supervision, the Department of Community Corrections offers programs for drugs and alcohol, behavioral health, life skills, and a positive pathways program.

(d)     **Correction Services**

261.    Increases in jail and correctional services costs may also be attributed to Ford County's efforts to abate the ongoing public nuisance that the Defendants created and exacerbated in Ford County.  The Ford County budget for detention and related costs, e.g., sheriff's costs and juvenile detention costs, reflects a year over year increase.[45]

262.    Ford County operates a correctional facility where it holds adults and juveniles on criminal charges, probation violations, parole violations, or any combination thereof.  When Ford County holds inmates and juveniles, Ford County is obligated to ensure those being held receive proper medical attention.  While Kansas law authorizes Ford County to assess this medical attention and the associated costs to inmates, including the families of juveniles.  These individuals are often indigent and unable to reimburse Ford County for the medical costs expended.  This results in Ford County and its citizens not only being obligated to cover the cost of boarding adults and juveniles pending disposition of their criminal or juvenile matters, but the medical costs associated with housing these individuals.

(e)     **Court Costs**

263.    As the Defendants' misconduct has continually frustrated the County's efforts to protect the health and safety of its citizens, the County has allocated and continues to allocate

---

[45] Ford County, Kansas FY2020 Budget, https://admin.ks.gov/docs/default-source/municipal-services/budgets/2020-budgets/ford-county/1-ford-county.pdf?sfvrsn=9e5684c7_2

substantial sums to finance the operation of the court system in Ford County.

### (f)      Opioid-Related Arrests and Police Protection

264.    The effects of Defendants' deceptive marketing and distribution scheme has further impacted Plaintiff by creating various public nuisances—including public health and safety hazards—which Plaintiff is obligated to abate.  Plaintiff has dedicated substantial tax dollars to maintain the public safety and mitigate the incidence of drug and property crimes.  Many of these drug and property crimes are committed by opioid addicts who are both actively looking to feed their addictions and suffering from serious medical and/or physical conditions typically associated with opioid abuse, such as Hepatitis B and C, HIV, sexually transmitted diseases and methicillin-resistant staphylococcus aureus ("MRSA").

265.    From 2000 to 2018, there were many recorded opioid overdose cases in Ford County, each of which required the dedicated time of several law enforcement officers to perform various tasks, including—but not limited to—investigations, arrests, bookings, report writing, evidence impounding, scene security and follow up time.  During the same time period, Ford County law enforcement agencies made many arrests for drug-related charges, including for possession and/or sale of opioids and opioid-related paraphernalia.

266.    In abating the opioid nuisance to protect the health and safety of the citizens of Ford County, Plaintiff has suffered pecuniary damages, proximately caused by Defendants' misrepresentations and omissions of material fact.

### 3.      Tax Revenue Forgone

267.    Tax revenue forgone is a consequence of incapacitation.  The principal events associated with incapacitation include specialty treatment, hospitalization, incarceration and death. As a result of such incapacitation, the citizens of Ford County who became addicted to Defendants' opioids are unable to work or contribute to the financial health of Ford County.

### (a)      Hospitalization

268.    Patients who are hospitalized in connection with opioid-related emergencies are likewise unable to contribute to the financial health of Ford County with their labor or through the payment of taxes.  Moreover, according to a 2018 report published by DHHS, opioid-related hospital stays were consistently longer than those attributable to both hallucinogens and stimulants, including cocaine and methamphetamine.[46]  Longer hospital stays are usually more expensive and lead to larger losses of productivity for the hospitalized patient. Even if patients survive the immediate pre-hospital event and are successfully stabilized at, and discharged from, the treating hospital, these patients are frequently referred to specialty treatment facilities in Ford County and continue to be incapacitated by their addictions.

### (b)    Death

269.    According to government estimates, some 50,000 Americans died from an opioid overdose in 2016—*i.e.*, 137 people per day, and roughly one person every 12 minutes.[47]  The emotional devastation caused by Defendants' despicable actions is impossible to quantify.  However, as described above, the purely economic consequences of the opioid epidemic can and have been successfully tracked in terms of lives, lost productivity, healthcare, criminal justice and other costs.  Accordingly, in 2017 President Donald Trump's Council of Economic Advisers estimated that the economic consequences  of the opioid drug epidemic cost the United States $504 billion in 2015 alone, prompting the President to declare the opioid crisis a nationwide public health emergency.

270.    Plaintiff has also been substantially damaged by the opioid crisis.  From 2012 to 2016, there were approximately 1,583 drug poisoning deaths in Kansas.[48]  Almost 85% of those

---

[46]  Laura Radel, *Substance Use, the Opioid Epidemic, and the Child Welfare System: Key Findings from a Mixed Methods Study*, U.S. Dept. of Health and Human Services, Note 78 at p. 4 (Mar.                                    7,                                    2018), https://aspe.hhs.gov/system/files/pdf/258836/SubstanceUseChildWelfareOverview.pdf.

[47]  Money.com, *Here's What I Would Cost to Fix the Opioid Crisis, According to 5 Experts* (Nov. 27, 2017), http://money.com/money/5032445/cost-fix-opioid-crisis/.

[48]  Kansas Prescription Drug and Opioid Misuse and Overdose Strategic Plan (Jul. 2018), p.

deaths involved either a pharmaceutical opioid (e.g., oxycodone, hydrocodone) or other controlled or illicit substance, with opioid overdoses accounting for a considerable number of Kansas' drug poisoning deaths.[49]  Specifically, over 37% of drug poisoning deaths during that period were solely due to pharmaceutical opioid misuse and does not take into account other forms of opioids such as heroin or fentanyl.[50]  In 2016, there were 310 drug poisoning deaths in Kansas with 104 of those deaths attributed to natural or semi-synthetic opioids and 36 deaths attributed to heroin.[51]  In 2017, there were 11.8 drug overdose deaths per 100,000 persons in Kansas, with the majority of those deaths attributed to opioid use.  Many Ford County citizens died in recent years from opioid-related causes and they would not have died but for the Defendants' misconduct as described in this Petition.

## WAIVER OF CERTAIN CLAIMS FOR RELIEF

271.    Ford County expressly disclaims and waives any and all right to recovery, whether financial, injunctive, or equitable, relating to or arising out of the distribution by any person of any product, or the provision of any service, pursuant to McKesson's Pharmaceutical Prime Vendor Contract ("PPV Contract") with the United States Department of Veteran Affairs.  Specifically, Plaintiff expressly disclaims and waives any and all right to recover against any of the Distributor Defendants under the terms and conditions of any PPV Contract or any similar contract.

272.    Ford County further commits that it will not, in any forum, rely on or raise the PPV Contract in connection with its allegations and/or prosecution in this matter.

273.    Ford County agrees that should Defendants present evidence sufficient for the trier of

---

7,
http://www.preventoverdoseks.org/download/Kansas_Prescription_Drug_and_Opioid_Misuse_and_Overdose_Strategic_Plan.pdf

[49]  *Id.*

[50]  *Id.*

[51]  *Id.*

fact to determine that Plaintiff's injuries were caused, in whole or in part, by the distribution of products or provision of services through the PPV, Defendants are entitled to a reduction of their liability proportionately by the extent to which the trier of fact determines that any injury to Plaintiff was caused by goods or products distributed and/or services provided through the PPV.

## V.   CAUSES OF ACTION

### COUNT I

### PUBLIC NUISANCE

### Violations of K.S.A. 21-6204 and 22-3901(g)

### (Against All Defendants)

274.    Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

275.    Public nuisance, also known as common nuisance, is an inconvenience or troublesome offense that annoys the whole community in general.  *State v. Barron*, 15 P.2d 456, 457 (Kan. 1932).  In a private action for public nuisance, the plaintiff must show damages peculiar to themselves aside from those sustained by the public at large.  *Culwell v. Abbott Const. Co.*, 506 P.2d 1191, 1196 (Kan. 1973) (citing *School Dist. No. 1, Clay Cnty v. Neil*, 14 P. 253, 254 (Kan. 1887).

276.    Each Defendant is liable for public nuisance because each Defendant's conduct described herein has caused an unreasonable and substantial interference with a right common to the general public, which is the proximate cause of, and/or substantial factor leading to, Plaintiff's harm, inconvenience, or damage.

277.    All Defendants, individually and acting through their employees and agents, have created and continue to perpetuate and maintain the public nuisance to the citizens of Ford County through the massive sale and distribution of millions of doses of highly addictive and commonly abused prescription opioids.  By oversupplying the community with highly addictive drugs and

96

facilitating their diversion for illicit purposes, in contravention of Kansas law, each Defendant has injuriously affected rights common to the general public and undermined the public health, public safety, public peace, public comfort, and public convenience of the residents of Ford County.  The public nuisance caused by Defendants' acts and omissions has caused substantial annoyance, inconvenience, and injury to the public.

278.    Defendants misrepresented the safety and effectiveness of opioids for the treatment of chronic pain, directly, through their control of third parties, and by acting in concert with third parties.

279.    Defendants' conduct includes the failure to put in place effective controls and procedures to guard against theft and diversion of opioids; to adequately design and operate a system to disclose suspicious orders of opioids; and to report suspicious orders when suspected or discovered.

280.    Defendants also enabled and/or failed to prevent the illegal diversion of opioids into the black market, including through pill mills and other dealers in Ford County, with actual knowledge, intent, and/or reckless or negligent disregard that such pills would be illegally diverted and abused.

281.    By failing to maintain a closed distribution system that guards against diversion of highly addictive drugs for illicit purposes, Defendants injuriously affected rights common to the general public, specifically including public health, public safety, public peace, public comfort, and public convenience.

282.    Pursuant to K.S.A. 21-6204(a), knowingly causing or permitting a condition to exist which injures or endangers the public health, safety, or welfare constitutes a nuisance.  Further, pursuant to K.S.A. 22-3901(g), the violation of any law regulating a controlled substance is a common nuisance.  Maintenance of such a nuisance is also proscribed by Kansas law.  *See* K.S.A. 22-3905(a).

97

283.    Through the acts described herein, Defendants intentionally, knowingly, and/or unlawfully created a public/common nuisance.

284.    The citizens of Plaintiff's community have a common right to be free from conduct that unreasonably jeopardizes the public health, welfare, and safety, and to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property.

285.    Defendants intentionally, knowingly, unlawfully, and recklessly manufactured, marketed, distributed, and sold prescription opioids that Defendants knew, or reasonably should have known, would be diverted, causing widespread distribution of highly addictive prescription opioids in and/or to Plaintiff's community, resulting in addiction and abuse, an elevated level of crime, death, and injuries to the citizens of Plaintiff's community, a higher level of fear, discomfort, and inconvenience to the citizens of Plaintiff's community, and direct costs to Plaintiff's community.

286.    Defendants unlawfully, knowingly, and/or intentionally caused and permitted highly addictive drugs under their control to be diverted such as to injure the Plaintiff's community and its citizens.

287.    Defendants unlawfully, knowingly, and/or intentionally distributed opioids or caused opioids to be distributed without maintaining effective controls against diversion.  Defendants' failures in this regard include Defendants' failure to effectively monitor for suspicious orders, report suspicious orders, and/or stop shipment of suspicious orders.  Such conduct was illegal.

288.    Defendants' actions have been of a continuing nature and have produced a significant and continuing effect upon the public's rights, including the public's right to health and safety.  The opioids illegally distributed and possessed in the Plaintiff's community have and will be diverted, leading to continued abuse, addiction, crime, and public health costs.

289.    Defendants' actions have caused or substantially contributed to opioids becoming widely available for use for non-medicinal purposes.  Because of the Distributor Defendants' unique position within the distribution system, the close relationship between the Distributor Defendants to

the Manufacturer Defendants, and doctors such as the Prescriber Defendant, and the interchange of information and strategy between all Defendants, opioid use has become so widespread and, but for Defendants' actions, and each of them, the enormous public health hazard of prescription opioid and heroin overuse, abuse, and addiction would have been averted, or would have been much less severe.

290.   Defendants had knowledge that opioids have a high incidence of diversion.  Still, Defendants recklessly and negligently filled suspicious orders of opioids, failed to report suspicious orders of opioids, and failed to halt or refuse suspicious orders of opioids.

291.   Defendants acted recklessly and negligently in failing to maintain effective controls against diversion.  Defendants acted intentionally and unlawfully in over-distributing opioids with the knowledge that they were not to be used for any legitimate medical purpose.  Defendants acted with actual malice and/or a conscious disregard for the rights and safety of Plaintiff's community, as their actions had a substantial probability of creating substantial public harm.

292.   Defendants' acts and omissions, as described in this Petition, have caused or contributed to the public nuisance in Plaintiff's community which must be abated.

293.   The acts and omissions occurred in Ford County and caused harm in Ford County. Defendants intended for the citizens of Ford County, including its healthcare providers and patients, to rely on the misrepresentations, fraud, and deception.

294.   The effects of Defendants' conduct are not slight or fleeting.  Indeed, Defendants' unlawful conduct has so severely impacted public health on every geographic and demographic level that the public nuisance perpetuated by Defendants' conduct is commonly referred to as a "crisis" or an "epidemic."  It has cost people their lives and livelihoods, and otherwise caused serious injuries, and a severe disruption of public peace, order, and safety.

295.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff expended public money to mitigate the damage caused by opioids in the community and repair the injuries described in this Petition.

296.    Plaintiff has suffered unique damages as a result of the public nuisance created by Defendants due to Plaintiff's unique position as a county within the State of Kansas.  This harm includes, but is not limited to:

(a)    increased healthcare costs;

(b)    increased incidence of Neonatal Abstinence Syndrome ("NAS") and costs associated with resulting need for hospitalization and care of NAS affected infants;

(c)    increased expenditure on emergency healthcare and medical services;

(d)    lost value of productive and healthy community members and County employees;

(e)    increased need for rehabilitative services, public welfare and service agencies, and drug abuse education and treatment offered by the County;

(f)    increased availability of drugs for criminal use and resulting increase in criminal occurrences;

(g)    increased incidence of heroin addicts who progressed from opioids to the use of heroin;

(h)    increased number of addicted community members and resulting strain on law enforcement due to responses to overdoses, responses to domestic dispute calls, and responses to criminal occurrences;

(i)    general interference with the enjoyment of life in Plaintiff's community;

(j)    increased expenditure on law enforcement, prosecutors, and prosecutions, court and court personnel, fees from correctional facilities, probation, and parole; and

(k)    increased expenditure on public utilities, nuisance abatement, property damage repair, and code enforcement.

297.    In addition to the loss of tax revenue expended and continuing to be expended by Plaintiff to mitigate the damage caused by Defendants' wrongful conduct as alleged herein, Plaintiff

has also been damaged in the form of tax revenue forgone as a result of incapacitation.  As a result of such incapacitation, those citizens of Ford County who became addicted to Defendants' opioids are unable to work or contribute to Plaintiff's financial health through sales, property and other taxes.

298.    Plaintiff seeks to recover damages for the economic losses (direct, incidental, or consequential pecuniary losses) it has sustained as a result of Defendants' fraudulent activity and fraudulent misrepresentations.

299.    Plaintiff seeks all legal and equitable relief as allowed by law, other than such damages disavowed herein, including injunctive relief, restitution, disgorgement of profits, compensatory damages, and any other damages which may be recovered herein.

300.    The total amount of damages sought by Plaintiff under this count is in excess of $75,000.00.

## COUNT II

### NEGLIGENCE

### (Against All Defendants)

301.    Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

302.    Under Kansas law, a cause of action arises for negligence when a defendant owes a duty to a plaintiff, breaches that duty, and proximately causes a resulting injury. Furthermore, negligence is the lack of reasonable care and arises due to the failure to do something a reasonable person would do, or doing something that a reasonable person would not do, under the circumstances.

303.    In addition, each Defendant owed a duty to make a reasonable disclosure of the nature and probable consequences and dangers of the prescription of opioids, including but not limited to the potential for misuse, abuse, and over-prescription of opioids, thus preventing intelligent informed

consent to the prescription of opioids.

304.    Each Defendant owed a duty of care to Ford County, including but not limited to taking reasonable steps, and using reasonable care, to prevent the misuse, abuse, and over-prescription of opioids.

305.    In violation of this duty, Defendants failed to take reasonable steps, or use reasonable care, to prevent the misuse, abuse, and over-prescription of opioids by misrepresenting the risks and benefits associated with opioids and by distributing and prescribing dangerous quantities of opioids.

306.    As set forth above, the Manufacturer Defendants' misrepresentations include falsely claiming that the risk of opioid addiction was low, falsely instructing doctors and patients that prescribing more opioids was appropriate when patients presented symptoms of addiction, falsely claiming that risk-mitigation strategies could safely address concerns about addiction, falsely claiming that doctors and patients could increase opioid doses without added risk, and falsely claiming that long-term opioid use could actually restore function and improve a patient's quality of life without posing significant additional risks.   Each of these misrepresentations made by Defendants violated the duty of care, and lacked reasonable care, to Ford County.

307.     The Distributor Defendants knew of the serious problem posed by prescription opioid diversion and were under a legal obligation to take reasonable steps and exercise reasonable care to prevent diversion.

308.    The Distributor Defendants negligently distributed suspiciously large quantities of potent opioids and failed to report such distributions.  As such, the Distributor Defendants violated their duty of care, and failed to exercise reasonable care, by moving these highly addictive products into Ford County in such quantities, facilitating misuse and abuse of opioids.

309.    Plaintiff is not asserting a cause of action under the federal Controlled Substances Act or other federal controlled substances laws, including—but not limited to—the federal laws referenced above.

310.     Defendants are liable for negligence in that the Defendants violated applicable Kansas laws, statutes, and regulations regarding in the manner in which they advertised, marketed, sold, and/or distributed opioid products.  Plaintiff is a member of the class meant to be protected by the laws, statutes, and regulations which Defendants violated, and Plaintiff's injuries were caused by the violations.

311.     As a direct and proximate cause of Defendants' unreasonable and negligent conduct, Ford County has suffered and will continue to suffer harm, and is entitled to damages in an amount to be determined at trial which is in excess of $75,000.00.

## COUNT III

### NEGLIGENCE PER SE

### (Against All Defendants)

312.     Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

313.     Defendants' actions violate Kansas statutes designed to protect the public from harm. In particular, Defendants' actions violate the Kansas Uniform Controlled Substances Act, Kan. Stat. § 65-4101 *et seq*. (the "KUCSA") and Kansas requirements regarding the dispensing of medication under the Pharmacy Act of the State of Kansas contained in Chapter 65, Article 16 of the Kansas Statutes Annotated ("Kansas Pharmacy Act").

314.     K.S.A. 65-4121 requires all registrants—which includes manufacturers and distributors—under the KUCSA to maintain records in accordance with Kansas's regulations on the dispensing of medication.

315.     K.S.A. 65-4122 states that certain controlled substances shall be distributed by a registrant to another registrant only pursuant to an authorized order form.

316.     K.S.A. 65-4127c makes it unlawful for any person required to comply with the

103

provisions of the KUCSA to violate said provisions.

317.    Pursuant to applicable provisions of the Kansas Pharmacy Act, the Kansas State Board of Pharmacy ("Pharmacy Board") has duly promulgated rules and regulations which impose specific requirements for dispensing medication.

318.    K.A.R. 68-14-3 requires every wholesale distributor doing business in Kansas who engages in wholesale distribution of prescription-only drugs to be registered with the Pharmacy Board before engaging in wholesale distributions of prescription-only drugs.

319.    K.A.R. 68-14-7(f) requires wholesale distributors to establish and maintain inventories and records of all transactions regarding the receipt and distribution or other disposition of prescription-only drugs.

320.    K.A.R. 68-14-7(g) requires wholesale distributors to establish written policies and procedure for identifying, recording, and reporting losses or thefts and for correcting errors and inaccuracies in inventory.

321.    K.A.R. § 68-20-15b requires written notification to the Pharmacy Board within one day of any suspected diversion, theft or loss of any controlled substance and, upon completion, the Pharmacy Board must be provided with a copy of completed regulator forms.

322.    Defendants' acts regarding the manufacture, distribution, and prescribing of opioids described in detail above violated these laws.  Ford County is within the class which these laws were designed to protect, and the harm to Plaintiff is of the nature the laws were designed to prevent. Consequently, Defendants' violations constitute negligent acts *per se*.

323.    As a direct and proximate cause of Defendants' unreasonable and negligent conduct, Ford County has suffered and will continue to suffer harm, and is entitled to damages in an amount to be determined at trial which is in excess of $75,000.00.

## COUNT IV

## FRAUD

**(Against Manufacturer Defendants)**

324.    Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

325.    At all relevant times mentioned herein, Manufacturer Defendants made many false and untrue representations to healthcare providers, patients, and the public in their advertising which, as set forth above, was misbranded, misleading, and contrary to the prescription label and said representations were made with the intent that said representations would constitute the substantial reason as to influence the prescription and use of opioids.

326.    Manufacturer Defendants' false and untrue representations include, but are not limited to, claiming that the risk of opioid addiction was low, instructing doctors and patients that prescribing more opioids was appropriate when patients presented symptoms of addiction, claiming that risk-mitigation strategies could safely address concerns about addiction, claiming that doctors and patients could increase opioid doses without added risk, and claiming that long-term opioid use could actually restore function and improve a patient's quality of life without posing significant additional risks.

327.    The representations made by the Manufacturer Defendants were known to be false and untrue when made and have been presented as facts rather than the mere opinions of or puffery of the Manufacturer Defendants.

328.    Manufacturer Defendants intentionally made the representations to induce healthcare providers to prescribe and patients to request and use opioids knowing that the increases in prescriptions and usage would result in exponentially greater profits for the Manufacturer Defendants.

329.    Healthcare providers, patients, and the public relied upon the representations made by Manufacturer Defendants, and it was reasonable for them to do so as the representations were made

105

in such a manner as to induce reliance and the belief that such representations are true or established facts. Healthcare providers, patients, and the public acted upon those representations through the prescription, request, and use of opioids in Ford County.

330.    Based on Manufacturer Defendants' false and untrue misrepresentations that were reasonably relied upon, Ford County has sustained and will continue to sustain damages and is entitled to damages in an amount in excess of $75,000.00.

<div align="center">

**COUNT V**

**FRAUD THROUGH SILENCE**

**(Against Manufacturer Defendants)**

</div>

331.    Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

332.    At all relevant times, the Manufacturer Defendants were aware of the risk of addiction from the use of opioid products and the subsequent affects from the misuse, abuse and over-prescription of opioids, especially those opioid products manufactured and distributed by Manufacturer Defendants.  Manufacturer Defendants were in the possession of all relevant information concerning the risk of addiction from the use of its opioid products, and it was not possible through the exercise of reasonable diligence for any third-party including healthcare providers, patients, the public, or Plaintiff to obtain that information.

333.    The Manufacturer Defendants had a duty and obligation to inform healthcare providers, patients and the public of the risk of addiction from the use of opioid products, and the subsequent effects from the misuse, abuse and over-prescription of opioids, especially those opioid products manufactured and distributed by Manufacturer Defendants.

334.    The Manufacturer Defendants intentionally withheld the true risks of addiction from the use of opioid products from healthcare providers, patients and the public.  Instead of sharing the

<div align="center">106</div>

true risks, Manufacturer Defendants intentionally misled healthcare providers, patients and the public by minimizing the impacts from the prescription and usage of opioid products and instead provided information that served to nullify, cancel out, and render meaningless any written warnings about addiction, however inadequate, regarding the risk of addiction from the use of opioid products.

335. It was justifiable for healthcare providers, patients, and the public to rely upon communications from Manufacturer Defendants concerning the risks of opioid usage, including addiction, since Manufacturer Defendants were in the possession of all relevant information.

336. Based on Manufacturer Defendants' failure to communicate the true risks associated with the use of opioid products, Ford County has sustained and will continue to sustain damages and is entitled to damages in an amount to be determined at trial which is in excess of $75,000.00.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

### (Against Manufacturer Defendants)

337. Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

338. At all relevant times mentioned herein, Manufacturer Defendants made many misrepresentations to healthcare providers, patients, and the public in their advertising which, as described in this Petition, was misbranded, misleading, and contrary to the prescription label.

339. Manufacturer Defendants are liable for negligent misrepresentation because they supplied information in the course of their business to healthcare providers and patients, including those in Ford County. Because the representatives referred to in this Petition were employed or were supplied by Manufacturer Defendants, they had a duty to exercise reasonable and ordinary care and skill, in accordance with applicable standards of conduct, to adequately warn healthcare providers about the risks of addiction from the use of opioid products and to not over-promote and over-market

opioid products so as to nullify, cancel out, and render meaningless any written warnings about addiction, however inadequate, regarding the risk of addiction from the use of opioid products.

340.    Manufacturer Defendants intentionally breached their duty to exercise reasonable and ordinary care by negligently misrepresenting the true risks of addiction from the use of opioid products to healthcare providers, patients and the public.  Moreover, Manufacturer Defendants have nullified, cancelled out or otherwise rendered meaningless any warnings in the labels about any addiction risk as an intended result of marketing, sales and promotional efforts designed to stimulate the use of opioid products for patients who should not have been using those drugs, or should have used them only as a last resort after pursuing other alternatives, including less addictive drugs.

341.    As a direct and proximate cause of Manufacturer Defendants' unreasonable and negligent conduct, Ford County has suffered and will continue to suffer harm, and is entitled to damages in an amount in excess of $75,000.00.

## COUNT VII

## NEGLIGENT FAILURE TO WARN

### (Against Manufacturer Defendants)

342.    Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this Cause of Action.

343.    At all relevant times, Manufacturer Defendants had a duty to exercise reasonable and ordinary care and skill and in accordance with applicable standards of conduct in adequately warning healthcare providers about the dangerous risk of addiction from the use of opioid products.

344.    Manufacturer Defendants also owed a duty to make a reasonable disclosure of the nature and probable consequences and dangers of the prescription of opioids, including but not limited to the potential for misuse, abuse, and over-prescription of opioids, and breach of this duty prevented intelligent informed consent to the prescription and use of opioids.

345.     Although Manufacturer Defendants did provide written warnings on opioid product containers in compliance with appropriate regulatory standards, Manufacturer Defendants' actions in over-promoting, over-marketing, and minimizing the risk of addiction served to nullify, cancel out and render meaningless those written warnings about the risk of addiction from the use of such opioid products.

346.     Manufacturer Defendants did not act in the manner of a reasonably prudent manufacturer and seller in that Manufacturer Defendants could and should have taken additional precautions but instead placed their own financial interests over and above that of the health, safety and welfare of patients and the public.

347.     Manufacturer Defendants breached their duty to exercise reasonable and ordinary care by affirmatively misleading and subsequently failing to warn healthcare providers about the true risk of addiction from the use of opioid products.  Moreover, Manufacturer Defendants have nullified, cancelled out and otherwise rendered meaningless any warnings in the labels about any addiction risk  as an intended result of  marketing, sales and promotional efforts designed to stimulate the use of opioid products for patients who should not have been using those drugs, or should have used them only as a last resort after pursuing other alternatives, including less addictive drugs.

348.     As a direct and proximate cause of Manufacturer Defendants' unreasonable and negligent conduct, Ford County has suffered and will continue to suffer harm, and is entitled to damages in an amount in excess of $75,000.00.

## COUNT VIII

### UNJUST ENRICHMENT

### (Against All Defendants)

349.     Ford County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Petition for Damages as though fully alleged in this

Cause of Action.

350.    A claim for unjust enrichment in Kansas requires the defendant to have received a benefit from another with an appreciation or knowledge of the benefit received by the defendant, and the acceptance of the benefit by the defendant under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

351.    Each Defendant herein was required to take reasonable steps to prevent the misuse, abuse, and over-prescription of opioids.

352.    Rather than prevent or mitigate or wide proliferation of opioids into Ford County, each Defendant instead chose to place its monetary interests first and each Defendant profited from prescription opioids sold in Ford County.

353.    Each Defendant also failed to maintain effective controls against the unintended and illegal use of the prescription opioids it or he manufactured, distributed, or caused to be prescribed, again choosing instead to place its monetary interests first.

354.    Each Defendant therefore knowingly received and accepted the benefit from the wrongful sale and distribution of prescription opioids to and within Ford County under circumstances which make it inequitable for Defendants to retain such benefit without making payment to Ford County.

355.    Defendants have been unjustly enriched at the expense of Ford County.  As a result, Ford County is entitled to judgment disgorging each Defendant of such benefit in an amount in excess of $75,000.00.

## VI.    **REQUEST FOR RELIEF**

WHEREFORE, Ford County prays for judgment as follows:

1.    An Order declaring that Defendants have created a public nuisance in violation of K.S.A. 22-3901 and other applicable state and common law;

2.    An Order enjoining Defendants from performing any further acts in violation of

K.S.A. 22-3901 and other applicable state law;

3.      An Order mandating that Defendants abate the public nuisance that they have created in Ford County by paying the Board of County Commissioners of the County of Ford, State of Kansas, the monetary sum determined at trial to be reasonably necessary and sufficient to abate such public nuisance;

4.      An Order that Defendants are negligent under Kansas law;

5.      An Order that Defendants engaged in fraud under Kansas law;

6.      An Order that Defendants have been unjustly enriched at the expense of Ford County under Kansas law;

7.      An Order that Ford County is entitled to recover all measures of damages permissible under common law and the statutes identified herein in an amount in excess of $75,000 to be determined at trial;

8.      An Order that judgment be entered against Defendants in favor of Ford County;

9.      Compensatory damages in a sum greater than $75,000 to be determined at trial; and

10.     An Order awarding Plaintiff its taxable costs and such other and further relief as the Court may deem just and appropriate under the circumstances.

Respectfully submitted,


 /s Gary D. White Jr.
Gary D. White Jr.  KS #15103
Dustin L. Van Dyk   KS #23313
Palmer Law Group, L.L.P.
2348 SW Topeka Blvd # 100
Topeka, KS 66611
Tel:      (785) 233-1836
Fax:      (785) 233-3703
Email:    gwhite@jpalmerlaw.com
          dvandyk@jpalmerlaw.com

and

111

Jeffrey H. Reeves (*Pro Hac Vice* to be Filed)
Cheryl Priest Ainsworth (*Pro Hac Vice* to be Filed)
Kevin N. Royer (*Pro Hac Vice* to be Filed)
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Tel: (714) 549-6200
Fax: (714) 549-6201
Email: jjreeves@tocounsel.com
         cainsworth@tocounsel.com
         kroyer@tocounsel.com

Counsel for Plaintiff

## VII.   DEMAND FOR JURY TRIAL

Plaintiff The Board of County Commissioners of the County of Ford, State of Kansas hereby demands a trial by jury on all causes of action, claims, and issues that are properly triable by a jury under the Constitution and laws of the State of Kansas.

 /s/ Gary D. White Jr.
Gary D. White Jr.  KS #15103
Dustin L. Van Dyk   KS #23313

112

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Actavis Inc**

**4601 E Douglas Ave #700**

**Wichita, KS  67218**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Actavis LLC**

**4601 E Douglas Ave #700**

**Wichita, KS  67218**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

**ELECTRONICALLY FILED**
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Actavis Pharma Inc**
**4601 E Douglas Ave #700**
**Wichita, KS  67218**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**


To the above-named Defendant/Respondent:


> **Allergan USA Inc**
> **112 SW 7th Street #3C**
> **Topeka, KS  66603**


You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:


> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611


within 21 days after service of summons on you.


*Michelle Adams*   (SEAL)

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM


**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Amerisourcebergen Corporation**

**112 SW 7th Street #3C**

**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*    SEAL

Clerk of the District Court

Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Amerisourcebergen Drug Corporation**
> **112 SW 7th Street #3C**
> **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*   (SEAL)

Clerk of the District Court

Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Cardinal Health 100 Inc**
**112 SW 7th Street #3C**
**Topeka, KS 66603**

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

        **Cardinal Health 110 LLC**
        **112 SW 7th Street #3C**
        **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

        Gary D White, Jr.
        Palmer Law Group, LLP
        2348 SW Topeka Blvd
        Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*  (SEAL)

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Cardinal Health 122 LLC**
> **112 SW 7th Street #3C**
> **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*  [SEAL]

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Cardinal Health 132 LLC**
**112 SW 7th Street #3C**
**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Cardinal Health 200 Llc**
**112 SW 7th Street #3C**
**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*        (SEAL)

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Cardinal Health 414 LLC**
> **112 SW 7th Street #3C**
> **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*  (SEAL)

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**


To the above-named Defendant/Respondent:


      **Cardinal Health 5 LLC**

      **112 SW 7th Street #3C**

      **Topeka, KS  66603**


You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:


      Gary D White, Jr.

      Palmer Law Group, LLP

      2348 SW Topeka Blvd

      Topeka, KS 66611


within 21 days after service of summons on you.


Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM


**Documents to be served with the Summons:**

Petition for Damages

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Cardinal Health Inc**

**4400 Easton Commons Way #125**

**Columbus, OH  43219**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Cardinal Health Pharmacy Services LLC**

**112 SW 7th Street #3C**

**Topkea, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*

SEAL
DISTRICT COURT
FORD COUNTY, KANSAS

Clerk of the District Court

Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Cephalon Inc**

**3411 Silverside Rd Tatnall #104**

**Wilmington, DE  19810**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*

Clerk of the District Court

Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 01 PM 4:16
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Dillons Compaines**

**2900 SW Wanamaker Drive #204**

**Topeka, KS  66614**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/01/2020 04:23:36 PM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Endo Health Solutions Inc**

**1209 Orange Street**

**Wilmington, DE  19801**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Endo Pharmaceuticals Inc**
>
> **1209 Orange Street**
>
> **Wilmington, DE  19801**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
>
> Palmer Law Group, LLP
>
> 2348 SW Topeka Blvd
>
> Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Hikma Pharmaceuticals USA Inc**

**120 South Central Ave**

**Clayton, MO  63105**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*   (SEAL)

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Janssen Pharmaceutica Inc**
**112 SW 7th Street #3C**
**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Janssen Pharmaceuticals Inc**
**112 SW 7th Street #3C**
**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*    SEAL

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

<u>Ford County Commissioners</u>

vs.

<u>Allergan PLC, et al. et. al.</u>

**SUMMONS**

To the above-named Defendant/Respondent:

**Johnson & Johnson**

**1 Johnson & Johnson Plz**

**Brunswick, NJ  08933**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**John Kapoor**

**6610 N 29th Place**

**Phoenix, AZ  85016**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Kroger Limited Partnership**

**251 Little Falls Drive**

**Wilmington, DE  19808**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Mallinckrodt LLC**

**120 South Central Ave**

**Clayton, MO  63105**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**


To the above-named Defendant/Respondent:


**Mckesson Corporation**

**2900 SW Wanamaker Drive**

**Topeka, KS  66614**


You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:


Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611


within 21 days after service of summons on you.


*Michelle Adams*  (SEAL)

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM


**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Mcqueary Bros Drug Company LLC**
>
> **2900 SW Wanamaker Drive #204**
>
> **Topeka, KS  66614**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
>
> Palmer Law Group, LLP
>
> 2348 SW Topeka Blvd
>
> Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Michael Babich**

**18391 North 97th Place**

**Scottsdale, AZ  85255**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Mylan Institutional Inc**
**208 So Lasalle Street #814**
**Chicago, IL  60604**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Mylan NV**
> **600 N 2nd Street #401**
> **Harrisburg, PA  17101**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*   (SEAL)

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Mylan Pharmaceuticals Inc**
**1627 Quarrier Street**
**Charleston, WV  25311**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Novartis Pharmaceuticals**

**2900 SW Wanamaker Drive #204**

**Topeka, KS  66614**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*                          (SEAL)

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Ortho-Mcneil-Janssen Pharmaceuticals Inc**

**112 SW 7th Street #3C**

**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Par Pharmaceutical Companies**
>
> **28 Liberty Street**
>
> **New York, NY  10005**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
>
> Palmer Law Group, LLP
>
> 2348 SW Topeka Blvd
>
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*    (SEAL)

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Par Pharmaceuticals Inc**
> **28 Liberty Street**
> **New York, NY  10005**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*    (SEAL)

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Specgx LLC**
**120 South Central Ave**
**Clayton, MO  63105**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Teva Pharmaceuticals Usa**

**4601 E Douglas Ave #700**

**Wichita, KS  67218**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*

SEAL

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Walgreen Co**

**2900 SW Wanamaker Drive #204**

**Topeka, KS  66614**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Walmart Inc**
**112 SW 7th Street #3C**
**Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Watson Laboratories Inc**

**Steve Anderson 26814 W Oraibi Dr**

**Buckeye, AZ  85396-7944**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*  (SEAL)

Clerk of the District Court

Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 9:32
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Watson Pharmaceuticals Inc**

**4601 E Douglas Ave #700**

**Wichita, KS  67218**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court
Electronically signed  on 09/02/2020 09:51:57 AM

**Documents to be served with the Summons:**

Petition for Damages

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Walgreens #7817**

**2900 SW Wanamaker Dr #204**

**Topeka, KS  6614**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Gary D White, Jr.

Palmer Law Group, LLP

2348 SW Topeka Blvd

Topeka, KS 66611

within 21 days after service of summons on you.

Clerk of the District Court

Electronically signed  on 09/02/2020 11:56:15 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 11:51
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

> **Walmart #372**
> **112 SW 7th St #3C**
> **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.

*Michelle Adams*     (SEAL)

Clerk of the District Court

Electronically signed  on 09/02/2020 11:56:15 AM

**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 02 AM 11:51
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

Ford County Commissioners

vs.

Allergan PLC, et al. et. al.

**SUMMONS**


To the above-named Defendant/Respondent:

> **Walmart East Lp**
> **112 SW 7th St #3C**
> **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Gary D White, Jr.
> Palmer Law Group, LLP
> 2348 SW Topeka Blvd
> Topeka, KS 66611

within 21 days after service of summons on you.


Clerk of the District Court
Electronically signed  on 09/02/2020 11:56:15 AM


**Documents to be served with the Summons:**

Petition for Damages

ELECTRONICALLY FILED
2020 Sep 16 AM 10:51
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090



**Court:**　　　　Ford County District Court

**Case Number:**　　2020-CV-000090

**Case Title:**　　Ford County Commissioners vs. Allergan PLC, et al.

**Type:**　　　　Summons- Mallinckrodt PLC

SO ORDERED.

*Michelle Adams*

/s/ Michelle Adams, Deputy Clerk

Electronically signed on 2020-09-16 10:51:37     page 1 of 2

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| **BOARD OF COUNTY COMMISSIONERS OF**   ) | |
| **THE COUNTY OF FORD,**   ) | |
| **STATE OF KANSAS**   ) | |
| **Plaintiff,**   ) | |
|   ) | |
| **vs.**   ) | **Case No. 2020 CV 90** |
|   ) | |
| **ALLERGAN, PLC et. al. et. al..**   ) | |
|   ) | |
| **Defendant.**   ) | |
| _____ ) | |

## <u>SUMMONS</u>

TO:    MALLINCKRODT, PLC
          3 Lotus Park
          The Causeway
          Staines-Upon-Thames, Surrey
          TW18
          3AG
          United Kingdom

       You are hereby notified that an action has been commenced against you in this Court. You are required to file your Answer to the Petition with the Court and to serve a copy upon:

       Gary D. White, Jr.
       Dustin L. Van Dyk
       Palmer Law Group, L.L.P
       2348 Topeka Boulevard
       Topeka, Kansas 66611-1286
       Attorneys for Plaintiff

within thirty (30) days of service upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Petition. Any related claim which you may have against the Plaintiff must be stated as a counter claim in your Answer, or you will be barred from making such claim in any other action.

                           CLERK OF THE DISTRICT COURT

ELECTRONICALLY FILED
2020 Sep 16 AM 10:51
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090



**Court:**          Ford County District Court

**Case Number:**    2020-CV-000090

**Case Title:**     Ford County Commissioners vs. Allergan PLC, et al.

**Type:**           Summons- Allergan

SO ORDERED.

*Michelle Adams*

/s/ Michelle Adams, Deputy Clerk

Electronically signed on 2020-09-16 10:51:36    page 1 of 2

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| **BOARD OF COUNTY COMMISSIONERS OF** )<br>**THE COUNTY OF FORD,** )<br>**STATE OF KANSAS** )<br>                              **Plaintiff,** )<br>                                             )<br>  **vs.**                                    )<br>                                             )<br>**ALLERGAN, PLC et. al. et. al..** )<br>                                             )<br>                              **Defendant.** )<br>_____ ) | **Case No. 2020 CV 90** |

## SUMMONS

TO:     ALLERGAN PLC
        Clonshaugh Business &
        Technology Park
        Dublin, D17 E400, Ireland


        You are hereby notified that an action has been commenced against you in this Court.
You are required to file your Answer to the Petition with the Court and to serve a copy upon:

        Gary D. White, Jr.
        Dustin L. Van Dyk
        Palmer Law Group, L.L.P
        2348 Topeka Boulevard
        Topeka, Kansas 66611-1286
        Attorneys for Plaintiff

within thirty (30) days of service upon you.  If you fail to do so, judgment by default will be
taken against you for the relief demanded in the Petition.  Any related claim which you may have
against the Plaintiff must be stated as a counter claim in your Answer, or you will be barred from
making such claim in any other action.

                                        CLERK OF THE DISTRICT COURT

ELECTRONICALLY FILED
2020 Sep 16 AM 10:51
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090



**Court:**          Ford County District Court

**Case Number:**    2020-CV-000090

**Case Title:**     Ford County Commissioners vs. Allergan PLC, et al.

**Type:**           Summons- Teva Pharmaceutical Industries LTD


SO ORDERED.

*/s/ Michelle Adams*

/s/ Michelle Adams, Deputy Clerk


Electronically signed on 2020-09-16 10:51:37    page 1 of 2

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## CIVIL DEPARTMENT

|  |  |
|---|---|
| **BOARD OF COUNTY COMMISSIONERS OF** | **)** |
| **THE COUNTY OF FORD,** | **)** |
| **STATE OF KANSAS** | **)** |
| **Plaintiff,** | **)** |
|  | **)** |
| **vs.** | **)**  **Case No. 2020 CV 90** |
|  | **)** |
| **ALLERGAN, PLC et. al. et. al..** | **)** |
|  | **)** |
| **Defendant.** | **)** |
| _____ | **)** |

## SUMMONS

TO:    TEVA PHARMACEUTICAL INDUSTRIES, LTD
         5 Basel Street
         PO Box 3190
         Petach, Tikva 4951033 Isreal

You are hereby notified that an action has been commenced against you in this Court. You are required to file your Answer to the Petition with the Court and to serve a copy upon:

Gary D. White, Jr.
Dustin L. Van Dyk
Palmer Law Group, L.L.P
2348 Topeka Boulevard
Topeka, Kansas 66611-1286
Attorneys for Plaintiff

within thirty (30) days of service upon you.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Petition.  Any related claim which you may have against the Plaintiff must be stated as a counter claim in your Answer, or you will be barred from making such claim in any other action.

CLERK OF THE DISTRICT COURT

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. | ) ) ) |
| Defendants. | ) ) |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## TEVA PHARMACEUTICALS USA, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1)  _____  **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.


2)  _____  **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.


3)  _____  **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.


4)  _____  **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: <u>**Teva Pharmaceuticals USA, Inc @ 4601 E. Douglas Ave Suite #700, Wichita, KS 67218. See attached signature confirmation page from the United States Post Office.**</u>

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                           defendant at _____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2528 20. Our records indicate that this item was delivered on 09/10/2020 at 09:57 a.m. in WICHITA, KS 67218. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :     **4601 E DOUGLAS AVE**
                          **WICHITA, KS 67218**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:     DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. | ) ) | |
| Defendants. | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## ACTAVIS, INC

I hereby certify that I have not served the Summons with a copy of the Petition to the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

5) _____ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows:

1

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                      defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) __X___ **No Service.**  The above-named defendant was not served.  **Bad address with no forwarding address on file as to Actavis, Inc.**

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS**<br>                    **Plaintiff,**<br><br>    **vs.**<br><br>**ALLERGAN, PLC et. al. et. al..**<br><br>                    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)    **Case No. 2020-CV-000090**<br>)<br>)<br>)<br>)<br>) |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## ACTAVIS, LLC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Actavis LLC @ 4601 E. Douglas Ave Suite #700, Wichita, KS 67218.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                        defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**



# UNITED STATES
# POSTAL SERVICE.

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2527 76. Our records indicate that this item was delivered on 09/10/2020 at 09:57 a.m. in WICHITA, KS 67218. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :     **4601 E DOUGLAS AVE**
                          **WICHITA, KS 67218**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:     DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. | ) ) | |
| Defendants. | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT ACTAVIS PHARMA INC. F/K/A WATSON PHARMA INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: <u>**Actavis Pharma Inc. f/k/a Watson Pharma @ 4601 E. Douglas Ave Suite #700, Wichita, KS 67218.  See attached signature confirmation page from the United States Post Office.**</u>

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                                      defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

<div style="margin-left:40%">

Respectfully Submitted

*[signature]*

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

</div>

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2527 83. Our records indicate that this item was delivered on 09/10/2020 at 09:57 a.m. in WICHITA, KS 67218. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :
**4601 E DOUGLAS AVE**
**WICHITA, KS 67218**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF THE COUNTY OF FORD,** ) | |
| **STATE OF KANSAS** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 2020-CV-000090** |
| ) | |
| **ALLERGAN, PLC et. al. et. al..** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## ALLERGAN USA, INC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1)  \_\_\_\_\_ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2)  \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3)  \_\_\_\_\_ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4)  \_\_\_\_\_ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Allergan USA, Inc. @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                                          defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2527 38. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS<br><br>Plaintiff, )<br><br>vs. )<br><br>ALLERGAN, PLC et. al. et. al..<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 2020-CV-000090<br>)<br>)<br>)<br>)<br>) |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT AMERISOURCEBERGEN CORPORATION

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **AmerisourceBergen Corporation @ 112 SW 7th St, Ste 3C, Topeka, KS 66603. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                            defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**®

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 17. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **Case No. 2020-CV-000090** |
| **ALLERGAN, PLC et. al. et. al..** | ) ) | |
| Defendants. | ) ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## AMERISOURCEBERGEN DRUG CORPORATION

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__  **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Amerissourcebergen Drug Corporation @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____  **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                         defendant at_____.

7) _____  **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____  **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 24. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

**IN THE DISTRICT COURT OF FORD COUNTY, KANSAS**
**SIXTEENTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF FORD,** | ) | |
| **STATE OF KANSAS** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 2020-CV-000090** |
| | ) | |
| **ALLERGAN, PLC et. al. et. al..** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**RETURN ON SERVICE OF SUMMONS OF DEFENDANT**
**CARDINAL HEALTH PHARMACY SERVICES, LLC**

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health Pharmacy Services, LLC @ 112 SW 7th St, Ste 3C, Topeka, KS 66603. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                       defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 54. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

**IN THE DISTRICT COURT OF FORD COUNTY, KANSAS**
**SIXTEENTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF FORD,** | ) | |
| **STATE OF KANSAS** | ) | |
|         **Plaintiff,** | ) | |
| | ) | |
|   **vs.** | ) | **Case No. 2020-CV-000090** |
| | ) | |
| **ALLERGAN, PLC et. al. et. al..** | ) | |
| | ) | |
|         **Defendants.** | ) | |
| | ) | |

<u>**RETURN ON SERVICE OF SUMMONS OF DEFENDANT**</u>
<u>**CARDINAL HEATH, INC.**</u>

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health, Inc. @ 4400 Easton Commons Way Suite #125, Columbus, OH 43219. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                          defendant at _____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



# UNITED STATES
# POSTAL SERVICE

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 62. Our records indicate that this item was delivered on 09/10/2020 at 10:59 a.m. in COLUMBUS, OH 43224. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:     DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

**IN THE DISTRICT COURT OF FORD COUNTY, KANSAS**
**SIXTEENTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF FORD,** | ) | |
| **STATE OF KANSAS** | ) | |
|        **Plaintiff,** | ) | |
| | ) | |
|   **vs.** | ) | **Case No. 2020-CV-000090** |
| | ) | |
| **ALLERGAN, PLC et. al. et. al..** | ) | |
| | ) | |
|        **Defendants.** | ) | |
| | ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CARDINAL HEALTH 100, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: <u>**Cardinal Health 100, Inc @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**</u>

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                                                defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

<div align="right">

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

</div>

2


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 86. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS<br><br>Plaintiff, | ) ) ) ) ) | |
| vs. | ) | Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. | ) ) ) | |
| Defendants. | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CARDINAL HEALTH 110, LLC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health 110, LLC @ 112 SW 7th St, Ste 3C, Topeka, KS 66603. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                       defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 93. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:     DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF THE COUNTY OF FORD,** ) | |
| **STATE OF KANSAS** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 2020-CV-000090** |
| ) | |
| **ALLERGAN, PLC et. al. et. al..** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CARDINAL HEALTH 122, LLC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health 122, LLC @ 112 SW 7th St, Ste 3C, Topeka, KS 66603. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                      defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 09. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 2020-CV-000090** |
| **ALLERGAN, PLC et. al. et. al..** | ) ) ) | |
| **Defendants.** | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CARDINAL HEALTH 132, LLC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health 132, LLC @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                              defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 16. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. ) ) | |
| Defendants. ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CARDINAL HEALTH 200, LLC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health 200, LLC @ 112 SW 7th St, Ste 3C, Topeka, KS 66603. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                    defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 47. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF FORD,** | ) | |
| **STATE OF KANSAS** | ) | |
|                   **Plaintiff,** | ) | |
| | ) | |
|   **vs.** | ) | **Case No. 2020-CV-000090** |
| | ) | |
| **ALLERGAN, PLC et. al. et. al..** | ) | |
| | ) | |
|                   **Defendants.** | ) | |
| | ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CARDINAL HEALTH 414, LLC

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Cardinal Health 414, LLC @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                                  defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

*[signature]*

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2534 83. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS ) <br> OF THE COUNTY OF FORD, ) <br> STATE OF KANSAS ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> ALLERGAN, PLC et. al. et. al.. ) <br> ) <br> **Defendants.** ) <br> ) | **Case No. 2020-CV-000090** |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## DILLON COMPANIES, LLC.

I hereby certify that I have served the Summons with a copy of the Petition on September 9, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Dillon Companies, LLC @ 2900 SW Wanamaker Dr Ste #204, Topeka, KS 66614. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                              defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2533 46. Our records indicate that this item was delivered on 09/09/2020 at 10:17 a.m. in TOPEKA, KS 66614. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** ) <br> **OF THE COUNTY OF FORD,** ) <br> **STATE OF KANSAS** ) <br>              **Plaintiff,** ) <br> ) <br>   **vs.** ) <br> ) <br> **ALLERGAN, PLC et. al. et. al..** ) <br> ) <br>              **Defendants.** ) <br> ) | **Case No. 2020-CV-000090** |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## HIKMA PHARMACEUTICAL USA, INC. F/K/A WEST-WARD PHARMACEUTICAL CORP

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Hikma Pharmaceutical USA, Inc. f/k/a West-Ward Pharmaceutical Corp @120 South Central Avenue, Clayton, MO 63105.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                       defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2

**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790
2401 2530 87. Our records indicate that this item was delivered on 09/10/2020 at 04:27 p.m. in SAINT
LOUIS, MO 63105. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.



Customer Reference Number:       DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF THE COUNTY OF FORD,** ) | |
| **STATE OF KANSAS** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 2020-CV-000090** |
| ) | |
| **ALLERGAN, PLC et. al. et. al..** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## JANSSEN PHARMACEUTICA, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___  **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Janssen Pharmaceutica, Inc. @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____  **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                 defendant at_____.

7) _____  **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____  **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790
2401 2536 05. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA,
KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.



Customer Reference Number:       DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS**<br>**Plaintiff,**<br><br>**vs.**<br><br>**ALLERGAN, PLC et. al. et. al.,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)  **Case No. 2020-CV-000090**<br>)<br>)<br>)<br>)<br>) |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## JANSSEN PHARMACEUTICALS, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

5) __X___ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Janssen Pharmaceuticals, Inc. @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.** **See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                      defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2529 05. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.



Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS <br><br> Plaintiff, <br><br> vs. <br><br> ALLERGAN, PLC et. al. et. al.. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) Case No. 2020-CV-000090 |

### RETURN ON SERVICE OF SUMMONS OF DEFENDANT
### MCKESSON CORPORATION

I hereby certify that I have served the Summons with a copy of the Petition on September 9, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **McKesson Corporation @ 2900 SW Wanamaker Dr Ste #204, Topeka, KS 66614. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                        defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**



# UNITED STATES
## POSTAL SERVICE®

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 48. Our records indicate that this item was delivered on 09/09/2020 at 10:17 a.m. in TOPEKA, KS 66614. The scanned image of the recipient information is provided below.

Signature of Recipient :

AW 1462 <19

T.Berb 146 >(19

Address of Recipient :

9000 SW
Wanamaker Dr.

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:     DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS <br><br> Plaintiff, <br><br> vs. <br><br> ALLERGAN, PLC et. al. et. al.. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 2020-CV-000090 |

### <u>RETURN ON SERVICE OF SUMMONS OF DEFENDANT MCQUEARY BROS DRUG COMPANY, LLC</u>

I hereby certify that I have served the Summons with a copy of the Petition on September 9, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **McQueary Bros Drug Company, LLC @ 2900 SW Wanamaker Dr Ste #204, Topeka, KS 66614.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                     defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 55. Our records indicate that this item was delivered on 09/09/2020 at 10:17 a.m. in TOPEKA, KS 66614. The scanned image of the recipient information is provided below.

Signature of Recipient :

AW 1462 </9

T·Berb 1Yb >/19

Address of Recipient :

900 SW
Wanamak- Ar.

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:    DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

**IN THE DISTRICT COURT OF FORD COUNTY, KANSAS**
**SIXTEENTH JUDICIAL DISTRICT**

| | |
|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF THE COUNTY OF FORD,** ) | |
| **STATE OF KANSAS** ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 2020-CV-000090** |
| ) | |
| **ALLERGAN, PLC et. al. et. al..** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## MYLAN INSTITUTIONAL, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 11, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5)  __X__  **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **MYLAN Institutional, Inc. @ 208 SO Lasalle St. Suite #814, Chicago, IL 60604. See attached signature confirmation page from the United States Post Office.**

6)  _____  **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                       defendant at_____.

7)  _____  **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8)  _____  **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2530 49. Our records indicate that this item was delivered on 09/11/2020 at 10:38 a.m. in CHICAGO, IL 60690. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:      DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS<br><br>          **Plaintiff,**<br><br>   vs.<br><br>ALLERGAN, PLC et. al. et. al..<br><br>          **Defendants.** | )<br>)<br>)<br>)<br>)<br>)    **Case No. 2020-CV-000090**<br>)<br>)<br>)<br>)<br>) |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## MYLAN PHARMACEUTICALS, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5)  __X___  **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **MYLAN Pharmaceuticals, Inc. @ 1627 Quarrier St. Charleston, WV 25311.  See attached signature confirmation page from the United States Post Office.**

6)  _____  **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                     defendant at _____.

7)  _____  **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8)  _____  **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2530 32. Our records indicate that this item was delivered on 09/10/2020 at 11:01 a.m. in CHARLESTON, WV 25301. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 2020-CV-000090** |
| **ALLERGAN, PLC et. al. et. al..** | ) ) ) | |
| **Defendants.** | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## NOVARTIS PHARMACEUTICALS CORPORATION F/K/A SANDOZ, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 9, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5)  __X___  **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows:  <u>**Novartis Pharmaceuticals Corporation f/k/a Sandoz, Inc. @ 2900 SW Wanamaker Dr. Ste #204 Topeka, KS 66614.  See attached signature confirmation page from the United States Post Office.**</u>

6)  _____  **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                      defendant at_____.

7)  _____  **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8)  _____  **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2


**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 78. Our records indicate that this item was delivered on 09/09/2020 at 10:17 a.m. in TOPEKA, KS 66614. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:       DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS ) ) ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2020-CV-000090 |
| ) | |
| ALLERGAN, PLC et. al. et. al.. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## ORTHO MCNEIL JANSSEN PHARMACEUTICALS JANSSEN PHARMACEUTICALS, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Ortho McNeil Janssen Pharmaceuticals Janssen Pharmaceuticals, Inc. @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                     defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2529 12. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

### IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS**<br>                    **Plaintiff,** | )<br>)<br>)<br>)<br>) | |
|    vs. | )<br>) | **Case No. 2020-CV-000090** |
| **ALLERGAN, PLC et. al. et. al..** | )<br>) | |
|                     **Defendants.** | )<br>) | |

### RETURN ON SERVICE OF SUMMONS OF DEFENDANT
### WALMART STORES EAST, LP

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Walmart Stores East LP @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                                    defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**®

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2533 15. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

**IN THE DISTRICT COURT OF FORD COUNTY, KANSAS**
**SIXTEENTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF FORD,** | ) | |
| **STATE OF KANSAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 2020-CV-000090** |
| | ) | |
| **ALLERGAN, PLC et. al. et. al..** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**RETURN ON SERVICE OF SUMMONS OF DEFENDANT**
**WALMART STORES EAST, LP D/B/A WALMART SUPERCENTER #372**

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Walmart Stores East LP d/b/a Walmart Supercenter #372 @ 112 SW 7<u>th</u> St, Ste 3C, Topeka, KS 66603. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                       defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



## UNITED STATES
## POSTAL SERVICE

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2533 22. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA, KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS )))) Plaintiff, ) | |

THE BOARD OF COUNTY COMMISSIONERS )
OF THE COUNTY OF FORD, )
STATE OF KANSAS )
                    **Plaintiff,** )
                                )
  **vs.** )     **Case No. 2020-CV-000090**
                                )
ALLERGAN, PLC et. al. et. al.. )
                                )
                    **Defendants.** )

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT WALMART, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Walmart, Inc. @ 112 SW 7th St, Ste 3C, Topeka, KS 66603.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                      defendant at_____.

7) _____ **Avoidance of Service.** After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790
2401 2534 38. Our records indicate that this item was delivered on 09/10/2020 at 06:50 a.m. in TOPEKA,
KS 66675. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 2020-CV-000090** |
| **ALLERGAN, PLC et. al. et. al..** | ) ) ) | |
| **Defendants.** | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## WALGREEN CO.

I hereby certify that I have served the Summons with a copy of the Petition on September 10, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Walgreen Co @ 2900 SW Wanamaker Drive Ste #204, Topeka, KS 66614.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                            defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 85. Our records indicate that this item was delivered on 09/10/2020 at 10:26 a.m. in TOPEKA, KS 66614. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :    **2900 SW WANAMAKER DR**
**STE 204 TOPEKA, KS 66614**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:    DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. | ) ) | |
| Defendants. | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## WALGREEN CO. D/B/A WALGREENS #7817

I hereby certify that I have served the Summons with a copy of the Petition on September 9, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: <u>**Walgreen Co. d/b/a Walgreens #7817 @ 2900 SW Wanamaker Drive Ste #204, Topeka, KS 66614.  See attached signature confirmation page from the United States Post Office.**</u>

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                                  defendant at _____ .

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/14/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2532 92. Our records indicate that this item was delivered on 09/09/2020 at 10:17 a.m. in TOPEKA, KS 66614. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 21 PM 3:21
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALLERGAN, PLC et. al. et. al.. )<br>)<br>Defendants. ) | Case No. 2020-CV-000090 |

**THE BOARD OF COUNTY COMMISSIONERS**
**OF THE COUNTY OF FORD,**
**STATE OF KANSAS**
                              **Plaintiff,**

   **vs.**                                        **Case No. 2020-CV-000090**

**ALLERGAN, PLC et. al. et. al..**

                              **Defendants.**

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## WATSON PHARMACEUTICALS, INC. N/K/A ACTAVIS, INC.

I hereby certify that I have not served the Summons with a copy of the Petition to the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

5) _____ **Signed Receipt Delivery.** I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows:

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                           defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) __X___ **No Service.**  The above-named defendant was not served.  **Bad address with no forwarding address on file as to Watson Pharmaceuticals Inc. n/k/a Actavis, Inc.**

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

Respectfully Submitted

*[signature]*

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2

ELECTRONICALLY FILED
2020 Sep 22 PM 3:13
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS<br><br>                    Plaintiff,<br><br>vs.<br><br>ALLERGAN, PLC et. al. et. al..<br><br>                    Defendants. | Case No. 2020-CV-000090 |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## JOHNSON & JOHNSON

I hereby certify that I have served the Summons with a copy of the Petition on September 15, 2020 by the following:

1) \_\_\_\_\_ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) \_\_\_\_\_ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) \_\_\_\_\_ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) \_\_\_\_\_ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Johnson & Johnson @ 1 Johnson & Johnson Plaza, Brunswick, NJ 08933.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                      defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.** The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/21/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2529 98. Our records indicate that this item was delivered on 09/15/2020 at 07:12 a.m. in NEW BRUNSWICK, NJ 08933. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:        DLV BCCF

ELECTRONICALLY FILED
2020 Sep 22 PM 3:13
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS**<br>**OF THE COUNTY OF FORD,**<br>**STATE OF KANSAS** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 2020-CV-000090** |
| **ALLERGAN, PLC et. al. et. al..** | ) ) | |
| **Defendants.** | ) ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## CORPORATE CREATIONS NETWORK, INC-CEPHALON, INC.

I hereby certify that I have served the Summons with a copy of the Petition on September 14, 2020 by the following:

1) _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Corporate Creations Network, Inc.-Cephalon, Inc. @3411 Silverside Rd, Wilmington, DE 19810. See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                          defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/21/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2528 37. Our records indicate that this item was delivered on 09/14/2020 at 11:24 a.m. in WILMINGTON, DE 19810. The scanned image of the recipient information is provided below.

Signature of Recipient :
(Authorized Agent)

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:          DLV BCCF

ELECTRONICALLY FILED
2020 Sep 22 PM 3:13
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE BOARD OF COUNTY COMMISSIONERS<br>OF THE COUNTY OF FORD,<br>STATE OF KANSAS | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 2020-CV-000090 |
| ALLERGAN, PLC et. al. et. al.. | ) ) | |
| Defendants. | ) ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## MICHAEL BABICH

I hereby certify that I have served the Summons with a copy of the Petition on September 14, 2020 by the following:

1)  _____ **Personal Service.**  By delivering a copy of such document to the above-named defendant on the date indicated above.

2)  _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3)  _____ **Agent Service.**  By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4)  _____ **Residence Service and Mailing.**  By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X___ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **Michael Babich @ 18391 North 97ᵗʰ Place, Scottsdale, AZ 85255.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                    defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 09/21/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2531 00. Our records indicate that this item was delivered on 09/14/2020 at 03:40 p.m. in SCOTTSDALE, AZ 85255. The scanned image of the recipient information is provided below.

Signature of Recipient :
(Authorized Agent)

*G, M*
*Mail person*

Address of Recipient :   **18391 N 97TH PL**
                         **SCOTTSDALE, AZ 85255**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:      DLV BCCF

ELECTRONICALLY FILED
2020 Sep 22 PM 3:13
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
## SIXTEENTH JUDICIAL DISTRICT

| | | |
|---|---|---|
| **THE BOARD OF COUNTY COMMISSIONERS** | ) | |
| **OF THE COUNTY OF FORD,** | ) | |
| **STATE OF KANSAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 2020-CV-000090** |
| | ) | |
| **ALLERGAN, PLC et. al. et. al..** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## RETURN ON SERVICE OF SUMMONS OF DEFENDANT
## JOHN KAPOOR

I hereby certify that I have served the Summons with a copy of the Petition on September 14, 2020 by the following:

1) _____ **Personal Service.** By delivering a copy of such document to the above-named defendant on the date indicated above.

2) _____ **Residence Service.** By leaving a copy of each document at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated above.

3) _____ **Agent Service.** By delivering a copy of such document to the agent authorized by appointment or by law to receive service of process on the date indicated above.

4) _____ **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above-named defendant and mailing by first-class mail on the date indicated above and a notice that such copy has been so left.

1

5) __X__ **Signed Receipt Delivery.**  I hereby certify that I have served the summons and petition by United States Postal Service-Certified Mail, on the date indicated above (1) by mailing as certified mail return receipt requested to the above-named defendant: (2) the name and address on the envelope containing the processed certified mail return receipt were as follows: **John Kapoor @ 6610 N. 29th Place, Phoenix, AZ 85016.  See attached signature confirmation page from the United States Post Office.**

6) _____ **Certified Mail Service Refused.** I hereby certify that on the above date, I mailed a copy of the documents in the above action by first class mail, postage prepaid, addressed to the above-named                                                                                        defendant at_____.

7) _____ **Avoidance of Service.**  After diligent effort, I am satisfied that the above-named defendant is secreting himself in order to avoid the process of the court.

8) _____ **No Service.**  The above-named defendant was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2020.

Respectfully Submitted

**Gary D. White, Jr., #15103**
**DUSTIN L. VAN DYK, #23313**
Palmer Law Group LLP
2348 SW Topeka Blvd.
#100
Topeka, KS 66611
gwhite@jpalmerlaw.com
Office: (785)233-1836
Fax: (785) 233-3703
**Attorneys for Plaintiff**

2



## UNITED STATES
## POSTAL SERVICE

Date Produced: 09/21/2020

PALMER LEATHERMAN WHITE & GIRARD:

The following is the delivery information for Certified Mail™/RRE item number 9202 8969 0099 9790 2401 2530 94. Our records indicate that this item was delivered on 09/14/2020 at 03:25 p.m. in PHOENIX, AZ 85016. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :      **6610 N 29TH PL PHOENIX, AZ 85016**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.



Customer Reference Number:      DLV BCCF

ELECTRONICALLY FILED
2020 Sep 23 AM 9:58
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

## IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FORD, STATE OF KANSAS, )<br><br>Plaintiff, )<br><br>v. )<br><br>ALLERGAN PLC, et al., )<br><br>Defendants. ) | Case No. 2020-CV-90 |

## NOTICE OF DISMISSAL WITHOUT PREJUDICE AS TO MYLAN DEFENDANTS

**COMES NOW** the plaintiff, The Board of County Commissioners of the County of Ford, State of Kansas, by and through their attorney, Gary D. White, Jr., of Palmer Law Group, L.L.P., and pursuant to K.S.A. 60-241(a)(1)(A)(i) hereby dismisses without prejudice its claims only as to defendants Mylan N.V., Mylan Pharmaceuticals, Inc. and Mylan Institutional, Inc. Plaintiff's claims against the remaining defendants remain pending.

Respectfully submitted,

*/s/ Gary D. White, Jr.*
**GARY D. WHITE, JR., #15103**
Palmer Law Group, L.L.P.
2348 S.W. Topeka Blvd.
Topeka, KS 66611-1286
gwhite@jpalmerlaw.com
(785) 233-1836 (Office)
(785) 233-3703 (Fax)
***Attorney for Plaintiff***

1

ELECTRONICALLY FILED
2020 Sep 28 PM 12:12
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090

HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
Telephone:      316-267-2000
Facsimile:      316-630-8466

## IN THE SIXTEENTH JUDICIAL DISTRICT
## DISTRICT COURT, FORD COUNTY, KANSAS
## CIVIL DEPARTMENT

THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF
FORD, STATE OF KANSAS,
　　　　　*Plaintiff,*

CASE NO. 2020-CV-000090

vs.

ALLERGAN PLC, *et al*,
　　　　　*Defendants.*

(PURSUANT TO K.S.A. CHAPTER 60)

## ENTRY OF APPEARANCE

COMES NOW, Sean D. Walsh of Hinkle Law Firm LLC, and hereby enters his appearance as Attorney for Defendants Walmart Inc.; Wal-Mart Stores East, LP; and Wal-Mart Stores East, LP d/b/a Walmart Supercenter #372 in the above-captioned matter.

Respectfully Submitted,

HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
Telephone:      316-267-2000
Facsimile:      316-630-8466
E-mail:      swalsh@hinklaw.com


By /s/ Sean D. Walsh
Sean D. Walsh, SC No. 25052
*Attorneys for Walmart Inc.; Wal-Mart Stores East, LP; and Walmart Supercenter #372*

IN THE SIXTEENTH JUDICIAL DISTRICT, DISTRICT COURT, FORD COUNTY, KANSAS, CIVIL DEPARTMENT
CASE NO. 2020-CV-000090; *The Board of County Commissioners of the County of Ford, State of Kansas*
ENTRY OF APPEARANCE
Page 2 of 2

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September, 2020, a true and correct copy of the above and foregoing ENTRY OF APPEARANCE was submitted to the Court's E-Filing system, which will send a notice of electronic filing to the participating parties including:

Gary D. White Jr., KS #15103
Dustin L. Van Dyk, KS #23313
Palmer Law Group, L.L.P.
2348 SW Topeka Boulevard, Suite #100
Topeka, Kansas 66611
Telephone: 785-233-1836
Facsimile: 785-233-3703
E-mail: gwhite@jpalmerlaw.com
E-mail: dvandyk@jpalmerlaw.com
*Attorneys for Plaintiff*

Jeffrey H. Reeves
Cheryl Priest Ainsworth
Kevin N. Royer
Theodora Oringher PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone:  714-549-6200
Facsimile: 714-549-6201
E-mail: jjreeves@tocounsel.com
E-mail: cainsworth@tocounsel.com
E-mail: kroyer@tocounsel.com
*Attorneys for Plaintiff*

And the original was filed with the Court using the eFlex System at:

Ford County District Court
Rhonda Whitney, Clerk of the Court
101 West Spruce
P.O. Box 197
Dodge City, Kansas 67801
https://filer.kscourts.org/

By /s/ Sean D. Walsh

ELECTRONICALLY FILED
2020 Sep 28 PM 12:19
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090



**Court:**          Ford County District Court

**Case Number:**    2020-CV-000090

**Case Title:**     Ford County Commissioners vs. Allergan PLC, et al.

**Type:**           Clerk's Order Extending Time to Answer or
                    Otherwise Plead

SO ORDERED.

*Michelle Adams*

/s/ Michelle Adams, Deputy Clerk

Electronically signed on 2020-09-28 12:18:58     page 1 of 4

HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
Telephone:      316-267-2000
Facsimile:      316-630-8466

## IN THE SIXTEENTH JUDICIAL DISTRICT
## DISTRICT COURT, FORD COUNTY, KANSAS
## CIVIL DEPARTMENT

THE BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY OF
FORD, STATE OF KANSAS,
      *Plaintiff,*

CASE NO. 2020-CV-000090

vs.

ALLERGAN PLC, *et al*,
      *Defendants.*

(PURSUANT TO K.S.A. CHAPTER 60)

## <u>CLERK'S ORDER EXTENDING TIME TO ANSWER OR OTHERWISE PLEAD</u>

Pursuant to K.S.A. § 60-212(a)(1)(A)(i) and Rule 113 of the Supreme Court of Kansas, Rules Relating to District Courts, Defendants Walmart Inc.; Wal-Mart Stores East, LP; and Wal-Mart Stores East, LP d/b/a Walmart Supercenter #372 should be and hereby are granted fourteen (14) additional days, until October 15, 2020, in which to Answer or otherwise plead herein.

Submitted on this 28th day of September, 2020, and effective as of the electronic file stamp date and time by the Clerk of the District Court, Ford County Sixteenth Judicial District.

IN THE SIXTEENTH JUDICIAL DISTRICT, DISTRICT COURT, FORD COUNTY, KANSAS, CIVIL DEPARTMENT
CASE NO. 2020-CV-000090; *The Board of County Commissioners of the County of Ford, State of Kansas*
CLERK'S ORDER EXTENDING TIME TO ANSWER OR OTHERWISE PLEAD
Page 2 of 3

Respectfully Submitted,

HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
Telephone:     316-267-2000
Facsimile:     316-630-8466
E-mail:          swalsh@hinklaw.com


By /s/ Sean D. Walsh
Sean D. Walsh, SC No. 25052
*Attorneys for Walmart Inc.; Wal-Mart Stores East,*
*LP; and Walmart Supercenter #372*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September, 2020, a true and correct copy of the above and foregoing CLERK'S ORDER EXTENDING TIME TO ANSWER OR OTHERWISE PLEAD was submitted to the Court's E-Filing system, which will send a notice of electronic filing to the participating parties including:

Gary D. White Jr., KS #15103
Dustin L. Van Dyk, KS #23313
Palmer Law Group, L.L.P.
2348 SW Topeka Boulevard, Suite #100
Topeka, Kansas 66611
Telephone: 785-233-1836
Facsimile: 785-233-3703
E-mail: gwhite@jpalmerlaw.com
E-mail: dvandyk@jpalmerlaw.com
*Attorneys for Plaintiff*

IN THE SIXTEENTH JUDICIAL DISTRICT, DISTRICT COURT, FORD COUNTY, KANSAS, CIVIL DEPARTMENT
CASE NO. 2020-CV-000090; *The Board of County Commissioners of the County of Ford, State of Kansas*
CLERK'S ORDER EXTENDING TIME TO ANSWER OR OTHERWISE PLEAD
Page 3 of 3

   Jeffrey H. Reeves
   Cheryl Priest Ainsworth
   Kevin N. Royer
   Theodora Oringher PC
   535 Anton Boulevard, Ninth Floor
   Costa Mesa, California 92626-7109
   Telephone: 714-549-6200
   Facsimile: 714-549-6201
   E-mail: jjreeves@tocounsel.com
   E-mail: cainsworth@tocounsel.com
   E-mail: kroyer@tocounsel.com
   *Attorneys for Plaintiff*

And the original was filed with the Court using the eFlex System at:

   Ford County District Court
   Rhonda Whitney, Clerk of the Court
   101 West Spruce
   P.O. Box 197
   Dodge City, Kansas 67801
   https://filer.kscourts.org/

         By /s/ Sean D. Walsh

ELECTRONICALLY FILED
2020 Sep 28 PM 2:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090



**Court:**          Ford County District Court

**Case Number:**    2020-CV-000090

**Case Title:**     Ford County Commissioners vs. Allergan PLC, et al.

**Type:**           Order Extending Time to Plead


SO ORDERED.

/s/ Michelle Adams, Deputy Clerk


Electronically signed on 2020-09-28 14:04:11     page 1 of 4

IN THE SIXTEENTH JUDICIAL DISTRICT
DISTRICT COURT OF FORD COUNTY, KANSAS
CIVIL DEPARTMENT

THE BOARD OF COUNTY                         )
COMMISSIONERS OF THE COUNTY                 )
OF FORDM STATE OF KANSAS,                    )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )          Case No. 2020-CV-000090
                                            )
ALLERGAN PLC                                )
ALLERGAN USA, INC.                          )
ACTAVIS INC                                 )
WATRSON PHARMACEUTICALS, INC                )
n/k/a ACTAVIS INC                           )
WATSON LABORATORIES, INC.                   )
ACTAVIS LLC                                 )
ATCAVIS PHARMA, INC f/k/a                   )
WATSON PHARMA, INC.                         )
TEVA PHARMECEUTICAL                         )
INDUSTRIES LTD                              )
TEVA PHARMACEUTICALS USA                    )
INC.                                        )
CEPHALON, INC                               )
ENDO HEALTH SOLUTIONS INC                   )
ENDO PHARMACEUTICALS, INC                   )
PAR PHARMACEUTICALS, INC                    )
JANSSEN PHARMECEUTICALS, INC.              )
ORTHO-MCNEIL-JANSSEN                        )
PHARMACEUTICALS, INC. n/k/a                 )
JANSSEN PHARMACEUTICALS INC.               )
JANSSEN PHARMACEUTICA, INC n/k/a)
JANSSEN PHARMACEUTICALS, INC.              )
JOHNSON & JOHNSON                           )
MALLINCKRODT, PLC                           )
MALLINCKRODT LLC                            )
SPECGX LLC                                  )
MYLAN N.V.                                  )
MYLAN PHARMACEUTICALS, INC.                )
MYLAN INSTITUTIONAL, INC.                   )
HKMA PHARMACEUTICALS USA                    )
INC. f/k/a WEST-WARD                        )
PHARMACEUTICALS CORP.                       )

JOHN KAPOOR, an individual                    )
MICHAEL BABICH, an individual                 )
AMERISOURCEBERGEN                             )
CORPORATION                                   )
MCQUEARY BROS. DRUG COMPANY )
LLC                                           )
CARDINAL HEALTH, INC                          )
CARDINAL HEALTH 5, LLC                        )
CARDINAL HEALTH, 100, INC.                    )
CARDINAL HEALTH, 100, LLC                     )
CARDINAL HEALTH 110, LLC                      )
CARINDAL HEALTH 122, LLC                      )
CARDINAL HEALTH 132, LLC                      )
CARDINAL HEALTH 200, LLC                      )
CARDINAL HEALTH 414, LLC                      )
CARDINAL HEALTH PHARMACY                      )
SERVICES, LLC                                 )
NOVARTIS PHARMACEUTICALS                      )
CORPORATION f/k/a SANDOZ, INC.                )
WALGREEN CO.                                  )
WANGREEN CO. dba WALGREENS                    )
#7817                                         )
WALMART INC.                                  )
WAL-MART STORES EAST, LP                      )
WAL-MART STORES EAST, LP dba                  )
WALMART SUPERCENTER #372                      )
KROGER LIMITED PARTNERSHIP I                  )
DILLON COMPANIES, LLC                         )
DOES 1 through 1000,                          )
                                              )
                        Defendants.           )
                                              )

Pursuant to K.S.A. Chapter 60

## ORDER EXTENDING TIME TO PLEAD

Defendant, Walgreen Co., is granted fourteen (14) additional calendar days from the 30th

day of September, 2020, until the 14th day of October, 2020, in which to answer or otherwise

plead to the Plaintiff's Petition. By Order of the Clerk, pursuant to Supreme Court Rule 113.

This Order is effective as of the date and time shown on the electronic file stamp.

APPROVED:

**FOULSTON SIEFKIN LLP**
1551 N. Waterfront Parkway, Suite 100
Wichita, KS  67206-4466
316-291-9788
866-559-6540
jdegraffenreid@foulston.com

*/s/ Jeff P. DeGraffenreid*
Jeff P. DeGraffenreid, KS #15694
*Attorneys for Defendants*

ELECTRONICALLY FILED
2020 Sep 28 PM 3:04
CLERK OF THE FORD COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000090



**Court:**          Ford County District Court

**Case Number:**    2020-CV-000090

**Case Title:**     Ford County Commissioners vs. Allergan PLC, et al.

**Type:**           Clerk's Extension of Time

SO ORDERED.

/s/ Michelle Adams, Deputy Clerk

Electronically signed on 2020-09-28 15:04:33    page 1 of 3

**GILLILAND GREEN LLC**
Attorneys at Law
1 North Main, Suite 700
P.O. Box 2977
Hutchinson, KS 67504-2977
Telephone (620) 662-0537
Facsimile  (620) 669-9426
tdower@gglawks.com
tparkins@gglawks.com

### IN THE DISTRICT COURT OF FORD COUNTY, KANSAS
### SIXTEENTH JUDICIAL DISTRICT

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSION OF ) <br> THE COUNTY OF FORD, STATE OF KANSAS, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> ALLERGAN PLC, *et al.,* ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. 2020-CV-000090 |

### <u>CLERK'S EXTENSION OF TIME</u>

Pursuant to K.S.A. § 60-212(a)(1)(A)(i) and Rule 113 of the Supreme Court of Kansas, Rules Relating to District Courts, and upon the timely application of the Defendant Dillon Companies, LLC, the initial time to plead to the petition in this action is hereby extended fourteen days from September 30, 2020, to October 14, 2020.

<div style="text-align: right;">

CLERK OF THE DISTRICT COURT OF
FORD COUNTY, KANSAS

</div>

APPROVED BY:

**GILLILAND GREEN LLC**

By */s/ Thomas A. Dower*
_____
    Thomas A. Dower, SC# 12894
    Torrance R. Parkins, SC #26014
    Attorneys for Defendant Dillon Companies, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of September, 2020, I electronically filed the foregoing document with the Clerk of the Court.  Further, I served a true and correct copy of the same by electronic mail and/or via the eFlex notification system to:

> Sean D. Walsh
> HINKLE LAW FIRM LLC
> 1617 North Waterfront Parkway, Suite 400
> Wichita, Kansas 67206
> swalsh@hinklaw.com
> *Attorneys for Walmart Inc.; Wal-Mart Stores East, LP;*
> *and Walmart Supercenter #372*
>
> Gary D. White Jr., KS #15103
> Dustin L. Van Dyk, KS #23313
> Palmer Law Group, L.L.P.
> 2348 SW Topeka Boulevard, Suite #100
> Topeka, Kansas 66611
> gwhite@jpalmerlaw.com
> dvandyk@jpalmerlaw.com
> *Attorneys for Plaintiff*

*/s/Thomas A. Dower*
Thomas A. Dower, SC #12894